# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **VALERO TITLE INC DBA VALERO** | § | |
| **TITLE COMPANY,** | § | |
| | § | **CAUSE NO.** |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **RLI INSURANCE COMPANY AND** | § | |
| **TITLEPAC, INC** | § | |
| | § | |
| **Defendant.** | | |

## INDEX OF MATTERS BEING FILED

1. Valero Title, Inc's Third-Party Petition

2. Title Pac, Inc's Original Third-Party Answer

3. RLI Insurance Company's Original Third-Party Answer

4. RLI Insurance Company's Motion to Sever, proposed Order and Notice of Hearing

5. Valero Title, Inc's Response to the Motion to Sever, and proposed Order

6. RLI Insurance Company's Reply to Valero Title, Inc's Response to Motion to Sever

7. RLI Insurance Company's proposed Order granting the Motion to Sever

8. Order Granting RLI Insurance Company's Motion to Sever

# EXHIBIT 1

Chris Daniel - District Clerk Harris County
Envelope No. 28256544
By: Brianna Denmon
Filed: 10/12/2018 4:28 PM

CAUSE NO.  2017-80629

| | | |
|---|---|---|
| CONTEMPO BUILDER | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| VALERO TITLE INC. | § | |
| DBA VALERO TITLE COMPANY | § | 157th JUDICIAL DISTRICT |

## VALERO TITLE, INC.'S THIRD-PARTY PETITION

Defendant, Valero Title, Inc. (hereinafter "**Third-Party Plaintiff**" and/or "**Valero**") files this Third-Party Petition against Third-Party Defendant RLI Insurance ("**RLI**") and Third-Party Defendant TitlePac, Inc. ("**TitlePac**"). (collectively referred to as "**Third-Party Defendants**"), and would respectfully show unto the Court as follows:

### PARTIES

1.      Defendant and Third-Party Plaintiff Valero is a title company doing business in Texas.

2.      Third-Party Defendant RLI Insurance Company is a corporation with its principal place of business located at 9025 N. Lindbergh Drive, Peoria, IL 61615, authorized to do business in the State of Texas, and can be served with process via its registered agent, RLI Houston, c/o Greg Chilson, 2925 Richmond Avenue, Suite 1600, Houston, Texas 77098.

3.      Third-Party Defendant TitlePac, Inc. is a corporation organized under the laws of the State of Oklahoma, authorized to do business in the State of Texas, and can be served with process via its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4.      Venue is proper in this Court because all or a substantial part of the events omissions giving rise to the claims alleged occurred in Harris County, Texas.  Therefore, venue is proper in this Court pursuant to § 15.002 of the Texas Civil Practice and Remedies Code.

## RULE 47 CLAIMS FOR RELIEF

5.      This lawsuit involves claims for breach of contract, fraud, and violations of the Texas Insurance Code, in addition to its actual damages, Valero seeks to recover exemplary damages, attorney's fees and costs. Valero seeks monetary relief over $200,000 but not more than $1,000,000.  The damages sought are within the jurisdictional limits of this Court.

## FACTS AND CLAIMS

6.      Valero is the owner of a Crime Protection Policy for Employee Dishonesty, Loss of Client's Property resulting from Employee Dishonesty, Funds Transfer Fraud (hereinafter referred to as "the Policy"), which was issued by RLI and brokered by TitlePac.

7.      Valero is a title insurance company that provides title insurance and acts as a closing or escrow agent involving real estate transactions.

8.      In the Fall of 2017, Valero sought insurance coverage to protect Valero from wire transfer fraud.

9.      On or about October 20, 2017, Valero received confirmation from TitlePac that the Policy would cover funds transfer fraud.  A true and correct copy of the confirmation is attached hereto as Exhibit "1" and incorporated by reference.

10.     On or about October 23, 2017, RLI, through TitlePac sold Valero the Policy that was held out by Third-Party Defendants to include protection against wire transfer fraud.  A true and correct copy of the Policy is attached hereto as Exhibit "2" and incorporated by reference.

2

11.     Specifically, the Policy stated that RLI "… will pay for loss of funds resulting directly from a fraudulent instruction directing financial institution to transfer, pay or deliver funds from your transfer account."  See Section A under Include Coverage for Funds Transfer Fraud, Exhibit "2".

12.     This cause of action involves a construction loan transaction by and between Whitney Hancock Bank ("**Whitney**"), as lender, and its customer, Contempo Builder ("**Contempo**"), the payoff of that certain loan that was scheduled to close with Valero acting as escrow agent.

13.     Valero requested an updated payoff from Whitney in preparation for a scheduled loan closing.  A purported representative for Whitney provided an updated payoff of the loan to Valero.

14.     The closing did not originally occur as planned but was rescheduled to occur. Valero once again requested an updated payoff from Whitney in preparation for the scheduled closing and subsequently received one from a purported representative of Whitney.  However, on that same date, Valero received a follow-up email purporting to be from the same representative of Whitney asking if Valero received an updated payoff letter with "minor changes".

15.     Subsequently, someone alleging to be a representative of Whitney engaged in multiple correspondences with Valero seeking updates as to when the closing funds would be transferred.  Valero inquired to the alleged representative as to the wiring instructions routing number being one digit short.  The alleged representative of Whitney provided to Valero wiring instructions that were altered from the original wiring instructions from Whitney.

16.     The false wire transfer instructions directed Valero's bank, Bank of America ("**BOA**") to transfer funds to what was purportedly Whitney without Valero's knowledge that the

3

instructions were fraudulent.  Ultimately, the $250,945.31 closing funds were wired from BOA per the fraudulent wire transfer instructions to an account held by a third-party with Third-Party Defendant Wells Fargo Bank, N.A. ("**Wells Fargo**").

17.     Subsequently, Whitney inquired to Contempo about the payoff as Whitney claimed to not be in receipt of the funds.  Contempo then informed Valero of the issue.  Valero sought to reverse the fraudulent transaction, but was informed that the funds had already been removed from the Wells Fargo account.  Valero then opened up a complaint with the FBI regarding this matter.

18.     On or about November 1, 2017, Whitney informed Valero that Whitney has reached out to Wells Fargo, but Wells Fargo refused to release any information to Whitney.

19.     On or about November 3, 2017, BOA provided a Payment Details Report to Valero confirming that Wells Fargo was the beneficiary bank for the wire transfer transaction.

20.     On or about November 6, 2017, Valero filed a complaint with the Houston Police Department regarding the fraudulent transfer.

21.     On or about November 8, 2017, a representative of Valero spoke with a representative of RLI who stated that RLI will not likely cover the claim because Valero's domain was not manipulated.

22.     On or about November 28, 2017, RLI sent Valero a letter refusing to adhere to the terms of the Policy.  A true and correct copy of the letter is attached hereto as Exhibit "3" and incorporated by reference.  This time, RLI abandoned its claim that Valero's domain was not manipulated and created new reasons to refuse coverage.  Specifically, RLI stated that the claim would not fall under "computer fraud" because the incident must have occurred within the Valero's or a bank's premises.  See Exhibit "3" pg. 2.  RLI further stated that the fraudulent wire transfer would not be covered by the Policy because the "the subject email containing the false bank routing

4

information was purportedly sent by your bank…" instead of being transmitted by Valero.  See Exhibit "3" pg. 3.  This reasoning defied all logic as the fraudulent transfer instructions were never transmitted by BOA and it is undisputed that Valero sent the fraudulent instructions to BOA.  This was clearly a tactic by RLI to present Valero with a moving target in the hopes that Valero would go away and not seek the coverage it clearly paid for to cover this exact situation.[1]

23.     On or about December 1, 2017, Valero through counsel sent RLI a letter disputing its refusal to provide coverage and to provide additional details of the subject incident and demand letter received from counsel for Contempo.  RLI was instructed to communicate directly with counsel from this point forward.  A true and correct copy of this letter is attached hereto as Exhibit "4" and incorporated by reference.

24.     At this point in time, Valero sought TitlePac's help in resolving this matter because Valero had relied on TitlePac's assertion that Valero would be covered for this situation.  On or about December 5, 2017, Valero through counsel sent TitlePac a letter seeking assistance in obtaining coverage.  On or about December 7, 2017, Valero provided TitlePac with a copy of the Original Petition filed against it by Contempo.  A true and correct copy of these letters are attached hereto as Exhibits "5" and "6" and incorporated by reference.  TitlePac refused to assist Valero in any way.

25.     On or about March 15, 2018, Valero through counsel contacted once again reached out to TitlePac for assistance and sought contact from its legal department.  A true and correct copy of this correspondence is attached hereto as Exhibit "7" and incorporated by reference.  Once again, TitlePac ignored this request.

---

[1]     As seen herein, in the alternative, if the policy truly does not cover this claim, Third-Party Defendant TitlePac sold an improper policy or misrepresented said policy.

26.     On or about February 14, 2018, Valero tendered a Sworn Statement in Proof of Loss to RLI, detailing the incident made subject to this cause of action.  A true and correct copy of the proof of loss is attached hereto as Exhibit "8".

27.     On or about March 6, 2018, RLI sent a letter directly to Valero, ignoring previous instructions by counsel, refuting Valero's claims again.  A true and correct copy of this letter is attached hereto as Exhibit "9" and incorporated by reference.  This time RLI came up with a different reason to refuse coverage.  RLI now claimed that Valero transmitted the fraudulent wire instructions to BOA with knowledge that it was fraudulent.  See Exhibit "9" pg. 4.  RLI further states that the wire transfer instructions were not forged or altered.  See Exhibit "9" pg. 4.  The very notion that Valero knew that the wiring instructions were wrong and that said instructions were not forged or altered is preposterous.  If Valero knew of the forgery or alteration, then the parties would not be in the present cause of action.  Clearly RLI was doing everything in its power to not perform its contractually obligated duties.

28.     As a result of the Third-Party Defendants bad faith and other wrongful conduct, Valero has suffered damages in the loss of $250,945.31 plus attorney fees.

29.     Third-Party Defendants have effectively misrepresented to Valero that the damage was not covered under the Policy, even though the damage was caused by a covered occurrence.  Third-Party Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code §541.060(a)(1).

30.     Third-Party Defendants have failed to make an attempt to settle Valero's claim in a fair manner despite the fact that have been at all material times and are currently aware of its liability to Valero under the Policy.  Third-Party Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code §541.060(a)(2)(A).

6

31.     Third-Party Defendants have failed to offer Valero compensation, without a valid, true or good faith explanation as to why payment was not being made.  Third-Party Defendants' conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code §§541.060(a)(3).

32.     Third-Party Defendants refused to compensate Valero under the terms of the Policy, and failed to conduct a reasonable investigation.  Third-Party Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code §541.060(a)(7).

33.     Third-Party Defendants failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay.  Specifically, it has delayed full payment of Valero's claim longer than allowed and, to date, Valero has not yet received payment for its claim.  Third-Party Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code §542.058.

34.     From and after the time Valero's claim was presented to Third-Party Defendants, the liability of Third-Party Defendants to pay the full claim in accordance with the terms of the Policy was reasonably clear.  However, Third-Party Defendants have refused to pay Valero in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment.

35.     Third-Party Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Valero.

36.     As a result of Third-Party Defendants' wrongful acts and omissions, Valero was forced to retain the professional services of the attorney and law firm who is representing it with respect to these causes of action.

37.     RLI and TitlePac's entire process is unfairly designed to reach favorable outcomes for RLI at the expense of the policyholders.

## CAUSES OF ACTION

### NON-COMPLIANCE WITH INSURANCE CODE

38.     The foregoing paragraphs are incorporated herein by reference. Third-Party Defendants' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code. §541.060(a).  All violations under this article are made actionable by Tex. Ins. Code §541.151.

39.     Third-Party Defendants' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  Tex. Ins. Code. §541.060(2)(A).

40.     The unfair settlement practice of Third-Party Defendants as described herein, of failing to promptly provide Valero with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Valero's claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  Tex. Ins. Code §541.060(3).

41.     Third-Party Defendants' unfair settlement practice, as described above, of refusing to pay Valero's claim without conducting a reasonable investigation, constitutes an unfair method

of competition and an unfair and deceptive act or practice in the business of insurance.  Tex. Ins. Code §541.060(7).

## FRAUD

42.     The foregoing paragraphs are incorporated herein by reference.  Third-Party Defendants are liable to Valero for common law fraud.

43.     Each and every one of the representations, as described above, concerned material facts for the reason Valero would not have acted and were made by Third-Party Defendants falsely or recklessly without any knowledge of their truth as a positive assertion.

44.     The statements were made by Third-Party Defendants with the intention that they should be acted upon by Valero, who in turn acted in reliance upon the statements, there causing Valero to suffer injury and constituting common law fraud.

## CLAIM FOR DECLARATORY JUDGMENT

45.     Third-Party Plaintiff seeks a declaratory judgment as to the coverage of the insurance policy in dispute.  As explained herein, there have been different excuses by Third-Party Defendant as to how and why the policy allegedly fails to cover this matter.  Consequently, Third-Party Plaintiff seeks a declaratory judgment that the claim was a covered claim, the policy was triggered, and Third-Party Defendant should have defended Third-Party Plaintiff in this matter.  Simply put, Third-Party Plaintiff seeks a declaratory judgment that the claim should have been covered.

## NEGLIGENCE

46.     To the extent that the policy does not cover the claim, then Third-Party Defendant Title Pac negligently sold the policy that purportedly should have covered this type of claim but

possibly failed to do so.  In other words, TitlePac should have sold and provided a different policy to cover this exact type of situation for which Third-Party Plaintiff was seeking insurance.

### FRAUDULENT REPRESENTATION AND/OR NEGLIGENT REPRESENTATION

47.     To the extent that the policy does not cover the claim, then Third-Party Defendant TitlePac made fraudulent and/or negligent representations to Third-Party Plaintiff that the policy would cover this type of claim.  In other words, TitlePac should have sold a different policy to cover this exact type of situation for which Third-Party Plaintiff was seeking insurance if the actual policy sold does not provide coverage.

### DECEPTIVE TRADE PRACTICE ACT

48.     To the extent that the policy does not cover the claim, then Third-Party Defendant TitlePac committed DTPA violations by selling a policy that it said would cover this type of claim. In other words, TitlePac should have sold a different policy to cover this exact type of situation for which Third-Party Plaintiff was seeking insurance if the actual policy sold does not provide coverage.  Third-Party Plaintiff relied on Third-Party Defendant's representations to its detriment.

### BREACH OF CONTRACT

49.     The foregoing paragraphs are incorporated herein by reference.  Third-Party Defendants' conduct constitutes a breach of the insurance contract made between Third-Party Defendants and Valero.  Valero and Their-Party Defendants are parties to a written contract, namely the Policy.  Valero has performed under the Policy and has complied with all conditions precedent to recovery herein.  Third-Party Defendants have materially breached the contract which has caused damages to Valero.

50.     Third-Party Defendants' failure and refusal, as described above, to pay the any of the amounts it is obligated to pay under the terms of the Policy in question and under the laws of the State of Texas, constitutes a breach of Third-Party Defendants' insurance contract with Valero.

### UNFAIR SETTLEMENT PRACTICES

51.     The foregoing paragraphs are incorporated herein by reference.  Third-Party Defendants' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code. §541.060(A).  All violations under this article are made actionable by Tex. Ins. Code §541.151.

52.     Third-Party Defendants' unfair settlement practice, as described above, of misrepresenting to Valero material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code §541.060(1).

53.     Third-Party Defendants' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Third-Party Defendants' liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  Tex. Ins. Code §541.060(2)(A).

54.     Third-Party Defendants' unfair settlement practice, as described above, of failing to promptly provide Valero with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, with an offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  Tex. Ins. Code §541.060(3).

11

55.     Third-Party Defendants' unfair settlement practice, as described above, of refusing to pay Valero's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  Tex. Ins. Code §541.060(7).

## THE PROMPT PAYMENT OF CLAIMS

56.     The foregoing paragraphs are incorporated herein by reference. Third-Party Defendants' conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are made actionable by Tex. Ins. Code §542.060.

57.     Third-Party Defendants' delay of the payment of Valero's claim following receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for as described above, constitutes a non-prompt payment of the claim.  Tex. Ins. Code §542.058.

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

58.     The foregoing paragraphs are incorporated herein by reference. Third-Party Defendants' conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

59.     Third-Party Defendants' failure, as described above, to adequately and reasonably investigate and evaluate Valero's claim, although at that time Third-Party Defendants knew or should have known by the exercise of reasonable diligence that their liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

<u>**KNOWLEDGE**</u>

60.     Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and were a producing cause of Valero's damages described herein.

<u>**DAMAGES**</u>

61.     Valero would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Valero.

62.     For breach of contract, Valero is entitled to regain the benefit of its bargain, which is the amount of his claim, together with attorney fees.

63.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Valero is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, court costs and attorney's fees.  For knowing conduct of the acts complained of, Valero asks for three times its actual damages.  Tex. Ins. Code §541.152.

64.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Valero is entitled to the amount of its claim, as well as eighteen (18) percent interest per annum of the amount of such claim as damages, together with attorney's fees.  Tex. Ins. Code §542.060.

65.     For breach of the common law duty of good faith and fair dealing, Valero is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional distress.

66.     For fraud, Valero is entitled to recover actual damages and exemplary damages for knowing fraudulent and malicious representations, along with attorney's fees, interest and court costs.

13

67.     For the prospection and collection of this claim, Valero has been compelled to engage the services of a firm of attorneys whose name is subscribed to this pleading.  Therefore, Valero is entitled to recover a sum for the reasonable and necessary services of Valero's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

WHEREFORE, PREMISES CONSIDERED, Valero prays that upon trial hereof, Valero have and recover such sums as would reasonably and justly compensate it in accordance with the rules of law and procedure, both as to actual damages, treble damages under the Texas Insurance Code and/or under the DTPA and all punitive and exemplary damages as may be found.  In addition, Valero requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court in its behalf expended, for exemplary damages, prejudgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

HIRSCH & WESTHEIMER, P.C.

By: */s/ William P. Huttenbach*
     William P. Huttenbach
     State Bar No. 24002330
     Eric C. Metttenbrink
     State Bar No. 24043819
     1415 Louisiana, 36th Floor
     Houston, Texas 77002
     (713) 223-5181 Telephone
     (713) 223-9319 Facsimile
     Email: whuttenbach@hirschwest.com
     Email: emettenbrink@hirschwest.com

**ATTORNEYS FOR DEFENDANT/THIRD-PARTY PLAINTIFF, VALERO TITLE INC. D/B/A VALERO TITLE COMPANY**

14

## CERTIFICATE OF SERVICE

On October 12, 2018, the foregoing document was served pursuant to Rule 21a of the Texas Rules of Civil Procedure and as indicated below:

William C. Boyd
S. Scott Boyd
PATTERSON, BOYD & LOWERY, P.C.
2101 Louisiana
Houston, Texas 77002
***Via E-Service and Email***

Justin R. Opitz
McGuire Woods LLP
2000 McKinney Avenue
Suite 1400
Dallas, Texas  75201
***Via E-Service and Email***

*/s/ William P. Huttenbach*
William P. Huttenbach

15

10/12/2018 4:28:30 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 28256544
By: DENMON, BRIANNA J
Filed: 10/12/2018 4:28:30 PM

## CIVIL PROCESS REQUEST FORM

FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING PER PARTY TO BE SERVED
FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED

CASE NUMBER: <u>2017-80629</u>                    CURRENT COURT: <u>157TH HARRIS COUNTY DISTRICT COURT</u>

TYPE OF INSTRUMENT TO BE SERVED (See Reverse For Types): <u>THIRD-PARTY PETITION</u>

FILE DATE OF MOTION: <u>OCTOBER 12, 2018</u>
                                                                    Month/        Day/        Year

SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):

1.   NAME: <u>RLI INSURANCE COMPANY</u>

   ADDRESS: _____

   AGENT, (if applicable): <u>RLI HOUSTON c/o GREG CHILSON, 2925 RICHMOND AVENUE, SUITE 1600, HOUSTON, TX  77098</u>

TYPE OF SERVICE/PROCESS TO BE ISSUED (see reverse for specific type): _____

   SERVICE BY (check one):
   ☐ ATTORNEY PICK-UP                    ☐ CONSTABLE
   ☒ CIVIL PROCESS SERVER - Authorized Person to Pick-up: <u>COURT RECORDS</u>        Phone: <u>713-227-3353</u>
   ☐ MAIL                                ☐ CERTIFIED MAIL
   ☐ PUBLICATION:
       Type of Publication:    ☐ COURTHOUSE DOOR,  or
                               ☐ NEWSPAPER OF YOUR CHOICE: _____
   ☐ OTHER, explain _____

### ATTENTION:  Effective June1, 2010

For all Services Provided by the DISTRCT CLERKS OFFICE requiring our office to MAIL something back to the
Requesting Party, we require that the Requesting Party provide a Self-Addressed Stamped Envelope with sufficient postage
for mail back.  Thanks you,

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

2.   NAME: <u>TITLEPAC, INC.</u>

   ADDRESS: _____

   AGENT, (if applicable): <u>C.T. CORPORATION SYSTEMS, 1999 BRYAN ST., SUITE 900, DALLAS, TEXAS 75201</u>

TYPE OF SERVICE/PROCESS TO BE ISSUED (see reverse for specific type): _____

   SERVICE BY (check one):
   ☐ ATTORNEY PICK-UP                    ☐ CONSTABLE
   ☒ CIVIL PROCESS SERVER -  Authorized Person to Pick-up: <u>COURT RECORDS</u>        Phone: <u>713-227-3353</u>
   ☐ MAIL                                ☐ CERTIFIED MAIL
   ☐ PUBLICATION:
       Type of Publication:    ☐ COURTHOUSE DOOR,  or
                               ☐ NEWSPAPER OF YOUR CHOICE: _____
   ☐ OTHER, explain _____

ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:

NAME: <u>PAT HUTTENBACH</u>                              TEXAS BAR NO./ID NO. <u>24002330</u>
MAILING ADDRESS: <u>HIRSCH & WESTHEIMER, 1415 LOUISIANA, SUITE 3600, HOUSTON, TX 77002</u>
PHONE NUMBER: <u>713-223-5181</u>                         FAX NUMBER:        <u>713-223-9319</u>
                         area code        phone number                                      area code      fax number
EMAIL ADDRESS: <u>PHUTTENBACH@HIRSCHWEST.COM</u>

SERVICE REQUESTS WHICH CANNOT BE PROCESSED BY THIS OFFICE WILL BE HELD FOR 30 DAYS PRIOR TO CANCELLATION.  FEES WILL BE REFUNDED ONLY UPON REQUEST, OR AT THE DISPOSITION OF THE CASE.  SERVICE REQUESTS MAY BE REINSTATED UPON APPROPRIATE ACTION BY THE PARTIES.

INSTRUMENTS TO BE SERVED:
(Fill In Instrument Sequence Number, i.e. 1st, 2nd, etc.)

ORIGINAL PETITION
_____       AMENDED PETITION
_____       SUPPLEMENTAL PETITION

COUNTERCLAIM
_____       AMENDED COUNTERCLAIM
_____       SUPPLEMENTAL COUNTERCLAIM

CROSS-ACTION:
_____       AMENDED CROSS-ACTION
_____       SUPPLEMENTAL CROSS-ACTION

THIRD-PARTY PETITION: - **XXX**
_____       AMENDED THIRD-PARTY PETITION
_____       SUPPLEMENTAL THIRD-PARTY PETITION

INTERVENTION:
_____       AMENDED INTERVENTION
_____       SUPPLEMENTAL INTERVENTION

INTERPLEADER
_____       AMENDED INTERPLEADER
_____       SUPPLEMENTAL INTERPLEADER

INJUNCTION

MOTION TO MODIFY

SHOW CAUSE ORDER

TEMPORARY RESTRAINING ORDER

BILL OF DISCOVERY:
     ORDER TO: _____
                              (specify)
     MOTION TO: _____
                              (specify)

PROCESS TYPES:

NON WRIT:
CITATION - XX
ALIAS CITATION
PLURIES CITATION
SECRETARY OF STATE CITATION
COMMISSIONER OF INSURANCE
HIGHWAY COMMISSIONER
CITATION BY PUBLICATION
NOTICE
SHORT FORM NOTICE

PRECEPT (SHOW CAUSE)
RULE 106 SERVICE

SUBPOENA

WRITS:
ATTACHMENT (PROPERTY)
ATACHMENT (WITNESS)
ATTACHMENT (PERSON)

CERTIORARI

EXECUTION
EXECUTION AND ORDER OF SALE

GARNISHMENT BEFORE JUDGMENT
GARNISHMENT AFTER JUDGMENT

HABEAS CORPUS
INJUNCTION
TEMPORARY RESTRAINING ORDER

PROTECTIVE ORDER (FAMILY CODE)
PROTECTIVE ORDER (CIVIL CODE)

POSSESSION (PERSON)
POSSESSION (PROPERTY)

SCIRE FACIAS
SEQUESTRATION
SUPERSEDEAS

## Eric C. Mettenbrink

**From:** Cenea Reese <creese@titlepac.com>
**Sent:** Friday, October 20, 2017 4:46 PM
**To:** Melvin Brookins
**Subject:** FW: Follow Up- Valero Title Inc
**Attachments:** RE: Valero Title Inc- Quote (153 KB)


This will cover funds transfer fraud, which is similar to the fidelity coverage.

**Cenea Reese**
15200 Traditions Blvd Bldg C
Edmond, OK 73013
T 800.331.9759
F 918.683.6842
creese@titlepac.com

*Please remember that insurance coverage cannot be bound, amended or canceled by leaving an electronic or voice mail message.  Thank you.*

***CONFIDENTIALITY NOTICE***
*The information contained in this communication, including attachments, may contain privileged and confidential information that is intended only for the exclusinve use of the addressee.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly projibited.  If you have received this communication in error please notify us by telephone immediately.*

**From:** Melvin Brookins [mailto:mb@valerotitle.com]
**Sent:** Friday, October 20, 2017 4:40 PM
**To:** Cenea Reese <creese@titlepac.com>
**Subject:** RE: Follow Up- Valero Title Inc

I sent over an application for crime insurance…is that going to be the same as Fidelity Coverage?

See attached.

**From:** Cenea Reese [mailto:creese@titlepac.com]
**Sent:** Friday, October 20, 2017 8:43 AM
**To:** Melvin Brookins <mb@valerotitle.com>
**Subject:** Follow Up- Valero Title Inc

Good Morning,

I just wanted to make sure you received the quote that we sent over yesterday. Please let me know if you have any questions.

Thank You,



**Cenea Reese**
15200 Traditions Blvd Bldg C
Edmond, OK 73013
T 800.331.9759
F 918.683.6842
creese@titlepac.com

*Please remember that insurance coverage cannot be bound, amended or canceled by leaving an electronic or voice mail message.  Thank you.*

***CONFIDENTIALITY NOTICE***
*The information contained in this communication, including attachments, may contain privileged and confidential information that is intended only for the exclusinve use of the addressee.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly projibited.  If you have received this communication in error please notify us by telephone immediately.*

Policy Number: BND0101687

 **RLI** **NOTICE TO OUR INSURED AND THEIR AGENTS OF OUR CLAIM NOTIFICATION PROCEDURE**

As part of our continuing effort to provide you with the best service available,
ALL CLAIMS, OCCURRENCES, INCIDENTS, LAWSUITS
under this policy are to be reported immediately to:

**RLI Insurance Company**
**9025 N. Lindbergh Drive**
**Peoria, IL  61615**

**Phone:  (800) 444-0406**
**Fax:      (866) 692-6796**
**new_claim@rlicorp.com**

In the event you suffer an EMERGENCY LOSS during NON-BUSINESS hours
(holidays, weekends, or 5:00 p.m. CST – 8:30 a.m. on normal business days), you may
now call the special toll-free hot-line number to receive advice and assistance
appropriate to your needs. The number is **1-800-621-5410**. This number is to be utilized
ONLY during NON-BUSINESS hours as set forth above and ONLY IN THE EVENT OF
AN EMERGENCY!!

ALL LOSSES must be reported in the usual manner as well, to your AGENT.

Below is a "cut-out" card to keep in your wallet or with your business papers.

We pledge to continue upgrading our services to our valued policyholders.

Sincerely,

*Donald J. Driscoll*

Donald J. Driscoll
Vice President, Claims

RIL 2131R (08/07)

---

CUT ALONG DOTTED LINE

Insured: Valero Title Inc.

Policy No: BND0101687

**EMERGENCY HOT-LINE**
**PHONE CONTACT**
**(Non-Business Hours)**
**1-800-621-5410**

Keep this card with you or in a safe place
for emergency use only.



VT 000304

Policy Number:   BND0101687



**RLI Insurance Company**
Peoria, Illinois 61615

# TEXAS POLICYHOLDER NOTICE

<table>
<tr><td>

## TEXAS IMPORTANT NOTICE

To obtain information or make a complaint:

You may call RLI Insurance Company's toll-free telephone number for information or to make a complaint at:

**1-800-331-4929**

You may also write to RLI Insurance Company at:

RLI Insurance Company
9025 N. Lindbergh Drive
Peoria, Illinois 61615

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may also write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007

Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

### PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

</td><td>

## TEXAS AVISO IMPORTANTE

Para obtener información o para presentar una queja:

Usted puede llamar al número de teléfono gratuito de RLI Insurance Company para obtener información o para presentar una queja al:

**1-800-331-4929**

Usted también puede escribir a RLI Insurance Company:

RLI Insurance Company
9025 N. Lindbergh Drive
Peoria, Illinois 61615

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos o quejas al:

**1-800-252-3439**

Usted puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007

Sitio web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

### DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:

Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente primero. Si la disputa no es resuelta, puede comunicarse con el Departamento de Seguros de Texas.

### ADJUNTE ESTE AVISO A SU PÓLIZA:

Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto.

</td></tr>
</table>

UW 1042ML (08/15)

# CRIME PROTECTION POLICY

Edition of March, 2000

**Policy No.** BND0101687



RLI Insurance Company
(Herein called Company)

## DECLARATIONS

**Item 1.** Name of Insured (herein called Insured): Valero Title Inc.

and any entity in which you own more than 50% of the voting interest, and any entity you manage pursuant to a written agreement, and any entity in which you own 50% or less of the voting interest up to your ownership interest in that entity, and any Employee benefit plan(s) sponsored and approved by you.

Principal Address:   1100 Nw Loop 410 Ste 304
San Antonio, TX 78213-2254

**Item 2.** Policy Period:  from 12:01 a.m. on  10/23/2017  to 12:01 a.m. on  10/23/2018
(MONTH, DAY, YEAR)               (MONTH, DAY, YEAR)

## Item 3. INSURING AGREEMENTS, LIMITS OF INSURANCE AND DEDUCTIBLES

| Insuring Agreement | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1.  Employee Dishonesty | $1,000,000 | $25,000 |
| 2.  Forgery or Alteration | $N/A | $N/A |
| 3.  Inside the Premises | $N/A | $N/A |
| 4.  Outside the Premises | $N/A | $N/A |
| 5.  Computer Fraud | $N/A | $N/A |
| 6.  Money Orders and Counterfeit Paper Currency | $N/A | $N/A |
| If added by Endorsement, Insuring Agreement(s): | | |
| Loss of Clients' Property Resulting From Employee Dishonesty | $1,000,000 | $25,000 |
| Coverage For Funds Transfer Fraud | $1,000,000 | $25,000 |
| Claims Expense | $N/A | $N/A |
| | $ | $ |
| | $ | $ |

## Item 4. ENDORSEMENTS FORMING PART OF THIS POLICY WHEN ISSUED

See Schedule of Applicable Forms & Endorsements/Riders

## Item 5. CANCELLATION OF PRIOR INSURANCE

By acceptance of this Policy you give us notice cancelling prior policy Nos.

N/A

COUNTERSIGNED _____   BY _____
(Date)                                           (Authorized Representative)

SP 00 01 03 00          Copyright, The Surety Association of America, 1999
Printed in U.S.A.

VT 000306

CRIME PROTECTION POLICY
## TABLE OF CONTENTS

Page

A. **CONSIDERATION CLAUSE** ............................................................................................ 3

B. **INSURING AGREEMENTS**
1. Employee Dishonesty ........................................................................................ 3
2. Forgery or Alteration ........................................................................................ 3
3. Inside the Premises ........................................................................................... 3
4. Outside the Premises ........................................................................................ 4
5. Computer Fraud ................................................................................................ 4
6. Money Orders and Counterfeit Paper Currency .............................................. 4

C. **DEFINITIONS**
1. Banking premises .............................................................................................. 4
2. Counterfeit ........................................................................................................ 4
3. Custodian .......................................................................................................... 4
4. Employee ........................................................................................................... 4
5. Employee benefit plan(s) .................................................................................. 5
6. Forgery .............................................................................................................. 5
7. Funds ................................................................................................................. 5
8. Messenger ......................................................................................................... 5
9. Money ................................................................................................................ 5
10. Occurrence ........................................................................................................ 5
11. Other property ................................................................................................... 5
12. Premises ............................................................................................................ 5
13. Robbery ............................................................................................................. 5
14. Safe burglary .................................................................................................... 5
15. Securities .......................................................................................................... 5
16. Theft .................................................................................................................. 5
17. Watchperson ..................................................................................................... 5

D. **EXCLUSIONS**
**Applicable to All Insuring Agreements, Except as Indicated**
1. Acts Committed by You or Your Partners ........................................................ 6
2. Acts of Employees, Directors, Trustees or Representatives ............................. 6
3. Fire .................................................................................................................... 6
4. Governmental Action ....................................................................................... 6
5. Indirect Loss ..................................................................................................... 6
6. Legal Expenses ................................................................................................. 6
7. Nuclear .............................................................................................................. 6
8. War and Similar Actions .................................................................................. 6
**Applicable to Specific Insuring Agreements**
1. Under Insuring Agreement 1 ............................................................................
   Employee Canceled Under Prior Insurance ..................................................... 6
2. Under Insuring Agreements 1 and 5 ................................................................
   Inventory Shortages .......................................................................................... 6
3. Under Insuring Agreements 3 and 4 ................................................................
   Accounting or Arithmetical Errors or Omissions ............................................. 7
   Money Operated Devices .................................................................................. 7
   Transfer or Surrender of Property ..................................................................... 7
   Vandalism .......................................................................................................... 7
4. Under Insuring Agreement 4 ............................................................................
   Motor Vehicles or Equipment and Accessories ............................................... 7

1

VT 000307

5. Under Insuring Agreements 3, 4 and 6
   Exchanges or Purchases ............................................................................ 7
   Voluntary Parting of Title to or Possession of Property ........................................ 7

E. CONDITIONS
  Applicable to All Insuring Agreements
1. Cancellation ......................................................................................... 7
2. Changes ............................................................................................. 8
3. Concealment, Misrepresentation or Fraud ....................................................... 8
4. Consolidation and Merger .......................................................................... 8
5. Deductible ........................................................................................... 8
6. Discovery of Loss ................................................................................... 8
7. Duties in the Event of Loss ........................................................................ 9
8. Employee Benefit Plan(s) ........................................................................... 9
9. Extended Period to Discover Loss ................................................................. 9
10. Joint Insured ....................................................................................... 9
11. Legal Action Against Us .......................................................................... 10
12. Liberalization ..................................................................................... 10
13. Limit of Insurance ................................................................................ 10
14. Loss Covered Under More Than One Coverage ............................................... 10
15. Non-Cumulation of Limit of Insurance .......................................................... 10
16. Other Insurance ................................................................................... 10
17. Ownership of Property, Interests Covered ...................................................... 10
18. Records ............................................................................................. 10
19. Recoveries ......................................................................................... 11
20. Territory ........................................................................................... 11
21. Transfer of Your Rights and Duties Under This Policy ....................................... 11
22. Transfer of Your Rights of Recovery Against Others to Us .................................. 11
23. Valuation—Settlement ............................................................................ 11

  Applicable to Specific Insuring Agreements
1. Insuring Agreement 1
   Cancellation as to Any Employee ............................................................... 12
2. Insuring Agreement 2
   Deductible ....................................................................................... 12
   Facsimile Signatures ........................................................................... 12
   Proof of Loss ................................................................................... 12
   Territory ........................................................................................ 13
3. Insuring Agreements 3 and 4
   Special Limit of Insurance for Specified Property ........................................... 13
   Duties in the Event of Loss .................................................................... 13
4. Insuring Agreement 5
   Special Limit of Insurance for Specified Property ........................................... 13
   Duties in the Event of Loss .................................................................... 13
   Territory ........................................................................................ 13
5. Insuring Agreement 6
   Duties in the Event of Loss .................................................................... 13

2

VT 000308

| | |
|---|---|
| **CRIME PROTECTION POLICY** | Throughout this Policy the words "you" and "your" refer to the Insured(s) shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this Insurance. Read the entire Policy carefully to determine rights, duties and what is or is not covered. Words and phrases defined in the Policy are in **bold** type. |
| **A. CONSIDERATION CLAUSE** | In return for the payment of the premium, and subject to the Declarations, Insuring Agreements, Definitions, Exclusions, Conditions and other terms of this Policy, we will pay for loss that you sustain resulting directly from acts committed or events occurring at any time and discovered by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss, Condition E. 9. |

**B. INSURING AGREEMENTS**

**1. Employee Dishonesty**

We will pay for loss of, and loss from damage to, **money, securities** and **other property** resulting directly from dishonest acts committed by an **employee**, whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:

a. Cause you to sustain loss; and also

b. Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:

(1) The **employee**; or

(2) Any person or organization intended by the **employee** to receive that benefit.

**2. Forgery or Alteration**

a. We will pay for loss resulting directly from **forgery** or alteration of checks, drafts, promissory notes, or similar written promises, orders, or directions to pay a sum certain in **money** that are:

(1) Made or drawn by or drawn upon you;

(2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

b. If you are sued for refusing to pay any instrument covered in paragraph 2 a. on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

**3. Inside the Premises**

a. We will pay for loss of **money** and **securities** inside the **premises** or **banking premises** resulting directly from **theft**, disappearance or destruction.

b. We will pay for loss of, and loss from damage to, **other property**:

(1) Inside the **premises** resulting directly from an actual or attempted **robbery** of a **custodian**; or

(2) Inside the **premises** in a safe or vault, resulting directly from an actual or attempted **safe burglary**.

c. We will pay:

(1) For loss from damage to the **premises** or its exterior; or

(2) For loss of, and loss from damage to, a locked safe, vault, cash register, cash box or cash drawer located in the **premises**;

resulting directly from an actual or attempted **theft, robbery** or **safe burglary**, if you are the owner of the **premises** or are liable for damage to it.

3

VT 000309

4. **Outside the Premises**

We will pay for loss of, and loss from damage to, **money, securities** and **other property** outside the **premises** while in the care and custody of a **messenger** or armored motor vehicle company:

  a. For **money** and **securities** resulting from **theft**, disappearance or destruction; and

  b. For **other property** resulting from actual or attempted **robbery**.

5. **Computer Fraud**

We will pay for loss of, and loss from damage to, **money, securities** and **other property** resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the **premises** or **banking premises**:

  a. To a person (other than a **messenger**) outside those **premises**; or

  b. To a place outside those **premises**.

6. **Money Orders and Counterfeit Paper Currency**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, money or services:

  a. Money orders issued by any post office, express company or bank in the United States or Canada that are not paid upon presentation; or

  b. **Counterfeit** United States or Canadian paper currency;

  that is acquired during the regular course of business

**C. DEFINITIONS**

1. **Banking premises** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. **Counterfeit** means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

3. **Custodian** means you, any of your partners or any **employee** while having care and custody of property inside the **premises**, excluding any person while acting as a **watchperson** or janitor.

4. **Employee** means:

  a. Any natural person:

    (1) While in your service or for 30 days after termination of service; and

    (2) Whom you compensate directly by salary, wages or commissions; and

    (3) Whom you have the right to direct and control while performing services for you.

  b. Any natural person who is furnished temporarily to you to:

    (1) Substitute for a permanent **employee** as defined in (a) above who is on leave; or

    (2) Meet seasonal or short-term workload conditions;

    while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the **premises**.

  c. Any natural person who is:

    (1) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any **employee benefit plan(s)** insured under this insurance; and

    (2) Your director or trustee while that person is handling **funds** or **other property** of any **employee benefit plan(s)** insured under this insurance.

4

    d.  **Employee** does not mean any:

        (1)  Agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

        (2)  Director or trustee except while performing acts within the scope of the usual duties of an employee.

5.  **Employee benefit plan(s)** means any welfare or pension benefit plan listed in the Declarations that is subject to the Employee Retirement Income Security Act of 1974 (ERISA).

6.  **Forgery** means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

7.  **Funds** means **money** and **securities**.

8.  **Messenger** means you, any of your partners or any **employee** while having care and custody of property outside the **premises**.

9.  **Money** means:

    a.  Currency, coins and bank notes in current use and having a face value; and

    b.  Travelers checks, register checks and money orders held for sale to the public.

10.  **Occurrence** means:

    a.  As respects Insuring Agreement 1., all loss or losses caused by, or involving, one or more **employees**, whether the result of a single act or series of related acts.

    b.  As respects Insuring Agreement 2., all loss or losses caused by any person or in which that person is involved, whether the loss involves one or more instruments.

    c.  As respects all other Insuring Agreements, all loss or losses caused by:

        (1)  An act, or series of related acts, involving one or more persons; or

        (2)  An act or acts involving a person or group of persons acting together; or

        (3)  An act or event, or a series of related acts or events, not involving any identifiable person.

11.  **Other property** means any tangible property other than **money** and **securities** that has intrinsic value but does not include any property excluded under this insurance.

12.  **Premises** means the interior of that portion of any building you occupy in conducting your business.

13.  **Robbery** means the taking of property from the care and custody of a person by one who has:

    a.  Caused or threatened to cause that person bodily harm; or

    b.  Committed an obviously unlawful act witnessed by that person.

14.  **Safe burglary** means the taking of:

    a.  Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

    b.  A safe or vault from inside the **premises**.

15.  **Securities** mean negotiable and nonnegotiable instruments or contracts representing either **money** or property and includes:

    a.  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b.  Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include **money**.

16.  **Theft** means any act of stealing.

17.  **Watchperson** means any person you retain specifically to have care and custody of property inside the premises and who has no other duties.

VT 000311

**D. EXCLUSIONS**    **Applicable to All Insuring Agreements, Except as Indicated**

We will not pay for loss as specified below:

**1. Acts Committed by You or Your Partners**

Loss resulting from any dishonest act committed by you or any of your partners whether acting alone or in collusion with other persons.

**2. Acts of Employees, Directors, Trustees or Representatives**

We will not pay for loss resulting from any dishonest act committed by any of your **employees**, directors, trustees or authorized representatives:

a.  Acting alone or in collusion with other persons; or

b.  While performing services for you or otherwise;

except when covered under Insuring Agreement 1.

**3. Fire**

Loss from damage to the **premises** resulting from fire, however caused.

**4. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**5. Indirect Loss**

Loss that is an indirect result of any act or **occurrence** covered by this insurance including, but not limited to, loss resulting from:

a.  Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, **money, securities** or **other property.**

b.  Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

c.  Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**6. Legal Expenses**

Expenses related to any legal action, except when covered under Insuring Agreement 2.

**7. Nuclear**

Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

**8. War and Similar Actions**

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

**Applicable to Specific Insuring Agreements**

We will not pay for loss as specified below:

**1. Under Insuring Agreement 1**

**Employee Canceled Under Prior Insurance**

Loss caused by any **employee** of yours, or predecessor in interest of yours, for whom similar prior insurance has been canceled and not reinstated since the last such cancellation.

**2. Under Insuring Agreements 1 and 5**

**Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

6

VT 000312

a.  An inventory computation; or

b.  A profit and loss computation.

3.  **Under Insuring Agreements 3 and 4**

a.  **Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

b.  **Money Operated Devices**

Loss of property contained in any **money** operated device unless the amount of **money** deposited in it is recorded by a continuous recording instrument in the device.

c.  **Transfer or Surrender of Property**

(1)  Loss of property after it has been transferred or surrendered to a person or place outside **the premises** or **banking premises:**

(i)  On the basis of unauthorized instructions; or

(ii)  As a result of a threat to do:

(a)  Bodily harm to any person; or

(b)  Damage to any property.

(2)  But, this exclusion does not apply under Insuring Agreement 4. to loss of **money,** **securities** and other property while outside the **premises** or **banking premises** in the care and custody of a **messenger** if you:

(i)  Had no knowledge of any threat at the time the conveyance began; or

(ii)  Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

d.  **Vandalism**

Loss from damage to any property, safe, vault, or to the **premises** or its exterior, by vandalism or malicious mischief.

4.  **Under Insuring Agreement 4**

**Motor Vehicles or Equipment and Accessories**

Loss of motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

5.  **Under Insuring Agreements 3 and 4**

a.  **Exchanges or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

b.  **Voluntary Parting of Title to or Possession of Property**

Loss resulting from **your** or anyone acting on **your** express or implied authority, being induced by any dishonest act to part voluntarily with title to or possession of any property.

**E.  CONDITIONS**    **Applicable to All Insuring Agreements**

1.  **Cancellation**

a.  The first named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

b.  We may cancel this Policy by mailing or delivering to the first named Insured written notice of cancellation at least:

(1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2)  30 days before the effective date of cancellation if we cancel for any other reason.

VT 000313

   c.   We will mail or deliver our notice to the first named Insured's last mailing address known to us.

   d.   Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

   e.   If this Policy is canceled, we will send the first named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   f.   If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.  Changes**

   This Policy contains all the agreements between you and us concerning the insurance afforded. The first named Insured shown in the Declarations is authorized on behalf of all insureds to agree with us on changes in the terms of this Policy. If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this Policy.

**3.  Concealment, Misrepresentation or Fraud**

   This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

   a.   This insurance;

   b.   The covered property;

   c.   Your interest in the covered property; or

   d.   A claim under this insurance.

**4.  Consolidation and Merger**

   If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity any additional persons become **employees** or you acquire the use and control of any additional **premises**:

   a.   You must give us written notice and obtain our written consent to extend this insurance to such additional **employees** or **premises**. We may condition our consent upon payment of an additional premium; but

   b.   For the first 60 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, any insurance afforded for **employees** or **premises** also applies to these additional **employees** or **premises** for acts committed or events occurring within said 60 day period.

**5.  Deductible**

   a.   We will not pay for loss in any one occurrence unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We then will pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event more than one Deductible Amount could apply to the loss, only the highest Deductible Amount may be applied.

   b.   For losses covered under Insuring Agreement 1. you must:

      (1)  Give us notice as soon as possible even though the loss falls entirely within the Deductible Amount; and

      (2)  Upon our request, give us a statement describing the loss.

   c.   The deductible does not apply to loss sustained by any **employee benefit plan(s)**.

**6.  Discovery of Loss**

   Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this insurance has been or will be incurred, even though the exact amount or details of loss may not then be known.

VT 000314

Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this insurance.

**7. Duties in the Event of Loss**

After you discover a loss or a situation that may result in loss of, or loss from damage to, **money, securities** or **other property** you must:

a. Notify us as soon as possible;

b. Submit to examination under oath at our request and give us a signed statement of your answers;

c. Give us a detailed, sworn proof of loss within 120 days; and

d. Cooperate with us in the investigation and settlement of any claim.

**8. Employee Benefit Plan(s)**

a. If any **employee benefit plan(s)** is insured jointly with any other entity under this insurance, you or the plan administrator must select a Limit of Insurance for Insuring Agreement 1. that is sufficient to provide a limit of insurance for each plan that is at least equal to that required if each plan were separately insured.

b. If the first named Insured is an entity other than a plan, any payment we make to that Insured for loss sustained by any plan will be held by that Insured for the use and benefit of the plan(s) sustaining the loss.

c. If two or more plans are insured under this insurance, any payment we make for loss:

(1) Sustained by two or more plans; or

(2) Of commingled **funds** or **other property** of two or more plans;

that arises out of one **occurrence**, is to be shared by each plan sustaining loss in the proportion that the limit of insurance required for each such plan bears to the total of those limits.

**9. Extended Period to Discover Loss**

a. We will pay for loss that you sustained prior to the effective date of termination or cancellation of this insurance, which is discovered by you:

(1) Within 60 days following the date of termination or cancellation; and

(2) As respects any **employee benefit plan(s)**, within one year following the date of termination or cancellation.

b. However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded by this Policy whether or not such insurance provides coverage for loss sustained prior to its effective date.

**10. Joint Insured**

a. The first named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

b. If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

c. If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

d. An **employee** of any Insured is considered to be an **employee** of every Insured.

e. If this insurance or any of its coverage is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered during the period of time provided in the Extended Period to Discover Loss Condition E. 9. However, this

VT 000315

extended period to discover loss terminates as to that Insured immediately upon the effective date of any other insurance obtained by that Insured replacing in whole or in part the insurance afforded by this Policy whether or not such insurance provides coverage for loss sustained prior to its effective date.

f.   We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

## 11. Legal Action Against Us

You may not bring any legal action against us involving loss:

a.   Unless you have complied with all the terms of this Policy; and

b.   Until 90 days after you have filed proof of loss with us; and

c.   Unless brought within 2 years from the date you discover the loss.

## 12. Liberalization

If we adopt any revision that would broaden the coverage under this Policy without additional premium within 45 days prior to or during the Policy Period, the broadened coverage will immediately apply to this insurance.

## 13. Limit of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## 14. Loss Covered Under More Than One Coverage

If two or more coverages of this Policy apply to the same loss, we will pay the lesser of:

a.   The actual amount of loss; or

b.   The highest single Limit of Insurance applicable to those coverages.

## 15. Non-Cumulation of Limit of Insurance

Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or Policy Period to Policy Period.

## 16. Other Insurance

a.   This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity. However, this insurance will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

b.   Under Insuring Agreement 4., we will pay only for the amount of loss that you cannot recover:

   (1)  Under your contract with the armored motor vehicle company; and

   (2)  From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

## 17. Ownership of Property, Interests Covered

The property covered under this insurance is limited to property:

a.   That you own or hold; or

b.   For which you are legally liable.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

## 18. Records

You must keep records of all covered property so we can verify the amount of any loss.

10

VT 000316

**19. Recoveries**

    a.  Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

        (1)  To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

        (2)  Then to us, until we are reimbursed for the settlement made;

        (3)  Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

    b.  Recoveries do not include any recovery:

        (1)  From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

        (2)  Of original **securities** after duplicates of them have been issued.

**20. Territory**

This insurance covers only acts committed or events occurring within the United States of America, U.S. Virgin Islands, Puerto Rico or Canada. In addition, under Insuring Agreement 1., we will pay for loss caused by any employee while temporarily outside of said territories for a period of not more than 90 days.

**21. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual named insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**22. Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You also must do everything necessary to secure those rights and do nothing after loss to impair them.

**23. Valuation — Settlement**

    a.  Subject to the applicable Limit of Insurance provision we will pay for:

        (1)  Loss of **money** but only up to and including its face value. We may, at our option, pay for loss of **money** issued by any country other than the United States of America:

           (i)  At face value in the **money** issued by that country; or

          (ii)  In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

        (2)  Loss of **securities** but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

           (i)  Pay the value of such securities, or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those **securities**; or

          (ii)  Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **securities**. However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

              (a)  Value of the **securities** at the close of business on the day the loss was discovered; or

              (b)  Limit of Insurance.

VT 000317

(3) Loss of, or loss from damage to, **other property** or loss from damage to the premises or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

    (i) The Limit of Insurance applicable to the lost or damaged property;

    (ii) The cost to replace the lost or damaged property with property:

        (a) Of comparable material and quality; and

        (b) Used for the same purpose; or

    (iii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(4) We will not pay on a replacement cost basis for any loss or damage:

    (i) Until the lost or damaged property actually is repaired or replaced; and

    (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

b. We may, at our option, pay for loss of, or loss from damage to, property other than **money**:

(1) In the **money** of the country in which the loss occurred; or

(2) In the United States of America dollar equivalent of the **money** of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

c. Any property that we pay for or replace becomes our property.

**Applicable to Specific Insuring Agreements**

1. **Insuring Agreement 1**

   **Cancellation as to Any Employee**

   This insurance is canceled as to any **employee**:

   a. Immediately upon discovery by:

       (1) You; or

       (2) Any of your partners, officers or directors not in collusion with the **employee**; or

       (3) As to **Employee benefit plan(s)**, any trustee, fiduciary or plan administrator not in collusion with the **employee**;

   of any dishonest act committed by that **employee** whether before or after becoming employed by you.

   b. On the date specified in a notice mailed to you. That date will be at least 30 days after the date of mailing. The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

2. **Insuring Agreement 2**

   a. **Deductible**

   The deductible does not apply to legal expenses paid under Insuring Agreement 2.

   b. **Facsimile Signatures**

   We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

   c. **Proof of Loss**

   You must include with your proof of loss any instrument involved in that loss, or, if

12

VT 000318

that is not possible, an affidavit setting forth the amount and cause of loss.

    **d.  Territory**

    We will cover loss you sustain anywhere in the world. The Territory Condition does not apply to Insuring Agreement 2.

**3.  Insuring Agreements 3 and 4**

    **a.  Special Limit of Insurance for Specified Property**

    We only will pay up to $5,000 for any one **occurrence** of loss of, and loss from damage to:

      (1)  Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

      (2)  Manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

    **b.  Duties in the Event of Loss**

    If you have reason to believe that any loss of, or loss from damage to, **money, securities** or other **property** involves a violation of law, you must notify the police.

**4.  Insuring Agreement 5**

    **a.  Special Limit of Insurance for Specified Property**

    We only will pay up to $5,000 for any one **occurrence** of loss of, and loss from damage to, manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

    **b.  Duties in the Event of Loss**

    If you have reason to believe that any loss of, or loss from damage to, **money, securities** or other **property** involves a violation of law, you must notify the police.

    **c.  Territory**

    We will cover loss you sustain anywhere in the world. The Territory Condition does not apply to Insuring Agreement 5.

**5.  Insuring Agreement 6**

    **a.  Duties in the Event of Loss**

    You must notify the police if you have reason to believe you have accepted a **counterfeit** money order or **counterfeit** paper currency.

IN WITNESS WHEREOF, we have caused this Policy to be executed on the Declarations page

VT 000319

Policy Number: BND0101687

RLI Insurance Company

## SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Corporate Secretary

President & COO

ILF 0001C (04/16)

VT 000320

Policy Number:  BND0101687

**THIS ENDORSEMENT/RIDER CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# APPLICABLE FORMS & ENDORSEMENTS/RIDERS

FORMS AND ENDORSEMENTS/RIDERS LISTED BELOW APPLY TO AND ARE MADE PART OF THIS POLICY AT TIME OF ISSUE.

| | |
|---|---|
| ILF 0001C (04/16) | Signature Page - Commercial Lines |
| SE 00 48 03 00 | Include Cov. For Loss of Clients' Property Resulting From Employee Dishonesty |
| SE 00 11 03 00 | Include Specified Non-Compensated Officers As Employees |
| SE 00 41 03 00 | Include Coverage For Funds Transfer Fraud |
| SE 01 45 02 06 | Occurrence Endorsement |
| SE 00 02 03 00 | Policy Bridge Discovery Replacing Loss Sustained |
| SE 00 74 03 00 | Texas Changes |
| SE 01 49 03 08 | Texas Changes |
| SE 01 06 03 00 | Texas Changes - Loss Payment |
| SE 01 38 09 01 | Texas Notice |
| CCP 607 (07/08) | Amended Money Orders And Counterfeit Paper Currency |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RIL 2150 (08/08)

Page  1 of 1

VT 000321

Policy Number: BND0101687

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INCLUDE COVERAGE FOR LOSS OF CLIENTS' PROPERTY RESULTING FROM EMPLOYEE DISHONESTY

| | | |
|---|---|---|
| **A. COVERAGE** | We will pay for loss of, and loss from damage to, **money, securities**, and **other property** sustained by a **client** of yours, resulting directly from dishonest acts committed by an identified **employee**, acting alone or in collusion with other persons, with the manifest intent to: | |
| | a. Cause your **client** to sustain loss; and also | |
| | b. Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for: | |
| | | (1) The **employee**; or |
| | | (2) Any person or organization, other than you, intended by the **employee** to receive that benefit. |
| **B. DEFINITION** | As used in this Insuring Agreement, client means an entity for which you perform services as specified in a written agreement. | |
| **C. LIMIT OF INSURANCE AND DEDUCTIBLE** | The Limit of Insurance and Deductible Amount are shown in the Declarations. | |
| **D. CONDITION** | For purposes of this Insuring Agreement 7. only, Condition 17. Ownership of Property, Interests Covered is deleted and replaced with the following: | |
| | The property covered under this insurance is limited to property: | |
| | a. That your **client** owns or holds; or | |
| | b. For which your **client** is legally liable. | |
| | However, this insurance is for your benefit only. It provides no direct rights or benefits to any other person or organization, including your **client**. Any claim for loss to your client that is covered under this insurance must be presented by you. | |
| **E. EXCLUSION** | Exclusion D.2. Acts of Employees, Directors, Trustees or Representatives does not apply to this Insuring Agreement. | |

**CRIME PROTECTION POLICY**
**INSURING AGREEMENT 7**
SE 00 48 03 00 Printed in U.S.A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INCLUDE SPECIFIED NON-COMPENSATED OFFICERS AS EMPLOYEES

This Endorsement modifies Crime Protection Policy No. <u>BND0101687</u> .

1. **Employee** also includes your following non compensated officers:

   All Non-Compensated Officers

VT 000323

Policy Number: BND0101687

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INCLUDE COVERAGE FOR FUNDS TRANSFER FRAUD

| | | |
|---|---|---|
| **A.** | **COVERAGE** | We will pay for loss of **funds** resulting directly from a **fraudulent instruction** directing financial institution to transfer, pay or deliver **funds** from your **transfer account**. |
| **B.** | **LIMIT OF INSURANCE AND DEDUCTIBLE** | The Limit of Insurance and Deductible Amount are shown in the Declarations. |
| **C.** | **DEFINITIONS** | As used in this Insuring Agreement: |

    **a. Fraudulent instruction** means:

        (1) An electronic, telegraphic, cable, teletype, telefacsimilie or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

        (2) A written instruction (other than those described in Insuring Agreement 2.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

        (3) An electronic, telegraphic, cable, teletype, telefacsimilie, telephone or written instruction initially received by you which purports to have been transmitted by an Employee but which was in fact fraudulently transmitted by someone else without your or the Employee's knowledge or consent.

    **b. Transfer account** means:

        An account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of **funds**:

        (1) By means of electronic, telegraphic, cable, teletype, telefacsimilie or telephone instructions communicated directly or though an electronic funds transfer system; or

        (2) By means of written instructions (other than those described in Insuring Agreement 2.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

VT 000324

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# OCCURRENCE ENDORSEMENT

This Endorsement modifies Crime Protection Policy No. BND0101687 .

1. Paragraph **10. Occurrence** of the **Definitions** of this Policy is deleted and replaced by the following:

   **10. Occurrence** means:

   a. As respects Insuring Agreement 1., all loss or losses caused by or involving any **employee**, acting alone or in collusion with other persons, or any group of **employees** acting together, even if in collusion with other persons, whether the result of a single act or multiple acts and whether or not sustained only during the period of this Policy. All acts by one **employee**, acting alone or in collusion with other persons, or by any group of **employees** acting together, and whenever performed, can give rise to only one occurrence.

   b. As respects Insuring Agreement 2., all loss or losses caused , or contributed to, by any one person, acting alone or in collusion with others, or in which any such person is implicated, whether the loss or losses involves one or more instruments.

   c. As respects all other Insuring Agreements, all loss or losses caused by (1) a single act or series of related acts (2) any act or acts involving one person, or a group of persons, acting together, or (3) an act or event or a series of related acts or events, not involving any identifiable person.

   Copyright, The Surety Association of America, 2005

VT 000325

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY BRIDGE
# DISCOVERY REPLACING LOSS SUSTAINED

This Endorsement modifies Crime Protection Policy No. BND0101687 .

If the Crime Protection Policy to which this endorsement is attached replaces similar prior insurance that provided you with an extension of time after the policy period to discover loss that you sustained during the term of the prior insurance, only in regard to said similar prior insurance and to loss discovered during this extended period of time, paragraph a. of the **Other Insurance** Condition of the **Conditions Applicable To All Insuring Agreements** is deleted and replaced by the following:

a.  We will not pay you for loss that you sustained during the term of the prior insurance and discovered during such extension of time, unless the amount of loss exceeds the limit of insurance of your prior policy applicable to such loss. In that case, we will pay you, subject to the terms and provisions of this Policy, the lesser of:

   (1)  The excess of your covered loss over the applicable limit of insurance of the prior policy; or

   (2)  The excess of the applicable Limit of Insurance shown in the Declarations of this Policy over the applicable limit of insurance of the prior policy.

   We will not apply our deductible to this excess loss.

          Copyright, The Surety Association of America, 1999

VT 000326

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# TEXAS CHANGES

This Endorsement modifies Crime Protection Policy No. BND0101687

The following subparagraph d. is added to Condition 23. **Valuation – Settlement** of the Conditions Applicable to All Insuring Agreements:

**d.** In the event arbitration is utilized, each party will select a competent and impartial arbitrator. The two arbitrators will select an umpire. If they cannot agree for 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators will state separately the value of the property and amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen arbitrator; and

**2.** Bear the other expenses of the arbitration and umpire equally.

If we submit to an arbitration, we will still retain our right to deny the claim.

Copyright, The Surety Association of America, 1999

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This Endorsement modifies Crime Protection Policy No. BND0101687     .

1. Condition 11. **Legal Action Against Us** of the Conditions Applicable to All Insuring Agreements is replaced by the following:

   **Legal Action Against Us**

   You may not bring any legal action against us involving more than 2 years and 1 day after the earlier of (a) the date you gave us the initial proof of loss or (b) 120 days after discovery of the loss.

2. The following Condition is added to the Policy applicable to all Insuring Agreements:

   We may not cancel or refuse to renew this Policy based solely on the fact that the policyholder is an elected official.

VT 000328

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – LOSS PAYMENT

This Endorsement modifies Crime Protection Policy No. BND0101687    .

**1.** The following Conditions are added:

**Claims Handling**

**a.** Within 15 days after we receive written notice of claim, we will:

**(1)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**(2)** Begin any investigation of the claim; and

**(3)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**b.** We will notify you in writing as to whether:

**(1)** The claim or part of the claim will be paid;

**(2)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**(3)** More information is necessary; or

**(4)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

**c.** We will provide notification, as described in **b. (1)** through **b. (4)** above, within:

**(1)** 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

**(2)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

**d.** We will pay for covered loss or damage within 5 business days after:

**(1)** We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this Policy, we will make payment within 5 business days after the date you have complied with such terms.

SE 01 06 03 00            Copyright, The Surety Association of America, 1999            Page 1 of 2

VT 000329

e. If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **b.** and **c.** above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which is:

**(1)** Declared a disaster under the Texas Disaster Act of 1975; or

**(2)** Determined to be a catastrophe by the State Board of Insurance.

The term "business day", as used in this Endorsement, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

VT 000330

Policy Number: BND0101687

# TEXAS NOTICE

- This Crime Protection Policy is a discovery form.

- The terms of the Policy require that losses be <u>discovered</u> during the policy period or within 60 days from the date of the termination of the Policy (the Extended Period to Discover Loss, Condition **E. 9.**). The Extended Period to Discover Loss should be reviewed carefully as well as any endorsement excluding losses sustained prior to a certain date (a "retroactive date").

VT 000331

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDED MONEY ORDERS
# AND COUNTERFEIT PAPER CURRENCY

This Endorsement modifies Crime Protection Policy No. BND0101687   .

1. Section **B. INSURING AGREEMENTS – 6. Money Orders and Counterfeit Paper Currency** is deleted and replaced by:

   6. **Money Orders and Counterfeit Paper Currency**

   We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, **money** or services:

   a. Money orders issued by any post office, express company or bank that are not paid upon presentation.

   b. **Counterfeit** paper currency;

   that is acquired during the regular course of business.

This endorsement shall become effective as of 12:01 a.m. on 10/23/2017.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

VT 000332



**CLAIM DEPARTMENT:** P.O. BOX 3961 • PEORIA, IL 61612-3961
**UPS/FEDEX:** 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
**P** 800-444-0406
**F** 866-692-6796
**RLICORP.COM**

November 28, 2017

**VIA CERTIFIED MAIL# 9214 8969 0099 9790 1618 3657 86 – RETURN RECEIPT
REQUESTED and EMAIL (mailto:mb@valerotitle.com)**
Melvin Brookins
Valero Title, Inc.
Building II, Suite 120
807 Las Cimas Parkway
Austin, TX 78746

|  | | |
|---|---|---|
| Re: | Insured: | **Valero Title, Inc.** |
| | Matter: | ***November 1, 2017 Notice of Circumstances*** |
| | Policy No.: | **BND0101687** |
| | Policy Term: | **10/23/17 to 10/23/18** |
| | Claim No.: | **00447105** |

Dear Mr. Brookins:

We are in receipt of correspondence dated November 1, 2017, sent on behalf of Valero Title, Inc. ("Valero" or the "Insured"), to provide notice that Valero discovered it sustained or may sustain a loss that may be covered under the above-referenced Crime Protection Policy ("Crime Policy"). We are directing this letter to you as the authorized insurance representative of the Insureds[1] under the above-referenced policy. To the extent you are not acting on behalf of the Insureds for insurance coverage purposes, we request that you forward a copy of this letter to them or their insurance representative for their information and that you inform us with whom we should communicate in the future regarding this matter.

This matter has been assigned to me for future handling and all correspondence in connection with this matter should be directed to my attention. Also, in order to ensure prompt replies to any inquiries you may have, it is essential that you refer to RLI's assigned claim number, referenced above, whenever corresponding on this matter.

**Summary of Matter**

On November 1, 2017, the Insured reported that email communication with its bank was intercepted by a fraudster impersonating the bank. The fraudster then sent incorrect wiring instructions to the Insured. The Insured received the fraudster's email, and sent $250,945.31 to the wrong account.

---

[1] Please note that bold or capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the above-referenced policy.



EXHIBIT
3

RLI INSURANCE COMPANY

### The Policy

RLI issued Crime Policy BND0101687 to Valero Title, Inc. which has a policy period of October 23, 2017 to October 23, 2018 and a Per Occurrence Limit of Insurance of $1 million and a $25,000 Per Occurrence Deductible.

The Insuring Clause of the Computer Fraud Coverage Section states:

### 5. Computer Fraud

We will pay for loss of, and loss from damage to, **money**, **securities** and **other property** resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the **premises** or **banking premises**:

      a. To a person (other than a **messenger**) outside those **premises**; or
      b. To a place outside those **premises**.

**Premises** means the interior of that portion of any building you occupy in conducting your business.

**Banking premises** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

Based on the above Policy terms and definitions, it does not appear that the reported matter falls within the Computer Fraud Coverage Section. The Computer Fraud Coverage Section covers loss *resulting directly* from the use of a computer to fraudulently cause a transfer of that property *from inside the premises or banking premise* to a person or a place outside those premises. That is, in order for loss to be covered under this Coverage Section, a hacked computer must directly cause money to be transferred from the Insured to another account. However, according to the information that we have received to date, it does not appear that your computers were hacked, but instead, it appears that an employee received an external email and input and approved a wire transfer to a fraudster's account.

Nonetheless, we remain open to considering this claim further based upon a complete proof of loss and supporting documentation. If we have misunderstood the claim, please let us know. Otherwise, to the extent that you believe that this claim triggers the Computer Fraud Coverage Section, please explain why and provide us supporting documentation. In particular, please let us know whether you believe that your systems were hacked or infected with a virus or malicious software. If so, please provide us documentation of such a hacking or infection.

We also conducted a preliminary analysis of this claim under the Funds Transfer Fraud Endorsement, which states as follows:

RLI INSURANCE COMPANY

We will pay for loss of **funds** resulting directly from a **fraudulent instruction** directing financial institution to transfer, pay or deliver **funds** from your **transfer account**.

As used in this Insuring Agreement:

**a. Fraudulent instruction** means:

    (1) An electronic, telegraphic, cable, teletype, telefacsimilie or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

    (2) A written instruction (other than those described in Insuring Agreement 2.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

    (3) An electronic, telegraphic, cable, teletype, telefacsimilie, telephone or written instruction initially received by you which purports to have been transmitted by an Employee but which was in fact fraudulently transmitted by someone else without your or the Employee's knowledge or consent.

**b. Transfer account** means:

An account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of **funds**:

    (1) By means of electronic, telegraphic, cable, teletype, telefacsimilie or telephone instructions communicated directly or though an electronic funds transfer system; or

    (2) By means of written instructions (other than those described in Insuring Agreement 2.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

Based on the above Policy terms and definitions, it does not appear that the reported matter falls within the Funds Transfer Fraud Coverage Section. Based upon the information produced to date, it does not appear that the claimed transfer satisfies that definition because the subject email containing the false bank routing information was purportedly sent by your bank; it does not appear to have been "purport[ed] to have been transmitted by you" as required by Section (1), "purpot[ed] to have been issued by you" as required by Section (2), or "purport[ed] to have been transmitted by an Employee but which was in fact fraudulently transmitted by someone else without your or the Employee's knowledge or consent" as required by Section (3).

**RLI INSURANCE COMPANY**

We remain open to considering this claim further based upon a complete proof of loss and supporting documentation. If we have misunderstood the claim, please let us know. Otherwise, to the extent that you believe that this claim triggers the Funds Transfer Fraud Coverage Section, please explain why and provide us supporting documentation.

Based on the initial information that we have received, it does not appear that there is coverage for this matter under the Crime Policy. However, if you believe that you have additional information that would assist us in reviewing this matter for coverage, we ask that you provide a proof of loss. Per the Crime Policy, the Insured must submit a proof of loss within 120 days of the date of discovery of the loss. Because the November 1, 2017 email did not identify when discovery occurred, RLI cannot calculate the deadline for the Insured's proof of loss. Please refer to Section 6. And 7. of the Crime Policy – which sets out the deadline and requirements for pursuing a claim:

**6.      Discovery of Loss**

Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this insurance has been or will be incurred, even though the exact amount or details of loss may not then be known.

Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this insurance.

**7.      Duties in the Event of Loss**

After you discover a loss or a situation that may result in loss of, or loss from damage to, **money**, **securities** or **other property** you must:

a.      Notify us as soon as possible;
b.      Submit to examination under oath at our request and give us a signed statement of your answers;
c.      Give us a detailed, sworn proof of loss within 120 days; and
d.      Cooperate with us in the investigation and settlement of any claim.

RLI does not utilize a proof of loss form. The Insured may submit its proof of loss in the form it deems appropriate, as long as it is sworn to by an authorized representative. The proof of loss should provide all documentation and information necessary to substantiate its loss and the amount of the loss. At this point, based upon the limited information provided in the November 1, 2017 email, RLI cannot determine what information it will need to analyze the Insured's claim.

Once we receive the proof of loss, I will let you know whether RLI needs additional documents or information to analyze the claim or whether it is in a position to render a decision

Melvin Brookins
Valero Title, Inc.
November 28, 2017
Page 5 of 5

on the claim.  In the event you know that you will not be submitting a proof of loss with respect to this matter, please advise us and we will close our file.

If you would like to discuss this matter further, please feel free to contact me.  In the interim, RLI expressly reserves the right to assert all rights and defenses which may be applicable to the claim, under the Crime Policy and at law, and whether or not based upon facts now known or available to RLI.

Yours truly,

Alison E. Kowal
RLI Insurance Company
(312) 360-1566 | Ext. 1227
alison.kowal@rlicorp.com

cc:      Skylar Barker, TitlePac, Inc. (sbarker@titlepac.com)

 **HIRSCH & WESTHEIMER**
Attorneys and Counselors

T. 713.220.9141
F. 713.223.9319
emettenbrink@hirschwest.com

December 1, 2017

*Via Email: alison.kowal@rlicorp.com &*
*CMRRR # 9414 7266 9904 2090 3378 56*

Alison E. Kowal
RLI INSURANCE COMPANY
9025 N. Lindbergh Drive
Peoria, IL 61615

   Re:   Policy No.   BND0101687
         Claim No.    00447105
         Insured:     Valero Title, Inc. ("**Valero**")

Dear Ms. Kowal:

   Please be advised that Hirsch & Westheimer, P.C. has been retained by
Valero with regard to the fraudulent wire transfer scheme perpetrated against
Valero and the subsequent claim made to the RLI Insurance Company ("**RLI**")
seeking coverage for the $250,945.31 fraudulent wire transfer.  We are in
receipt of your letter dated November 28, 2017 and disagree with your
conclusion that coverage is denied at this time. Demand is hereby made that
you make a determination of coverage under the policy for the loss at issue.

   This claim involves a construction loan transaction by and between
Whitney Hancock Bank ("**Whitney**"), as lender, and its customer, Contempo
Builder ("**Contempo**"), the payoff of that certain loan that was scheduled to
close on or about September 28, 2017 with Valero acting as escrow agent. As
you are aware, Valero was the victim of a fraudulent scheme wherein fraudulent
wire transfer instructions were communicated to Valero.  The fraudulent wire
transfer scheme was apparently accomplished via a hack and/or data breach
of the email communications by and between the involved parties. We are still
investigating exactly how this occurred.  Nevertheless, it appears that Valero's
employees instructed its bank to do a wire transfer and the funds in the amount
of $250,945.31 were wired to a bank account at Wells Fargo, apparently
belonging to a third party not associated with the "true" transaction.

1415 Louisiana   36th Floor   Houston   Texas 77002   |   713.223.5181   hirschwest.com

20170812 20170812/2841613.1


EXHIBIT
**4**

Alison E. Kowal
December 1, 2017
Page 2

On or about October 25, 2017, Contempo notified Valero that the wire transfer was not received as expected.  Once notified, Valero began its investigation into the matter and determined that the wire transfer instructions Valero sent to its bank to conduct the transfer were not legitimate.  Valero contacted Bank of America and/or Wells Fargo Bank seeking to reverse the transaction, but the funds had been removed from the receiving bank account. Valero further reported the fraudulent wire transfer scheme to law enforcement and Valero understands that the FBI currently has an open investigation into the matter.  Consequently, Valero has suffered a loss in the transaction at issue in the amount of at least $250,945.31 for which Valero seeks coverage under the policy that it purchased from RLI in the belief that such a policy would protect Valero from situations such as the instant claim.

It is clear that the Funds Transfer Fraud policy applies to this situation. According to your declination letter, you allege that the Funds Transfer Fraud protection does not apply because you believe that the false wire transfer instructions were not transmitted by Valero or the instructions were not issued by Valero.  However, it appears that Valero's employees instructed its bank to do a wire transfer and the funds in were wired to a bank account at Wells Fargo, apparently belonging to a third party not associated with the transaction.  It is clear that these wire transfer instructions were fraudulent and Valero had no knowledge that the instructions were fraudulent.  In other words, the instructions were purportedly transmitted by Valero to its bank, which was forged or altered by someone other than Valero.  Contrary to your letter, this incident falls within the parameters of a fraudulent instruction as defined by Sections (1) and (2).  Your reasons for declining coverage does not apply in this instance.

Your declination letter also states that the incident would not constitute computer fraud because you believe that the fraudulently caused transfer did not incur with Valero's premises.  According to the definition provided in your letter, the transfer of property must have incurred from inside Valero's premises or a banking premises.  The funds at issue were clearly transferred from Valero's bank to a bank account at Wells Fargo.  Therefore, the transfer occurred at a banking premises according to your guidelines.  Additionally, if you are basing your decision on the locations of the computers that were hacked, it appears that any hack or breach would have been with Valero's or Whitney's computer systems within their premises, which is in accordance with your definition of premises and banking premises.

Based on the language of the policy, we believe a declination of coverage is without merit.  Demand is hereby made that you review and make a determination in favor of coverage for this loss.  If RLI does not comply with its obligations under the terms of the above referenced policy and pay Valero's claim less any required retention, Valero intends to pursue all rights and remedies available to it under the policy, at statute, and at common law, including but not limited to filing a lawsuit against RLI seeking a declaratory judgment regarding the coverage provided by the policy, for breach of

Alison E. Kowal
December 1, 2017
Page 3

contract, and/or for bad faith. In doing so, Valero will seek to recover the full amount of its loss of at least $250,945.31, reasonable and necessary attorney's fees, costs and expenses as well as any and all additional damages available under the applicable statutes or at common law. While Valero would prefer to resolve this matter without litigation, if this matter cannot be satisfactorily resolved, please be advised that Valero intends to enforce any and all of its rights and remedies against RLI.

Enclosed is a copy of a letter I received from an attorney representing the true intended beneficiary of the funds. He confirmed that he is planning to file a lawsuit in the immediate future and will now be seeking additional damages and attorney's fees, costs and expenses.

Nothing contained in this letter is intended to suggest we have set forth all of Valero's rights and remedies against RLI, whether at law or in equity. Further, nothing contained in this letter is intended as a waiver of Valero's rights or remedies whether at law or in equity.

Time is of the essence. If you would like to discuss an amicable resolution to this matter short of litigation, please contact me at (713) 220-9141 at your earliest convenience.

Please direct all further communications regarding this matter to the undersigned. If you have any questions or comments regarding this matter, please do not hesitate to contact me.

Very truly yours,

HIRSCH & WESTHEIMER, P.C.

By: Eric C. Mettenbrink

ECM/bd
Enclosure

cc:   Pat Huttenbach [firm]                          *Via Email*
      Joseph R. Anderson [firm]                      *Via Email*

20170812 20170812/2841613 1

**Patterson, Boyd & Lowery, P.C.**
**ATTORNEYS AT LAW**
**2101 Louisiana St.**
**Houston, Texas 77002**

713-222-0351
FAX: 713-759-0642

William C. Boyd
Email; wboyd@pattersonboyd.com

November 15, 2017

VALERO TITLE COMPANY
Attn: Mr. Melvin Brookins
Email mb@valerotitle.com

Re: Contempo Builder
    Property: 2205 Padron Houston Texas
    Valero File No. 17-32681
    Closing September 28, 2017

Dear Ms. Aly:

We represent Contempo Builder in connection with the captioned closing. We have made a cursory review of the facts and based upon our understanding of the facts Valero Title has breached its duties as an escrow agent by failing to properly wire transfer $250,945.31 of the closing funds to Contempo Builder's lender Whitney Hancock Bank. As a result of the breach Contempo Builder's loan at Whitney Hancock Bank is in default and demand for payment and/or renewal has been made.

Please accept this letter as formal demand that you pay $250,945.31 .to Whitney Hancock Bank within ten days of he date of this letter.   If you fail to do so we will recommend to Contempo Builder suit be filed without further notice. If it becomes necessary to file suit to collect the debt we will request the Court award reasonable attorney fees and court costs.

If you have any questions or if you know of any reason why this action should not be taken please contact us immediately.  However, you must understand that we have been retained by Contempo Builder to

collect the debt which it feels is delinquent and anything that you say to us could be used against you.  For this reason, you may prefer to have your own attorney contact us.  Regardless, we are available to discuss the matter with you or with your attorney.

Very truly yours,

PATTERSON, BOYD & LOWERY, P.C.

William C. Boyd

cc:
Valero Title Houston    houston@valerotitle.com
Ms. F. Fernandez        ffernandez@valerotitle.com
Ms. J. Anderson         janderson@valerotitle.com
Ms. L. Cazares          linda.cazares@hancockwhitney.com
Ms. M. Aly              maly@valerotitle.com



**HIRSCH & WESTHEIMER**
*Attorneys and Counselors*

T. 713.220.9184
F. 713.223.9319
phuttenbach@hirschwest.com

December 5, 2017

*Via Email: sbarker@titlepac.com and*
*Certified Mail/RRR # 9414 7266 9904 2090 3376 63*

Skylar Barker
TITLEPAC, INC.
15200 Traditions Blvd., Bldg. C
Edmond, Oklahoma 73013

| Re: | Insured: | Valero Title, Inc. |
|---|---|---|
| | Matter: | November 1, 2017 *Notice of Circumstances* |
| | Policy No.: | BND0101687 |
| | Policy Term: | 10/23/17 to 10/23/18 |
| | Claim No. | 00447105 |

Dear Ms. Barker:

Please be advised that Hirsch & Westheimer, P.C. represents Valero Title, Inc.  As seen by the enclosed letter, it appears that an insurance company is going to deny my client's claim.  As I believe you are aware, my client was defrauded when email instructions were intercepted and/or improper instructions were fraudulently sent to my client.  My client is still investigating to discover the facts.  My client's employees may have even failed to follow appropriate internal procedures allowing the loss to occur.  Ultimately, the amount of $250,945.31 was improperly wire transferred to the wrong party.

My client had gone to a convention during which these exact issues were discussed and Melvin Brookins came home and ordered additional insurance from you.  We need your assistance to make sure that the insurance that was obtained will cover this loss.

I am also enclosing a demand letter from the true intended recipient of the wire transfer.  I have had communications with the attorney and he said that they are going to be immediately filing a lawsuit against my client.  Consequently, we need your assistance to make sure that one or more insurance companies assumes the defense and handles any and all of these issues.  Again, this is why my client obtained insurance was to protect itself under this exact scenario.  We very much appreciate your assistance.

1415 Louisiana   36th Floor   Houston, Texas 77002   T 713 223 5181   *hirschwest.com*



EXHIBIT
5

Skylar Barker
TITLEPAC, INC.
December 5, 2017
Page 2

     If you have any other questions or comments, please do not hesitate to call.

                           Very truly yours,

                           HIRSCH & WESTHEIMER, P.C.

                           By: _____
                                William "Pat" Huttenbach

WPH/lw
Enclosures

 **HIRSCH & WESTHEIMER**
Attorneys and Counselors

T. 713.220.9184
F. 713.223.9319
phuttenbach@hirschwest.com

December 7, 2017

*Via Email: sbarker@titlepac.com and*
*Certified Mail/RRR # 9414 7266 9904 2090 3377 64*

Skylar Barker
TITLEPAC, INC.
15200 Traditions Blvd., Bldg. C
Edmond, Oklahoma 73013

| Re: | Insured: | Valero Title, Inc. |
|---|---|---|
| | Matter: | November 1, 2017 *Notice of Circumstances* |
| | Policy No.: | BND0101687 |
| | Policy Term: | 10/23/17 to 10/23/18 |
| | Claim No. | 00447105 |

Dear Ms. Barker:

To follow-up my recent letter, enclosed please find a copy of Plaintiff's Original Petition with Request for Disclosures, Request for Admissions, Request for Production and Request for Jury Trial that was apparently filed on December 4, 2017.

If you have any other questions or comments, please do not hesitate to call.

Very truly yours,

HIRSCH & WESTHEIMER, P.C.

By: *Pat Huttenbach*
William "Pat" Huttenbach

WPH/lw
Enclosures



EXHIBIT
6

**Eric C. Mettenbrink**

| | |
|---|---|
| **From:** | Eric C. Mettenbrink <emettenbrink@hirschwest.com> |
| **Sent:** | Thursday, March 15, 2018 4:58 PM |
| **To:** | tfabian@titlepac.com |
| **Subject:** | Valero Title, Inc., Claim No. 00447105; Policy No. BND0101687 [IWOV-HIRSCHWEST.FID387952] |
| **Attachments:** | 2017-12-07 Ltr to Skylar Barker re Plaintiff_s Original Petition.pdf; 2017-12-05 Ltr to S. Barker re insurance coverage.pdf; 33f60beda149420da53a7980c56eff98 43973427bb5c4f1b63cbbc5b28a226331a182d7....eml; 1aa7bb6ec8b7e06b1ee49cace4896996 52912f70178a4fc23255541ecbfce991877c3f2....eml; 2017-12-04 Plaintiff_s Original Petition with RFD, RFA, RFP and Request for Jury Trial.PDF |

Hello Tony,

Thank you so much for speaking with me today.  As I stated over the phone, my client Valero Title was lead to believe by TitlePac that the attached lawsuit would be covered under the policies he purchased through TitlePac.  Unfortunately, the providers think otherwise.  At this point, we are considering bringing third-party claims against TitlePac.  See the attached correspondences between TitlePac and Valero title as well, which will shed some light on the subject.  Please forward my contact information to your legal department for discussion.

Sincerely,

Eric C. Mettenbrink | 🖼 Bio | vCard
HIRSCH & WESTHEIMER
Celebrating Our 100th Year
1415 Louisiana, 36th Floor, Houston, Texas 77002
T 713 220 9141 F 713 223 9319
emettenbrink@hirschwest.com
hirschwest.com

INTERNET CONFIDENTIALITY NOTICE:

This communication and any accompanying documents are confidential information that is legally privileged and intended only for the use of the person to whom it is addressed. If the reader of this message is not the named recipient or an employee or agent responsible for delivering this message to the named recipient, please notify us immediately that you have received the message in error. Then delete this message and any accompanying documents without copying or reading them. You are hereby notified that any review, disclosure, copying distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and Hirsch & Westheimer, P.C. bears no responsibility for any loss or damage arising in any way from its use.

Treasury Circular 230 Disclosure- This disclosure is provided to comply with Treasury Circular 230. This written advice is not intended or written to be used, and it cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed on the person. No limitation has been imposed by Hirsch & Westheimer, P.C. on disclosure of the tax treatment or the tax structure of the transaction.



Hirsch & Westheimer, P.C. automatically blocks e-mails containing objectionable language or suspicious content.  Therefore, messages sent to an e-mail address at hirschwest.com may only be considered received if confirmed by a return receipt.

# SWORN STATEMENT IN PROOF OF LOSS

| | |
|---|---|
| BND0101687 | 00447105 |
| POLICY NUMBER | CLAIM NO. |
| $1,000,000.00 | RL1 Insurance Company |
| AMOUNT OF POLICY AT TIME OF LOSS | Writing Company |
| Funds Transfer Fraud | Valero Title, Inc. |
| Policy Type | Insured |

Mr. Melvin Brookins, being duly sworn, deposes and says that:  Valero Title, Inc. ("Valero"), is the Insured named in policy number BND0101687 issued by RL1 Insurance Company.

To: Alison E. Kowal.

At time of the discovery of the loss, by the above-indicated policy of insurance, your insured Valero against direct loss of money or securities sustained as a result of funds transfer fraud according to the terms and conditions of the said policy.

This claim involves a construction loan transaction by and between Whitney Hancock Bank ("Whitney"), as lender, and its customer, Contempo Builder ("Contempo"), the payoff of that certain loan that was scheduled to close on or about September 28, 2017 with Valero acting as escrow agent.

On September 14, 2017, Valero requested an updated payoff from Whitney in preparation for the scheduled loan closing on September 15, 2017.  Specifically, Valero was communicating via email with Linda Cazares ("Cazares") of Whitney.  Cazares' email address was "Linda.Cazares@hancockswhitney.com".  Cazares provided an updated payoff of the loan to Valero on September 14, 2017 at 4:08:48 PM Central Time.  See the true and correct copy of the email correspondences between Cazares and Valero attached hereto and incorporated by reference as **Exhibit "A"**.

The closing did not occur on September 15, 2017, but was reschedule to occur on September 28, 2017.  On September 27, 2017, Valero once again requested an updated payoff from Whitney in preparation for the scheduled closing.  Cazares provided the updated payoff to Valero on September 27, 2017 at 10:43 am copying Jennifer Hensley ("Hensley") of Whitney as well.  However, at 2:22 pm on that same date, Valero received a follow-up email purporting to be from Cazares asking if Valero received an updated payoff letter with "minor changes".  This inquiry came from the email address "linda.cazares@hancockswhitney.com".  The email address contained an extra "s" between "hancock" and "whitney" although the signature line contained the original email address.  Hensley's email address was also replaced in a similar fashion and included in the copy line.  From September 27-29, 2017, the Whitney imposter engaged in multiple correspondences with Valero seeking updates as to when the closing funds would be transferred.  On September 29, 2017, Valero inquired to the imposters as to the wiring instructions routing number being one digit short.  The imposters then provided what they alleged were "correct" routing numbers.  See the true and correct copy of the email correspondences between the Whitney imposters and Valero attached hereto and incorporated by reference as **Exhibit "B"**.

Valero transmitted the false wire transfer instructions to its bank, Bank of America ("BOA") to transfer funds to what Valero thought was Whitney.  Ultimately, the $250,945.31 closing funds were wired from Valero's account with BOA as instructed by Valero based on the fraudulent wire transfer instructions to an account held by a third-party with Wells Fargo Bank, N.A. ("Wells Fargo").

On October 25, 2017, Cazares sent an inquiry to Contempo asking about the payoff as Whitney was not in receipt of the funds.  Cazares' email was then forwarded by Contempo to Valero informing Valero of the issue.  See the true and correct copy of the email correspondences between the Contempo and Valero attached hereto and incorporated by reference as **Exhibit "C"**.  Valero sought to reverse the fraudulent transaction, but was informed that the funds had already been removed from the Wells Fargo account.

On October 25, 2017, Valero opened up a complaint with the FBI regarding this matter.  See the true and correct copy of the FBI Complaint attached hereto and incorporated by reference as **Exhibit "D"**.

On November 1, 2017, Whitney informed Valero that Whitney has reached out to Wells Fargo, but because the transaction occurred between Wells Fargo and BOA, no information was released to Whitney.  Whitney went on to state that its IT department conducted an investigation and concluded that the modification of the wire transfer instructions was done after the email was received

20170812,20170812/2842229.1



EXHIBIT
tabbies
8

VT 000432

by Valero's server and did not occur on Whitney's end.  See the true and correct copy of the email exchange between Whitney and Valero attached hereto and incorporated by reference as **Exhibit "E"**.

On November 3, 2017, BOA provided a Payment Details Report to Valero confirming that Wells Fargo was the beneficiary bank for the wire transfer transaction.  See the true and correct copy of the Payment Details Report attached hereto and incorporated by reference as **Exhibit "F"**.

On November 6, 2017, Valero filed a complaint with the Houston Police Department regarding this matter. .  See the true and correct copy of the Houston Police Department Complaint attached hereto and incorporated by reference as **Exhibit "G"**.

On December 4, 2017, Contempo filed a lawsuit against Valero in Harris County seeking damages of at least $250,945.31. . See the true and correct copy of the Original Petition attached hereto and incorporated by reference as **Exhibit "H"**.

The said loss did not originate by any act, design or procurement on the part of your insured; nothing has been done by or with the privity or consent of your insured to violate the conditions of the policy, or render it void and no attempt to deceived the said company, as to the extent of said loss, has in any manner been made.  Any other information that may be required will be furnished and considered a part of this proof.

THE STATE OF TEXAS     §
                             §
COUNTY OF BEXAR      §

Before me, the undersigned authority, on this day appeared Melvin Brookins a person known to me, who, upon his oath, stated that he has read the foregoing document and that the statements made therein are within his personal knowledge and are true and correct.

_____
Melvin Brookins

Sworn to and subscribed before me on this _____ day of February, 2018.

CONRAD G. GALINDO, IV
Notary Public, State of Texas
Comm. Expires 11-23-2021
Notary ID 125167270

_____
NOTARY PUBLIC, STATE OF TEXAS

20170812.20170812/2842229.1

VT 000433



**From:** Cazares, Linda
**Sent:** Thursday, September 14, 2017 4:08:58 PM (UTC-06:00) Central Time (US & Canada)
**To:** Maria Aly
**Cc:** Valero Title-Houston
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*Here you go.*
*Thank you*

**Linda R. Cazares** | Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX  77027
Internal Extension 4-94-7353
Office :  (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockwhitney.com


**From:** Maria Aly [mailto:maly@valerotitle.com]
**Sent:** Thursday, September 14, 2017 3:58 PM
**To:** Cazares, Linda
**Cc:** Valero Title-Houston
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

9/22 please.

**From:** Cazares, Linda [mailto:Linda.Cazares@hancockwhitney.com]
**Sent:** Thursday, September 14, 2017 3:56 PM
**To:** Maria Aly <maly@valerotitle.com>
**Cc:** Valero Title-Houston <Houston@valerotitle.com>
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*Through what date ??*

**Linda R. Cazares** | Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX  77027
Internal Extension 4-94-7353
Office :  (713) 951-7353



EXHIBIT
A

VT 000434

Fax (713) 951-7345
linda.cazares@hancockwhitney.com

**From:** Marla Aly [mailto:maly@valerotitle.com]
**Sent:** Thursday, September 14, 2017 3:47 PM
**To:** Cazares, Linda
**Cc:** Valero Title-Houston
**Subject:** File 17-32681 2205 Padron, Houston, TX 77091

Hello,

Please provide me with an updated payoff as soon as possible. We are now closing tomorrow.

Thanks!


Marla Aly
**Valero Title, Inc.**
Office: (713) 552-1370
Fax: (866) 708.1444
www.valerotitle.com

Learn about our Commitment to Service: www.hancockwhitney.com/commitment-to-service

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This E-Mail transmission (and/or the documents accompanying it) may contain information belonging to the sender which is confidential, privileged and/or exempt from disclosure under applicable law. The information is intended only for the use of the individual(s) or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this E-Mail transmission in error, please immediately notify us by return E-Mail or telephone to arrange for return of its contents including any documents.

Learn about our Commitment to Service: www.hancockwhitney.com/commitment-to-service

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This E-Mail transmission (and/or the documents accompanying it) may contain information belonging to the sender which is confidential, privileged and/or exempt from disclosure under applicable law. The information is intended only for the use of the individual(s) or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any

2

action in reliance on the contents of this information is strictly prohibited. If you have received this E-Mail transmission in error, please immediately notify us by return E-Mail or telephone to arrange for return of its contents including any documents.

3

VT 000436



From:
To:
Subject:     RE: FW 13-3668) 2215 Padina, Houston, TX 77091
Date:        Friday, September 29, 2017 at 12:50 AM

Keene, Connie, Linda
Sent: Friday, September 29, 2017 10:49:45 AM (UTC-06:00) Central Time (US & Canada)
To: Aaron Thomas
Cc: Maria Aly; Valero Title Houston
Subject: RE: FW 13-3668) 2215 Padina, Houston, TX 77091

*I'm sorry the routing number was added with one extra number. The correct routing number are [   ]2882 or [   ]048*

On September 29, 2017 at 11:29 AM Aaron Thomas <athomas@valerotitle.com> wrote:

Hello Linda

Please preview the wiring instructions you sent. The routing number is 10 digits and should be 9.

Respectfully,

Aaron Thomas

Valero Title, Inc

1233 W. Loop South Ste 1260

Houston, Texas 77027

Office: 713.552.1370

Fax: 866.708.1444

www.valerotitle.com

Cell: 210 262.8081

From: Maria Aly
Sent: Friday, September 29, 2017 10:34 AM
To: Aaron Thomas <athomas@vd notitle.com>
Subject: FW: FW (3-3668) 2215 Padina, Houston, TX 77091

From: Connor, Linda [mailto:linda.connor@aeroadvantagg.com]
Sent: Friday, September 29, 2017 10:19 AM
To: Maria Aly <mal@valerotitle.com>
Cc: jmartis.laur@aero Advantage.com
Subject: RE: FW (3-3668) 2215 Padina, Houston, TX 77091

Yes its correct

On September 29, 2017 at 11:16 AM Maria Aly <mal@valerotitle.com> wrote:

Please confirm this info is correct?

EXHIBIT

B

Wells Fargo Bank

4505 Williams DR, Georgetown, TX 78633

Routing #: [redacted] Acct # [redacted]

**From:** Cazares, Linda [mailto:linda.cazares@nationwidetitleny.com]
**Sent:** Friday, September 29, 2017 10:01 AM
**To:** Maria Aly <maly@nationwide.com>
**Cc:** Jennifer.heasley@nationwidetitleny.com
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*Okay let me know.*

Linda R. Cazares | Residential Construction Lending
4505 Williams DR | Georgetown, TX 77091
Branch Licensed # 0-0-0101
Office: (713) 550-3954
Fax: (713) 551-5105
Email: linda.cazares@nationwidetitleny.com

On September 29, 2017 at 10:48 AM Maria Aly <maly@nationwide.com> wrote:

Following up with funder now. One moment please.

**From:** Cazares, Linda [mailto:linda.cazares@nationwidetitleny.com]
**Sent:** Friday, September 29, 2017 8:57 AM
**To:** Maria Aly <maly@nationwide.com>
**Cc:** jennifer.heasley@nationwidetitleny.com
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*Any updates yet?*

Linda R. Cazares | Residential Construction Lending
4505 Williams DR | Houston, TX 77091
Office: (713) 550-3954
Fax: (713) 551-5105
Email: linda.cazares@nationwidetitleny.com

On September 28, 2017 at 4:33 PM Maria Aly <maly@nationwide.com> wrote:

No worries.. I just don't know how long they are going to take.

**From:** Cazares, Linda [mailto:linda.cazares@nationwidetitleny.com]
**Sent:** Thursday, September 28, 2017 3:31 PM
**To:** Maria Aly <maly@nationwide.com>
**Cc:** jennifer.heasley@nationwidetitleny.com
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*Sorry for the hassle. Alright then keep me posted*

Linda R. Cazares | Residential Construction Lending
4505 Williams DR | Houston, TX 77091
Office: (713) 550-3954
Fax: (713) 551-5105
Email: linda.cazares@nationwidetitleny.com

On September 28, 2017 at 4:37 PM Maria Aly <maly@nationwide.com> wrote:

I have no idea how long the lender is going to take to review docs and issue FA.

**From:** Cazares, Linda [mailto:linda.cazares@nationwidetitleny.com]
**Sent:** Thursday, September 28, 2017 3:25 PM
**To:** Maria Aly <maly@nationwide.com>
**Cc:** jennifer.heasley@nationwidetitleny.com
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*So it might be wired late this afternoon or tomorrow morning?*

Linda R. Cazares | Residential Construction Lending

On September 28, 2017 at 4:06 PM Maria Aly <maria.aly@alamtitle.com> wrote:

Not yet. We do not have funding authorization yet.

**From:** Caceres, Linda [mailto:linda.caceres@hansonkaufman.com]
**Sent:** Thursday, September 28, 2017 2:52 PM
**To:** Maria Aly <maria@alamtitle.com>
**Cc:** Jennifer.bensley@hansonkaufman.com
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*Has this transaction been closed and payoff wire disbursed?*

On September 28, 2017 at 2:18 PM Maria Aly <maria@alamtitle.com> wrote:

Will do.

**From:** Caceres, Linda [mailto:linda.caceres@hansonkaufman.com]
**Sent:** Thursday, September 28, 2017 1:46 PM
**To:** Maria Aly <maria@alamtitle.com>
**Cc:** jennifer.bensley@hansonkaufman.com
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*Okay let me know once its wired today*

On September 28, 2017 at 12:30 PM Maria Aly <maria@alamtitle.com> wrote:

I am not sure just yet.

**From:** Caceres, Linda [mailto:linda.caceres@hansonkaufman.com]
**Sent:** Thursday, September 28, 2017 11:28 AM
**To:** Maria Aly <maria@alamtitle.com>
**Cc:** jennifer.bensley@hansonkaufman.com
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*What time will the payoff funds be disbursed this afternoon?*

On September 27, 2017 at 3:32 PM Maria Aly <maria@alamtitle.com> wrote:

Will do

**From:** Caceres, Linda [mailto:linda.caceres@hansonkaufman.com]
**Sent:** Wednesday, September 27, 2017 3:31 PM
**To:** Maria Aly <maria@alamtitle.com>
**Cc:** jennifer.bensley@hansonkaufman.com
**Subject:** RE: File 17-32681 2205 Padron, Houston, TX 77091

*Thanks let me know once the payoff funds have been wired tomorrow.*

Linda E. Cazares
[address illegible]

On September 27, 2017 at 4:33 PM Maria Aly <maly@valerotitle.com> wrote:

Yes I did.

We are closing at 1:30pm.

From: Cazares, Linda
[mailto:Linda.Cazares@stewart.com]
Sent: Wednesday, September 27, 2017 2:22 PM
To: Maria Aly <maly@valerotitle.com>
Cc: Jennifer Hensley <jhensley@valerotitle.com>
Subject: RE: File 17-32681 2205 Padron, Houston,
TX 77091

*Hi Maria,*

*Did you receive my last email with the
second updated payoff letter with minor
changes?*

*Please let me know*

From: Maria Aly
Sent: Wednesday, September 27, 2017 12:37 PM
To: Cazares, Linda
Cc: Valero Title-Houston; Hensley, Jennifer
Subject: RE: File 17-32681 2205 Padron, Houston,
TX 77091

*Thanks*

From: Cazares, Linda
[mailto:Linda.Cazares@stewart.com]
Sent: Wednesday, September 27, 2017 10:43 AM
To: Maria Aly <maly@valerotitle.com>
Cc: Valero Title-Houston
<closings@valerotitle.com>; Hensley, Jennifer
<jhensley@valerotitle.com>
Subject: RE: File 17-32681 2205 Padron, Houston,
TX 77091

*Here you go.*

Linda E. Cazares
[address illegible]
Office: (713) 551-7553

From: Maria Aly
Sent: Wednesday, September 27, 2017 10:12 AM
To: Cazares, Linda
Cc: Valero Title-Houston
Subject: RE: 17-32681 2205 Padron, Houston, TX 77091

Hello,
Please update payoff. We are definitely
closing tomorrow. So sorry.
Thank you.
Maria Aly
Valero Title, Inc.
Office: (713) 557-1370
Fax: (866) 706-1444
www.valerotitle.com
I care about our Commitment to
Service www.hhgregg.com

*****************************************
This E-Mail transmission (and/or the documents
accompanying it)
may contain information belonging to the sender

which is confidential,
privileged and/or exempt from disclosure under
applicable law. The
information is intended only for the use of the
individual(s) or entity
named above. If you are not the intended recipient,
you are hereby
notified that any disclosure, copying, distribution
or the taking of any
action in reliance on the contents of this
information is strictly
prohibited. If you have received this E-Mail
transmission in error,
please immediately notify us by return E-Mail or
telephone to arrange
for return of its contents including any documents

VT 000441



**From:** Josie Anderson
**Sent:** Wednesday, October 25, 2017 9:47:49 AM (UTC-06:00) Central Time (US & Canada)
**To:** Melvin Brookins
**Subject:** Fwd: 2205 & 2207 Padron Place

Calling about this shortly

**Josie Anderson**
**VP Business Development**
Valero Title, Inc.
1233 W Loop South, Suite 1260
Houston, TX 77027
Mobile: 713.540.4774
Office: 713-552-1370
Fax: 866.708.1444
Get your free account for our Title Quote App @ www.valerotitle.com
Place your orders @ orders@valerotitle.com
Correspondent emails @houston@valerotitle.com



Begin forwarded message:

> **From:** Carmen Sepulveda <carmen@ciempo.com>
> **Date:** October 25, 2017 at 9:41:23 AM CDT
> **To:** Josie Anderson <janderson@valerotitle.com>
> **Subject:** Fwd: 2205 & 2207 Padron Place
>
> Josie,
>
> This is the email that I received from Whitney Bank stating the payoff for 2205 Padron has yet to be received. The file closed on 9/28/2017 and the file number is 17-32681.
>
> Can you please check on this and get back to me on it?
>
> Sincerely,



EXHIBIT
C

VT 000442

Carmen Sepulveda
Contempo Builder
1808 Snake River Rd. Ste D
Katy, TX 77449
Direct Line 832.264.3959
Fax 281.596.4376
carmen@ctempo.com

---------- Forwarded message ----------
From: **Cazares, Linda** <Linda.Cazares@hancockwhitney.com>
Date: Wed, Oct 25, 2017 at 9:29 AM
Subject: 2205 & 2207 Padron Place
To: "carmen@ctempo.com" <carmen@ctempo.com>
Cc: "Ebelinda Rincon (ebelinda@contempobuilder.com)" <ebelinda@contempobuilder.com>


*Good Morning  Team Contempo,*

*Hope you all are doing well.  2205 & 2207 Padron Place maturing  on 11-03-2017.*


*0733 ~2205 Padron Place  ~ CURRENT PRIN $ 249,972.00. fully fund . What happen to the payoff ?*

*As of today it's still open. Please advise.*

*So will you all be needing to advance any money before it matures?*

*Once it matures were unable to advance any money until we renew it.*

*Do I need to order and get an appraisal's going ?*

*Please advise.*

*Thank you*

2

**Linda R. Cazares |** Residential Construction Lending

4265 San Felipe, Suite 750 | Houston, TX  77027

Internal Extension 4-94-7353
Office :  (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockwhitney.com

Learn about our Commitment to Service: www.hancockwhitney.com/commitment-to-service

**************************************************

This E-Mail transmission (and/or the documents accompanying it)
may contain information belonging to the sender which is confidential,
privileged and/or exempt from disclosure under applicable law. The
information is intended only for the use of the individual(s) or entity
named above. If you are not the intended recipient, you are hereby
notified that any disclosure, copying, distribution or the taking of any
action in reliance on the contents of this information is strictly
prohibited. If you have received this E-Mail transmission in error,
please immediately notify us by return E-Mail or telephone to arrange
for return of its contents including any documents.

3

VT 000444



Date:  September 14, 2017

To:   Maria                                    Fr:  Linda Cazares

The following is per your request for payoff information. / Lines of Credit are subject to change.

| | |
|---|---|
| Customer Name: | CONTEMPO BUILDER LLC |
| Account Number: | ▉▉▉▉0733 |
| Property Address: | 2205 PADRON PLACE |
| Date of Payoff: | 09-22-2017 |
| Principal/ Interest | $ 249,972.00 / $ 695.56 |
| **Total Payoff Amount:** | **$ 250,667.56** |
| Per Diem: | $ 34.71833 |

Please be advised of the following.

Funds received after the payoff date will require an additional $ 34.71833 interest per day (one the Per Diem provided in this statement). The Payoff Amount provided in this statement does not include any additional charges, advances, or other items (except interest) that may be due from the date of this letter through the date of pay off. Thus, the Payoff Amount and the Per Diem provided in this statement may change if there are any such additional charges, advances, or other items due. These additional charges, advances, or other items may include, but are not limited to: advances for taxes and insurance, late charges, penalties, adjustments for returned checks, adjustments for interest rate changes, and/or attorneys' fees. ACCORDINGLY, WE RESERVE THE RIGHT TO CORRECT ANY PORTION OF THIS STATEMENT AT ANY TIME.

All payoffs are subject to collected funds. Our lien will not be satisfied or released until any and all amounts secured by the mortgage(s), deed(s) of trust, and/or UCC or personal property collateral have been collected in full

Finally, while we have made every reasonable effort to review our records in order to determine if the collateral supporting the loan on which you have requested a payoff is cross collateralizing another facility, we may have inadvertently omitted a related or cross-collateralized note/loan that would prohibit the release of our lien on the collateral until such related or cross-collateralized note/loan has also been paid. PLEASE BE ADVISED THAT PAYOFF AMOUNTS AND PER DIEMS ARE SUBJECT TO CHANGE FOR THIS REASON AS WELL.

Please send the payoff check to:   Whitney Bank -River Oaks Branch
Attention: Linda Cazares
4265 San Felipe. Suite 200
Houston, TX 77027
Phone # 713-951-7353

**\*\*\*Please Note New Wiring Instructions Effective as of June 1, 2012\*\*\***

Wiring Instructions:   Whitney Bank
ABA# ▉▉▉0968
Wire Clearing Account
Acct # ▉▉▉-1488
**Must Reference: Customer Name, Address and Note#**
**Special Instructions: Contact: Linda Cazares @ 713-951-7353**

IC3 Complaint Referral Form                                          Page 1 of 6



**Complaint Referral Form**
**Internet Crime Complaint Center**

**Victim Information**

| | |
|---|---|
| Name: | Melvin Brookins |
| Business Name: | Valero Title, Inc. |
| Age: | 40 - 49 |
| Address: | 1100 NW Loop 410, Suite 304 |
| Address (continued): | |
| Suite/Apt./Mail Stop: | |
| City: | San Antonio |
| County: | |
| Country: | United States of America |
| State: | Texas |
| Zip Code/Route: | 78213 |
| Phone Number: | 2104770173 |
| Email Address: | mb@valerotitle.com |
| Business IT POC, if applicable: | |
| Other Business POC, if applicable: | |

**Financial Transaction(s)**

Transaction Type: Wire Transfer

If other, please specify:
Transaction Amount: $250945.31
Transaction Date: 09/29/2017

Victim Bank Name: Bank of America
Victim Bank Address: 3600 N Capital of Texas Hwy
Victim Bank Address (continued):
Victim Bank Suite/Mail Stop:
Victim Bank City: Austin
Victim Bank Country: United States of America
Victim Bank State Texas
Victim Bank Zip Code/Route: 78746
Victim Name on Account: Valero Title Inc. Escrow Account
Victim Account Number: 488005766604

Recipient Bank Name: Wells Fargo Bank
Recipient Bank Address: 4505 Williams Drive
Recipient Bank Address (continued):
Recipient Bank Suite/Mail Stop:
Recipient Bank City: Georgetown
Recipient Bank Country: United States of America
Recipient Bank State Texas



EXHIBIT

D

https://complaint.ic3.gov/default.aspx                        10/25/2017

IC3 Complaint Referral Form                                    Page 2 of 6

Recipient Bank Zip Code/Route: 78633
Recipient Name on Account: Whitney Bank Wire Clearing Account
Recipient Bank Routing Number: 121000248
Recipient Account Number: 3553923867
Recipient Bank SWIFT Code:

## Description of Incident

Provide a description of the incident and how you were victimized. Provide information not captured elsewhere in this complaint form.

A hacker used a fraudulent email that was 1 letter off of the actual domain of the recipient to send us wiring instructions. Those wiring instructions were then used to send a payoff wire to the fraudulent account at Wells Fargo. The account name and number should did not match up, but Wells Fargo did not return the wire or otherwise. We were notified today from the receiving bank that they never received a wire.

Which of the following were used in this incident? (Check all that apply.)
☐ Spoofed Email
☑ Similar Domain
☐ Email Intrusion
☐ Other      Please specify:

*Law enforcement or regulatory agencies may desire copies of pertinent documents or other evidence regarding your complaint.*

*Originals should be retained for use by law enforcement agencies.*

## Information About The Subject(s) Who Victimized You

Name:
Business Name:
Address:
Address (continued):
Suite/Apt./Mail Stop:
City:
Country: [None]
State: [None]
Zip Code/Route:
Phone Number:
Email Address: linda.cazares@hancockswhitney.com
Website:
IP Address:

## Other Information

If an email was used in this incident, please provide a copy of the entire email including full email headers.

From: Cazares, Linda [mailto:linda.cazares@hancockswhitney.com]
Sent: Friday, September 29, 2017 10:37 AM
To: Aaron Thomas <athomas@valerotitle.com>
Cc: Maria Aly <maly@valerotitle.com>
Subject: RE: File 17-32681 2205 Padron, Houston, TX 77091

VT 000447

IC3 Complaint Referral Form                                                    Page 3 of 6

Please use this 121000248.

Linda R. Cazares| Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX  77027
Internal Extension 4-94-7353
Office :  (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockwhitney.com
On September 29, 2017 at 11:29 AM Aaron Thomas <athomas@valerotitle.com> wrote:
Hello Linda,

Please rereview the wiring instructions you sent. The routing number is 10 digits and should be 9.

Respectfully,

Aaron Thomas
Valero Title, Inc.
1233 W. Loop South Ste.1260
Houston, Texas 77027
Office: 713.552.1370
Fax: 866.708.1444
www.valerotitle.com
Cell: 210.262.8681


From: Maria Aly
Sent: Friday, September 29, 2017 10:21 AM
To: Aaron Thomas <athomas@valerotitle.com>
Subject: FW: File 17-32681 2205 Padron, Houston, TX 77091


From: Cazares, Linda [mailto:linda.cazares@hancockswhitney.com]
Sent: Friday, September 29, 2017 10:19 AM
To: Maria Aly <maly@valerotitle.com>
Cc: jennifer.hensley@hancockswhitney.com
Subject: RE: File 17-32681 2205 Padron, Houston, TX 77091

Yes its correct.

Linda R. Cazares| Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX  77027
Internal Extension 4-94-7353
Office :  (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockwhitney.com
On September 29, 2017 at 11:16 AM Maria Aly <maly@valerotitle.com> wrote:
Please confirm this info is correct?


Wells Fargo Bank
4505 Williams DR, Georgetown, TX 78633

https://complaint.ic3.gov/default.aspx                                         10/25/2017

VT 000448

IC3 Complaint Referral Form                                             Page 4 of 6

Routing #: 1210422882 Acct #: 3553923867

From: Cazares, Linda [mailto:linda.cazares@hancockswhitney.com]
Sent: Friday, September 29, 2017 10:01 AM
To: Maria Aly <maly@valerotitle.com>
Cc: jennifer.hensley@hancockswhitney.com
Subject: RE: File 17-32681 2205 Padron, Houston, TX 77091

Okay let me know.

Linda R. Cazares| Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX  77027
Internal Extension 4-94-7353
Office :  (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockwhitney.com
On September 29, 2017 at 10:40 AM Maria Aly <maly@valerotitle.com> wrote:
Following up with funder now. One moment please.

From: Cazares, Linda [mailto:linda.cazares@hancockswhitney.com]
Sent: Friday, September 29, 2017 8:57 AM
To: Maria Aly <maly@valerotitle.com>
Cc: jennifer.hensley@hancockswhitney.com
Subject: RE: File 17-32681 2205 Padron, Houston, TX 77091

Any updates yets?

Linda R. Cazares| Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX  77027
Internal Extension 4-94-7353
Office :  (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockwhitney.com
On September 28, 2017 at 4:33 PM Maria Aly <maly@valerotitle.com> wrote:
No worries... I just don't know how long they are going to take.

From: Cazares, Linda [mailto:linda.cazares@hancockswhitney.com]
Sent: Thursday, September 28, 2017 3:31 PM
To: Maria Aly <maly@valerotitle.com>
Cc: jennifer.hensley@hancockswhitney.com
Subject: RE: File 17-32681 2205 Padron, Houston, TX 77091

Sorry for the hassle. Alright then keep me posted

Linda R. Cazares| Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX  77027
Internal Extension 4-94-7353
Office :  (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockwhitney.com
On September 28, 2017 at 4:27 PM Maria Aly <maly@valerotitle.com> wrote:
I have no idea how long the lender is going to take to review docs and issue FA.

From: Cazares, Linda [mailto:linda.cazares@hancockswhitney.com]

VT 000449

IC3 Complaint Referral Form                                      Page 5 of 6

Sent: Thursday, September 28, 2017 3:25 PM
To: Maria Aly <maly@valerotitle.com>
Cc: jennifer.hensley@hancockswhitney.com
Subject: RE: File 17-32681 2205 Padron, Houston, TX 77091

So it might be wired late this afternoon or tomorrow morning?

Linda R. Cazares| Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX  77027
Internal Extension 4-94-7353
Office :  (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockswhitney.com
On September 28, 2017 at 4:06 PM Maria Aly <maly@valerotitle.com> wrote:
Not yet. We do not have funding authorization yet.

From: Cazares, Linda [mailto:linda.cazares@hancockswhitney.com]
Sent: Thursday, September 28, 2017 2:52 PM
To: Maria Aly <maly@valerotitle.com>
Cc: jennifer.hensley@hancockswhitney.com
Subject: RE: File 17-32681 2205 Padron, Houston, TX 77091

Has this transaction been closed and payoff wire disbursed?

Linda R. Cazares| Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX  77027
Internal Extension 4-94-7353
Office :  (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockswhitney.com


Are there any other witnesses or victims to this incident?

only internal employees and the account holder at the receiving bank:

Maria Aly - Valero Title employee
Aaron Thomas - Valero Title Employee
Linda Cazares - Hancock Whitney employee (payoff lender)
Carmen Sepulveda - Contempo Builders (payoff account holder)

If you have reported this incident to other law enforcement or government agencies, please provide the name,
phone number, email, date reported, report number, etc.

N/A

---

**Who Filed the Complaint**

Were you the victim in the incident described above? Yes

---

**Digital Signature**

---

VT 000450

IC3 Complaint Referral Form                                    Page 6 of 6

> By digitally signing this document, I affirm that the Information I provided is true and accurate to the best of my knowledge. I understand that providing false Information could make me subject to fine, imprisonment, or both. (Title 18, U.S. Code, Section 1001)
>
> **Digital Signature: Melvin Brookins**

Thank you for submitting your complaint to the IC3. Please save or print a copy for your records. **This is the only time you will have to make a copy of your complaint.**

VT 000451

**From:** Johnson, Paul <PaulJohnson@hancockwhitney.com>
**Sent:** Wednesday, November 01, 2017 11:30 AM
**To:** Cazares, Linda; Melvin Brookins
**Cc:** Josie Anderson; Aaron Thomas; Maria Aly; Carmen Sepulveda
**Subject:** RE: 2205 Padron Place

Hello Melvin

Corporate Investigations has reached out to Wells Fargo; however, since the transaction occurred between Wells Fargo and Bank of America, no information was released.

Based on the investigation conducted by our IT Department, they have concluded that the modification of the document was done after the email was received by Valero's Microsoft Outlook.com mail server.

There is nothing else that we can do.

All of our emails sent from Whitney Bank show the correct payoff info. The payoff document was altered after it was received by the title company. Our lien and loan will remain in place on the property until payment is received. Hopefully you can resolve this issue quickly.

Thanks

**From:** Cazares, Linda
**Sent:** Monday, October 30, 2017 10:47 AM
**To:** Melvin Brookins; Johnson, Paul
**Cc:** Josie Anderson; Aaron Thomas; Maria Aly; Carmen Sepulveda
**Subject:** RE: 2205 Padron Place

*Paul,*
*Please read message below.*
*Thank you*

**Linda R. Cazares** | Residential Construction Lending
4265 San Felipe, Suite 750 | Houston, TX 77027
Internal Extension 4-94-7353
Office : (713) 951-7353
Fax (713) 951-7345
linda.cazares@hancockwhitney.com

**From:** Melvin Brookins [mailto:mb@valerotitle.com]
**Sent:** Monday, October 30, 2017 10:33 AM
**To:** Cazares, Linda
**Cc:** Josie Anderson; Aaron Thomas; Maria Aly; Carmen Sepulveda
**Subject:** RE: 2205 Padron Place

1



EXHIBIT
*E*

**Payment Details Report**

Company: Valero Title Inc
Requester: Brookins, Melvin
Run Date: 11/03/2017 4:32:45 PM CDT

**Bank of America**
**Merrill Lynch**

**Domestic High Value (Wire)**
Payment Category:Urgent/Wire

Status: Confirmed by Bank
Transaction Number: 179TA4932BKR0R71

**Debit Account Information**

Debit Bank: 111000025
Debit Account: ███████042
Debit Account Name: VALERO TITLE INC
Debit Currency: USD

**Beneficiary Details**

Beneficiary Name: Whitney Bank Wire Clearing Account
Beneficiary Address: 4285 San Felipe Ste 750
Beneficiary City: Houston
Beneficiary Postal Code: 77027
Beneficiary Country: US - United States of America

Beneficiary Account: ██████867
Beneficiary Bank ID: 121000248
WELLS FARGO BANK, NA
464 CALIFORNIA ST
SAN FRANCISCO
US - United States of America
Beneficiary Email:
Beneficiary Mobile Number:

**Payment Details**

Credit Currency: USD
Credit Amount: 250,945.31

Value Date: 09/29/2017

**Optional Information**

Sender's Reference Number: 17-32681

Beneficiary Information: Apply to Acct ████0733
Contempa Builder LLC Payoff
2205 Padron Place
Valero Title 7135621370

**Additional Routing**

Intermediary Bank ID:

Receiver Information:

**Control Information**

Input: et100120
Approved: ct700740
Initial Confirmation: WTX:2017092900351654
Confirmation #: FEDR:20170929B6B7HU4R014220

Input Time: 09/29/2017 10:49:50 AM CDT
Time: 09/29/2017 11:02:38 AM CDT



VT 000453

# Houston Police Department

**1402275-17**

Production

Houston Police Department
1200 Travis Street
Houston, Texas 77002
713-884-3131  Emergency Dial 9-1-1

Reported Date/Time
11/06/2017 15:49
Offense Report Title
Investigation - Forgery/Fraud/Counterfeit
Officer Name
CHOICE, G

## Administrative Information

| Address | | | | City | | Zip |
|---|---|---|---|---|---|---|
| 1233 W LOOP S #1260 | | | | HOUSTON | | 77027 |
| Dist/Beat | Station | District | From Date/Time | To Date/Time | | Primary Unit |
| 1A50 | CENT | 01 | (09/29/2017 12:00) | | | TEL64 |
| Officer 1 Name | | | | Division | | |
| CHOICE, G | | | | South Central - Evenings - Patrol | | |
| Officer 2 Name | | | | Division | | |

| Weather | Offense County | | | Est. Loss Value | |
|---|---|---|---|---|---|
| CLEAR | Harris County | | | $150,000 to $299,999 (Felony 2nd) | |
| Hate Crime | Family Violence | Metal Theft | Gang Crime | | |
| No | No | No | No | | |

## CAB, VALERO TITLE

| Address | City | State | Zip Code |
|---|---|---|---|

Phone(s):

## COM: BROOKINS,MELVIN

| Race | Sex | Ethnicity | | Height | Weight | Age |
|---|---|---|---|---|---|---|
| White or White Hispanic | Male | | | 0'0" | 0# | 42 |
| Address | | | City | State | | Zip Code |

Phone(s):   WK        CE
(512)371-7006   (954)551-0584

## Summary

COMPL STATED AN UNKNOWN PERSON, PRETENDED BE AN EMPLOYEE AT WHITNEY BANK, AND REQUESTED A MONEY WIRE FOR TWO HUNDRED, FIFTY THOUSAND, NINE HUNDRED, FORTY FIVE DOLLARS, AND THIRTY-ONE CENTS, USING A FRAUDULENT EMAIL.

| Report Officer | Printed At | | Page: 1 of 1 |
|---|---|---|---|
| CHOICE, G | 01/11/2018 03:01 | | |

EXHIBIT
G

12/4/2017 3:08 PM
Chris Daniel - District Clerk Harris County
Envelope No. 21005590
By: Lisa Thomas
Filed: 12/4/2017 3:08 PM

2017-80629 / Court: 157

| CONTEMPO BUILDER | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| V. | § | |
| | § | HARRIS COUNTY, TEXAS |
| VALERO TITLE INC, | § | |
| DBA VALERO TITLE COMPANY | § | |
| | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION WITH REQUEST FOR DISCLOSURES, REQUEST FOR ADMISSIONS, REQUEST FOR PRODUCTION AND REQUEST FOR TRIAL BY JURY

1. **DISCOVERY LEVEL.**

   Plaintiff's claim exceeds $50,000.00. Plaintiff elects Discovery Plan "Level Two" pursuant to T.R.C.P. 190.2.

2. **TRCP 49 DISCLOSURE**

   Plaintiff is seeking monetary damages only in the amount of $250,945.31 plus interest and attorney fees.

3. **PARTIES.**

   A.   CONTEMPO BUILDER is "Plaintiff". Plaintiff is represented by Mr. William C. Boyd (TBA# 02779000) (email wboyd@pattersonboyd.com) and Mr. S. Scott Boyd (TBA# 24026909) (email sshoyd@pattersonboyd.com ) of Patterson, Boyd & Lowery, P.C., 2101 Louisiana, Houston, Texas 77002 (Phone: 713/222-0351/Fax: 713/759-0642;).



EXHIBIT
H

VT 000455

**B.    VALERO TITLE INC dba VALERO TITLE COMPANY is "Defendant".**

Defendant may be served by serving its Registered Agent Mr. Melvin Brookins at 807 Las

Cimas Pkwy. ,Suite 120, Austin, Texas 78746-6159.

4.    JURISDICTION AND VENUE.

Plaintiff's claim exceeds the minimum jurisdiction of this Court.  The Agreement made

the basis of Plaintiff's claim was executed and to be performed in Harris County, Texas. Plaintiff

has its place of business in Harris County Texas. Defendant maintains an office and transacts

business in Harris County Texas. This Court has jurisdiction and venue is proper in Harris

County, Texas.

5    BACKGROUND.

Defendant is a Title Company. Defendant acted as closing agent and escrow officer in

connection with a sale of real estate by Plaintiff to a Third Party. As part of the Title Company

services provided by Defendant, Defendant agreed to act as an escrow agent for Plaintiff and the

Third Party Buyer's benefit. The Third Party Buyer deposited the purchase price of the

properties in escrow with Defendant. An unknown third party, using a computer, sent

communications, electronically, from the unknown third party's computer to Defendant's

computer instructing Defendant as to the wire transfer of the funds being held by Defendant in

escrow for Plaintiff and for the third party Buyer. Defendant misdirected the funds to an

improper party in accordance with the computer instructions. Defendant owed Plaintiff a

fiduciary duty. Defendant breached the duty by relying upon the fraudulent computer

instructions and by transmitting the escrow funds to an improper party. As a proximate result of

the breach Plaintiff has suffered damages in the amount of $250,945.31.

VT 000456

As part of the Defendant's services rendered by Defendant for Plaintiff, Defendant owed Plaintiff a duty to act as an escrow agent for Plaintiff and the Third Party Buyer's benefit; to close the sale of the real property in accordance with the customs and practices in the Title Company business; to properly handle the closing; to verify computer instructions for wiring of escrow funs; to properly train its employees in transmitting of escrow funds including the verification of the authenticity of the electronic instructions and the transmitting of the purchase funds to the proper Party. Defendant was negligent in performance of Defendant's duty. Defendant transmitted the money to an improper party based on fraudulent instruction received by computer from an unknown third party source. Defendant was negligent in failing to properly train its employees to assure funds were not misdirected to an improper party. Defendant was negligent in not providing a system of checks and balances to assure the misdirection of funds to an improper party would not occur. . The Third Party Buyer deposited the purchase price of the properties in escrow with Defendant. Defendant misdirected the funds to an improper party. As a proximate result of Defendant's negligence Plaintiff has suffered damages in the amount of $250,945.31.

Alternatively, for valuable consideration Plaintiff and Defendant entered into an Agreement by which Defendant agreed to provide customary "Title Company" services for the benefit of Plaintiff and a Third Party Buyer. Plaintiff has performed the Agreement in a commercially reasonable manner. Defendant has breached the Agreement by failing to transmit the purchase price funds in a proper manner to the proper Party. As a proximate result of the breach Plaintiff has suffered damages in the amount of $250,945.31.

All conditions precedent to Plaintiff's recovery of damages, attorney fees, costs and interest have been timely performed in a commercially reasonable manner and all offsets, credits and payments have been allowed.

6.  <u>CAUSES OF ACTIONS.</u>

A.  <u>Negligence</u>

Defendant is guilty of negligent acts and omission which have proximately caused damages to Plaintiff. As a proximate result of Defendant's negligence Plaintiff has suffered damages in the amount of $250,945.31.

B.  <u>Breach of Fiduciary Duty</u>

Defendant breached the fiduciary duty owed to Plaintiff. As a proximate result of the breach Plaintiff has suffered damages in the amount of $250,945.31

C.  <u>Breach of Contract.</u>

Alternatively, Defendant has breached Defendant's agreement with Plaintiff. As a proximate result of the breach, Plaintiff has suffered damages in the amount of $250,945.31 plus attorney fees, costs, and interest.

D.  <u>Prejudgment and Post-Judgment Interest</u>

Plaintiff seeks recovery of prejudgment and post-judgment interest at the maximum rate permitted by law.

E.  <u>Reasonable and Necessary Attorney Fees.</u>

Plaintiff is entitled to recover reasonable and necessary attorney fees. Plaintiff has retained the law firm of Patterson, Boyd & Lowery, P.C. to file suit and has agreed to pay a reasonable fee to the law firm. All demands and conditions precedent have been performed. Plaintiff requests

Judgment against Defendant for reasonable and necessary attorney fees in an amount determined by the trier of fact.

F.   Respondent Superior

At all material times the acts and omissions of Defendant were conducted by agents, representatives and employees of Defendant acting with either express, apparent or implied authority or whose acts and omissions were ratified, adopted and approved by Defendant or which acts and omissions benefited Defendant and were accepted by Defendant.

7.   REQUEST FOR DISCLOSURE

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is requested to disclose, within fifty (50) days of service of this request the information or material described in Texas Rules of Civil Procedure Rule 194.2(a)-(l).

8.   REQUESTS FOR ADMISSIONS TO DEFENDANT

Defendant is requested to reply within fifty (50) days of service of this request

For clarity, reference herein to:

Plaintiff refers to the Plaintiff named in the foregoing Petition

Defendant refers to the Defendant named in the same Petition.

Real Estate Closing refers to the September 28, 2017 real estate closing conducted by Defendant at its office in Houston Texas for properties owned by Plaintiff at 2205 Padron Houston Texas made the basis of this law suit.

Please admit or deny the following:

REQUEST FOR ADMISSION NO. 1:

Defendant conducted the Real Estate Closing.

RESPONSE:

**REQUEST FOR ADMISSION NO. 2:**

The purchase price for the properties made the basis of the Real Estate Closing was placed with Defendant.

RESPONSE:

**REQUEST FOR ADMISSION NO. 3:**

$250,945.31 of the funds for the purchase price of the properties made the basis of the Real Estate Closing was wire transferred by Defendant to an incorrect recipient.

RESPONSE:

**REQUEST FOR ADMISSION NO. 4:**

Defendant acted as an escrow agent for the Real Estate Closing

RESPONSE:

**REQUEST FOR ADMISSION NO. 5:**

Defendant received by email the correct wiring instructions

RESPONSE

**REQUEST FOR ADMISSION NO. 6:**

Defendant did not wire the funds to the account instructed in the original email

RESPONSE:

**REQUEST FOR ADMISSION NO. 7:**

Defendant did not confirm the validity of the second email for wire transfer of the $250,945.31

RESPONSE:

**REQUEST FOR ADMISSION NO. 8:**

Defendant did not wire the $250,945.31 to the correct account.

RESPONSE:

REQUEST FOR ADMISSION NO. 6:

Defendant has not recovered the $250,945.31 .of the funds for the purchase price of the properties made the basis of the Real Estate Closing

RESPONSE:

VALERO TITLE INC. dba VALERO TITLE COMPANY

By: __ __ __ __ __ __ __ __ __

9. REQUESTS FOR PRODUCTION TO DEFENDANT

Plaintiff requests that Defendant produce the following documents for inspection and copying at the offices of Patterson Boyd & Lowery within 50 days after service of the Requests.

For the purposes of the following requests, the following definitions apply:

A. DEFINITIONS

Defendant: "You," "Your," or "Defendant" means VALERO TITLE INC. dba VALERO TITLE COMPANY as that party to which these Requests are addressed and propounded and all representatives of Defendant, acting or purporting to act on Defendant's behalf with respect to any matter inquired about in these Requests, including but not limited to all employers, employees, appraisers, attorneys, consulting agents, or any other representative.

Plaintiff: "Plaintiff" means CONTEMPO BUILDER

Real Estate Closing: Real Estate Closing refers to the September 28, 2017 real estate closing conducted by Defendant at its office in Houston Texas for properties owned by Plaintiff at 2205 Padron Houston Texas made the basis of this law suit.

Suit: "Suit" or "Lawsuit" refers to the case in which these requests are propounded.

Document: Includes but is not limited to any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software), any "deleted" but

recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data). The term "document" also means and includes Computer Data, each and every medium upon which information is or can be printed, recorded, or reproduced by mechanical means, by hand or by any other method, whether by you or someone else, that is or has been within your possession, custody, control, or of which you have knowledge or access, including, without limitation, the following: checks, receipts, evidence of payments; evidence of offsets; contracts, lien notices, lien affidavits, advertisements; agreements; aperture cards; books; brochures; calendars; calculations; charts; circulars; codes; computer records or printouts; communications; contracts; copies; correspondence; data processing cards, discs or tapes; diaries; directives; drafts; drawings; electronic mail messages; file folders; files; films; forms; graphs; indexes; inspection reports; journals; ledgers; letters; local, state and federal government hearing records and reports; magnetic tapes, cards, or discs or other products of any device for recording sound or electronic impulses; maps; memoranda; minutes or other records of meetings or conferences; motion picture films; negatives; newspaper stories or clippings; notebooks; notices; notices of deficiencies; notices of rejections; opinions or reports of consultants; pamphlets; photographs; pictures; plans; position papers; press releases; progress reports; publications; reports; reports of studies; specifications; statistical data; schedules; schedule revisions; sketches; witness or party statements; status reports; stenographic or handwritten notes; stenographic or wire or magnetic recordings; studies; summaries; summaries or records of conversations of interviews or telephone conversations; summaries or reports of investigations or negotiations; surveys; specifications; telegrams; trip reports; time records, equipment time records, transcripts of statements of witnesses or parties videotapes; voice recordings in any form; and working papers Warranties; receipts; invoices; estimates. The term "document" also includes the original and every copy which is not identical to the original, specifically including every copy which contains any commentary or notation whatsoever that does not appear on the original. The term "document" also includes all drafts of each of the above.

**All Documents:** The term "all documents" means and includes all documents that in any manner or form are relevant in any way to the subject matter of the above-captioned lawsuit, including, without limitation, all documents that contain, record, reflect, summarize, evaluate, comment upon, or discuss the events giving rise to the above-captioned lawsuit or that in any manner state the background of, or were the basis for, or that relate to, record, evaluate, comment upon, or were referred to,

VT 000462

relied upon, utilized, generated, transmitted, or received in connection with same. It does not include multiple, identical copies of the same document.

**Communication:** "Communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons.

**Witness Statements:** "Witness statements", "statement" or "statements" as that term is used herein includes (a) a written statement signed or otherwise adopted or approved by the person making it; and (b) any stenographic, mechanical, electrical or other recording, or any transcription thereof which is a substantially verbatim recital of a statement made by the person and contemporaneously recorded.

**Person:** "Person" or "persons" means not only natural persons, but also corporations, partnerships, organizations, associations, industry groups, entities, joint venturers, or any government or governmental entity, commission, or agency and any divisions or departments or other units of any of the entities defined herein.

## B.  ADDITONAL INSTRUCTIONS

1.  **Documents No Longer In Existence.** If any or all documents identified or requested herein are no longer in existence or no longer in your possession, custody, or control because of destruction, transfer, loss, or any other reason, then identify each and every such document.

2.  **Definitions Used Herein.** The definitions listed above are to be construed as broadly as possible to include the most information or documents responsive to the discovery requests propounded herein.

3.  **Privilege.** If Defendant withholds any documents from production under a claim of privilege, then please state with respect to each withheld document:

    a.  The privilege under which the document is being withheld;

    b.  A description of the character or type of document involved;

    c.  A general description of the subject matter of the document;

    d.  The date the document was prepared;

    e.  The author or signatory of the document;

f.      The persons to whom the document is addressed and persons to whom copies were furnished, together with their titles;

g.      The present depository of the documents;

h.      Your willingness to make the document available for an *in camera* inspection by the Court.

**Also, please produce all non-privileged portions of any document that contains allegedly privileged information.**

4.      Ambiguity.  To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests.  If you or your attorney claims you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for clarification.

5.      Supplementation.  This discovery request is continuing.  In the event that any information or material responsive to any interrogatory or request for production comes to your attention, possession, custody, or control, or the attention, possession, custody or control of your agents, employees, affiliates, subsidiaries, accountants, partners, officers, family members, directors, or attorneys subsequent to the filing of your response, you are required to furnish the additional information, answers, or material to the counsel propounding these discovery requests as soon as possible.

6      Confidential Information.  To the extent Defendant believes that these requests call for production of information that contends is "confidential" or "trade secret" protected information, Plaintiff is willing to enter into an appropriate confidentiality agreement to protect such information from unauthorized disclosure as long as it does not delay the production of documents herein.

**REQUESTS FOR PRODUCTION**

1.      Please produce all Documents and Communications regarding and/or referencing the Real Estate Closing made the basis of this suit, directly or indirectly.

**RESPONSE:**

2.      Please provide all Documents and Communications upon which Defendant relies or intends to rely at trial in denying Defendant is liable to Plaintiff for damages and/or liability.

**RESPONSE:**

3.    Please provide all communications between Defendant and Defendant/s experts whom Defendant intends to have testify or whose consultation will be the basis for any testimony and the expert's reports.

**RESPONSE:**

4.    Please provide all documents and/or work papers for the Defendant's experts whom Defendant intends to have testify or whose consultation will be the basis for any testimony and the expert's reports.

**RESPONSE:**

5.    Please provide copies of all Documents and Communications regarding and/or referencing any instructions for wire transfer of any closing funds for the Real Estate Closing made the basis of this suit, directly or indirectly.

**RESPONSE**

6.    Please provide copies of all Documents and Communications regarding and/or referencing any transfers, by wire transfer or otherwise, of any closing funds for the Real Estate Closing made the basis of this suit, directly or indirectly.

**RESPONSE**

7.    Please provide copies of all closing Documents and Communications regarding and/or for the Real Estate Closing made the basis of this suit, directly or indirectly.

**RESPONSE**

8.    Provide copies of all liability insurance policies covering Defendant and applicable to the Real Estate Closing made the basis of this suit, directly or indirectly.

**RESPONSE**

9.    Please produce all Documents and Communications regarding and/or referencing the Property at 2205 Padron Houston Texas made the basis of this suit, directly or indirectly for the period July 1, 2017 until the present.

RESPONSE:

**VALERO TITLE INC. dba VALERO TITLE COMPANY.**

BY: _____

10   REQUEST FOR JURY TRIAL

Plaintiff requests a Trial by Jury.

11   **PRAYER.**

Plaintiff requests that Defendant be cited to appear and file Answer and that upon trial, Plaintiff have judgment against Defendant for Plaintiff's damages, prejudgment interest, post judgment interest, costs, attorney fees and such other and further relief to which Plaintiff may show themselves entitled.

Respectfully submitted,

PATTERSON, BOYD & LOWERY, P.C.

By:   /s/ WILLIAM C. BOYD
William C. Boyd
TBA# 02779000
S. Scott Boyd
TBA# 24026909
2101 Louisiana
Houston, Texas 77002
Phone: 713/222-0351
Fax: 713/759-0642
Attorneys for Plaintiff,



CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P  800-444-0406
F  866-692-6796
RLICORP.COM

March 6, 2018

**VIA CERTIFIED MAIL #9214 8969 0099 9790 1619 9273 89 – RETURN RECEIPT
REQUESTED and EMAIL (mailto:mb@valerotitle.com)**

Melvin Brookins
Valero Title, Inc.
Building II, Suite 120
807 Las Cimas Parkway
Austin, TX 78746

|   | | |
|---|---|---|
| Re: | **Insured:** | **Valero Title, Inc.** |
| | **Matter:** | ***November 1, 2017 Notice of Circumstances*** |
| | **Policy No.:** | **BND0101687** |
| | **Policy Term:** | **10/23/17 to 10/23/18** |
| | **Claim No.:** | **00447105** |

Dear Mr. Brookins:

We received your February 14, 2018 correspondence, enclosing a proof of loss on behalf of Valero Title, Inc. ("Valero"). Thank you for submitting the proof of loss. We reviewed Valero's claim based upon its proof of loss, the documents submitted in support thereof, and our prior correspondence. This letter summarizes our current understanding of the claim and RLI's analysis of the claim. If, after reviewing this letter, you have any questions about our analysis, wish to further explain your claim and/or provide us any additional information or documentation, please do not hesitate to do so. We would be happy to reconsider the claim based upon any additional information or arguments you believe may impact our analysis of the claim and the issues discussed in this letter.

<u>**Summary of Claim**</u>

Valero's claim stems from a construction loan between Whitney Hancock Bank ("Whitney"), as lender, and Contempo Builder ("Contempo"), as borrower. Valero acted as the escrow agent for that loan and in connection therewith, corresponded with Whitney about the closing. Valero alleges that it received false wire transfer instructions from someone impersonating Linda Cazares ("Cazares"), an employee of Whitney. Based upon Valero's submissions, we understand that that claim arises from the following correspondence.

On September 14, 2017, Valero sent an email to Ms. Cazares (at the following email address "Linda.Cazares@hancockwhitney.com") requesting an updated payoff letter. Ms. Cazares thereafter provided an updated payoff letter to Valero on September 14, 2017 at 4:08:48 PM (CST).


EXHIBIT
9

RLI INSURANCE COMPANY

While the closing was originally scheduled for September 15, 2017, the parties rescheduled it to September 28, 2017.

Due to the rescheduling, Valero (on September 27, 2017) requested another updated payoff letter from Whitney, which Ms. Cazares provided on September 27, 2017 at 10:43 am. Thereafter, Valero corresponded with someone impersonating Ms. Cazares (from September 27-29, 2017) about the closing. The alleged imposters thereafter provide information for an account held at Wells Fargo Bank, N.A. ("Wells Fargo"). Valero thereafter transmitted directed its bank (Bank of America) to wire transfer $250,945.31 to the account at Wells Fargo.

On October 25, 2017, Ms. Cazares sent an inquiry to Contempo inquiring about the payoff as Whitney had not received the closing funds. Valero sought to reverse the above-described wire transfer, but was informed that the funds had already been removed from the Wells Fargo account. On December 4, 2017, Contempo filed a lawsuit against Valero in Harris County seeking damages of at least $250,945.31.

<u>Analysis</u>

RLI issued Crime Policy BND0101687 to Valero Title, Inc. which has a policy period of October 23, 2017 to October 23, 2018 and a Per Occurrence Limit of Insurance of $1 million and a $25,000 Per Occurrence Deductible. While we understand that the Proof of Loss seeks coverage under the Funds Transfer Fraud Endorsement, we also evaluated the claim under Insuring Agreement 5 as Valero previously suggested that it intended to investigate the possibility of computer fraud. Based upon the materials provided to date, Valero has not established a loss covered under the Policy for the reasons discussed herein.

First, while the Proof of Loss does not expressly address Insuring Agreement 5, we considered the claim thereunder. Insuring Agreement 5 provides as follows:

> 5. **Computer Fraud**
> We will pay for loss of, and loss from damage to, **money, securities** and **other property** resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the **premises** or **banking premises**:
> a. To a person (other than a **messenger**) outside those **premises**; or
> b. To a place outside those **premises**.

The Policy defines **Premises** and **Banking premises** as follows:

> **Premises** means the interior of that portion of any building you occupy in conducting your business.

> **Banking premises** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

Melvin Brookins
Valero Title, Inc.
March 6, 2018
Page 3 of 5

RLI INSURANCE COMPANY

Based on the above terms and definitions, Valero has not established a loss covered under Insuring Agreement 5.  That insuring agreement covers loss *resulting directly* from the use of a computer to fraudulently cause a transfer of that property *from inside the premises or banking premise* to a person or a place outside those premises. Valero has not established these elements of coverage for two reasons.  First, Valero has not established that the perpetrator hacked its computer and thus, has not proven "the use of a computer to fraudulently cause a transfer" of its funds.  We understand that Whitney alleges that the emails were intercepted after receipt by Valero, but we have not received any documentation or forensic analysis substantiating its allegation. Second, while Valero alleges that the perpetrator sent emails contain false bank account information, the loss did not result directly therefrom.  The loss did not occur until after Valero's employees input, approved and released wire transfers and directed Valero's bank to wire transfer funds. Accordingly, Valero has not established a loss covered under Insuring Agreement 5.

Second, we considered Valero's claim under the Funds Transfer Fraud Endorsement.  That endorsement states as follows:

> We will pay for loss of **Funds** resulting directly from a **Fraudulent instruction** directing financial institution to transfer, pay or deliver **Funds** from your **Transfer Account.**

As used in this Insuring Agreement:

a.   **Fraudulent instruction** means:
   (1)   An electronic, telegraphic, cable, teletype, telefacsimilie or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;
   (2)   A written instruction (other than those described in Insuring Agreement 2.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or
   (3)   An electronic, telegraphic, cable, teletype, telefacsimilie, telephone or written instruction initially received by you which purports to have been transmitted by an Employee but which was in fact fraudulently transmitted by someone else without your or the Employee's knowledge or consent.

b.   **Transfer account** means:
   An account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of **funds:**
   (1)   By means of electronic, telegraphic, cable, teletype, telefacsimilie or telephone instructions communicated directly or though an electronic funds transfer system; or

Melvin Brookins
Valero Title, Inc.
March 6, 2018
Page 4 of 5

**RLI INSURANCE COMPANY**

(2)     By means of written instructions (other than those described in Insuring Agreement 2.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

Based on the above terms and definitions, Valero has not established a **Fraudulent instruction** (as defined in the Policy) and thus, has not established a loss covered under the Funds Transfer Fraud Coverage Section. While Valero alleges that the perpetrator fraudulently induced it to wire transfer funds, the definition of **Fraudulent instruction** requires proof that the instruction (1) "purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent," (2) "issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent," or (3) "received by you which purports to have been transmitted by an Employee but which was in fact fraudulently transmitted by someone else without your or the Employee's knowledge or consent."

In this case, Valero transmitted the wire transfer direction to Bank of America with its knowledge and consent. That instruction to Valero's bank was not (1) sent by someone impersonating you, as required by Section a.(1); forged or altered, as required by Section a.(2); or (3) transmitted by someone impersonating your employees, as required by Section a.(3). Accordingly, Valero has not established a loss covered under the Funds Transfer Fraud Endorsement.

We understand that Contempo filed suit against Valero. The Policy does not provide liability coverage or provide any coverage for expenses incurred defending that action. The Policy excludes from coverage the following:

5.  **Indirect Loss**
    Loss that is an indirect result of any act or **occurrence** covered by this insurance including, but not limited to, loss resulting from:
    a.    Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, **money, securities** or **other property.**
    b.    Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.
    c.    Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

6.  **Legal Expenses**
    Expenses related to any legal action, except when covered under Insuring Agreement 2.

Melvin Brookins
Valero Title, Inc.
March 6, 2018
Page 5 of 5

RLI INSURANCE COMPANY

Because the loss is not covered under Inuring Agreement 2, any expenses, costs, attorney's fees incurred defending Contempo's civil action, and other indirect loss incurred by Valero (including amounts incurred to settle its liability to Contempo) are not covered under the Policy.

Based on the initial information that we have received, it does not appear that there is coverage for this matter under the Crime Policy. However, if you believe that you have additional information that would assist us in reviewing this matter for coverage, please let us know.  In the interim, RLI conducted its investigation under a complete reservation of rights, and continues to reserve all of its rights under the bond and applicable law.

Very truly yours,

*Alison E. Kowal*

Alison Kowal
RLI Insurance Company
312-675-4137
alison.kowal@rlicorp.com

cc:     Skylar Barker, TitlePac, Inc. (sbarker@titlepac.com)

# EXHIBIT 2

11/9/2018 10:51 AM
Chris Daniel - District Clerk Harris County
Envelope No. 28921513
By: LISA COOPER
Filed: 11/9/2018 10:51 AM

## CAUSE NO. 2017-80629

| | | |
|---|---|---|
| **CONTEMPO BUILDER,** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **VALERO TITLE INC. DBA** | § | |
| **VALERO TITLE COMPANY,** | § | |
| **Defendant / Third-Party Plaintiff,** | § | **157TH JUDICIAL DISTRICT** |
| | § | |
| **v.** | § | |
| | § | |
| **RLI INSURANCE COMPANY,** | § | |
| **TITLEPAC, INC.** | § | |
| **Third Party Defendants.** | § | **HARRIS COUNTY, TEXAS** |

### THIRD-PARTY DEFENDANT TITLEPAC, INC.'S
### ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

Third-Party Defendant TitlePac, Inc. ("TitlePac") files its original answer and affirmative defenses to Defendant/Third-Party Plaintiff Valero Title, Inc.'s ("Valero") Original Third-Party Petition (the "Third-Party Petition").

## I.    GENERAL DENIAL

1.    TitlePac asserts its general denial as authorized by Rule 92 of the Texas Rules of Civil Procedure to the allegations contained in Valero's Third-Party Petition, and any amendments or supplements thereto, and upon trial of this case will require Valero to prove each and every allegation asserted against it by a preponderance of the evidence, as is required by the laws of the State of Texas and the Constitution of the United States.

## II.    AFFIRMATIVE AND OTHER DEFENSES

2.    Valero's claims against TitlePac are barred in whole or in part for failure to state a claim upon which relief can be granted.

3.      Valero's claims are barred in whole or in part because TitlePac is not a party to any contract with Valero.

4.      Valero's claims are barred in whole or in part because the alleged loss was discovered prior to the inception of the policy.

5.      Valero's claims are barred in whole or in part because Valero has a duty to read its insurance policies and, failing to do so, is charged with knowledge of the policy terms and conditions.  *See Garrison Contractors, Inc. v. Liberty Mut. Ins. Co*., 927 S.W.2d 296, 300 (Tex. App.—El Paso 1996), aff'd, 966 S.W.2d 482 (Tex.1998).

6.      Valero's claims are barred in whole or in part because an insurance broker/agent does not owe a duty to explain policy terms to an insured.  *Id.*  TitlePac asserts that any claim which is based upon a misrepresentation, inducement, or reliance on a representation fails as a matter of law, since Valero was charged with knowledge of the contents of the insurance policy at issue.

7.      Valero's claims are barred in whole or in part because it has failed to articulate any common law or contractual duty owed by TitlePac to Valero as none exists and no such duty is owed.  Assuming any duty to Valero exists, TitlePac denies that it breached any duty to Valero, or that any such breach proximately caused Valero's damages.

8.      Valero's claims are barred in whole or in part due to the terms, limitations, restrictions, exclusions, and endorsements contained in and to the insurance policy.

9.      Valero's claims are barred in whole or in part by the statute of frauds.

10.      Valero's claims are barred in whole or in part because there was no "meeting of the minds."

11. Valero's claims are barred in whole or in part because Valero failed to mitigate its alleged damages.

12. Valero's claims are barred in whole or in part by the "one satisfaction" doctrine.

13. Valero's claims are barred in whole or in part by accord and satisfaction.

14. Valero's claims are barred in whole or in part by setoff.

15. Valero's claims are barred in whole or in part by the economic loss rule.

16. Any award of pre-judgment interest is limited by the dates and amounts as set forth in Chapter 304 of the Texas Finance Code and/or Chapter 41 of the Texas Civil Practice & Remedies Code.

17. Valero's damages, if any, were proximately caused by the acts, omissions, or breaches of other persons and entities, including Valero, and said acts, omissions, or breaches were intervening and superseding causes of Valero's damages, if any. TitlePac asserts its right to comparative responsibility as provided in Chapter 33 of the Texas Civil Practice and Remedies Code and request that the fact finder apportion responsibility as provided in Chapter 33.

18. TitlePac claims all offsets and credits available under Chapter 33 of the Texas Civil Practice and Remedies Code.

19. TitlePac reserves the right to later amend or add to these defenses.

### III.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Third-Party Defendant TitlePac, Inc. respectfully requests the Court enter judgment that Defendant/Third-Party Plaintiff Valero Title, Inc. takes nothing in its suit, the Court enter an order dismissing Valero's claim against TitlePac

with prejudice, TitlePac recover its costs and attorneys' fees, and for all other relief to which

TitlePac may be justly entitled.

Respectfully submitted,

By: */s/ Valerie Henderson*
    **Valerie Henderson**
    Texas Bar No. 24078655
    **BAKER, DONELSON, BEARMAN,**
    **CALDWELL & BERKOWITZ. P.C.**
    1301 McKinney Street
    Suite 3700
    Houston, Texas 77010
    (713) 650-9700 - Telephone
    (713) 650-9701 - Facsimile
    vhenderson@bakerdonelson.com

    *Attorney for Third-Party Defendant*
    *TitlePac, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2018, a true and correct copy of the foregoing was served on the following counsel via e-service pursuant to the Texas Rules of Civil Procedure:

William P. Huttenbach               Justin Ryan Opitz
Eric C. Mettenbrink                   McGuire Woods, LLP
Hirsch & Westheimer, P.C.         2000 McKinney Street, Suite 1400
1415 Louisiana Street, 36th Floor   Dallas, Texas 75201
Houston, Texas 77002

William C. Boyd
S. Scott Boyd
Patterson, Boyd & Lowery, P.C.
2101 Louisiana Street
Houston, Texas 77002

    */s/ Valerie Henderson*
    Valerie Henderson

# EXHIBIT 3

11/26/2018 8:50 AM
Chris Daniel - District Clerk Harris County
Envelope No. 29221181
By: LISA COOPER
Filed: 11/26/2018 8:50 AM

CAUSE NO. 2017-80629

| | |
|---|---|
| CONTEMPO BUILDER | IN THE DISTRICT COURT OF |
| V. | HARRIS COUNTY, TEXAS |
| VALERO TITLE INC.<br>DBA VALERO TITLE COMPANY | 157th JUDICIAL DISTRICT |

## RLI INSURANCE COMPANY'S ORIGINAL ANSWER

Third-Party Defendant, RLI Insurance Company, in the above-entitled and numbered cause, files this Original Answer, and would show the Court as follows:

### I.

### GENERAL DENIAL

Pursuant to TEXAS RULE OF CIVIL PROCEDURE 92, RLI denies each, all and singular, material allegations contained in Third-Party Plaintiff's Third-Party Petition, and any supplements or amendments thereto, and demands strict proof of each allegation by a preponderance of the evidence.

### II.

### PRAYER

Defendant RLI prays that Third-Party Plaintiff, Valero Title Inc. dba Valero Title Company, take nothing by way of its claims, and that this Court grant RLI any further relief, whether at law or equity, to which it may be justly entitled.

Respectfully submitted,

**GORDON & REES SCULLY MANSUKHANI**

By:      _/s/ Laura E. De Santos_____
**LAURA E. DE SANTOS**
Texas Bar No. 00793612
ldesantos@grsm.com
**MARK W. THAYER**
Texas Bar No. 19826050
mthayer@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
713-961-3366 Telephone
713-961-3938 Facsimile

**ATTORNEYS FOR THIRD-PARTY
DEFENDANT RLI INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**

        The undersigned certifies that a true and correct copy of the foregoing document was served pursuant to TEXAS RULES OF CIVIL PROCEDURE 21 and 21a on all counsel of record on this the 26th day of November, 2018.

_/s/ Laura E. De Santos_____
**LAURA E. DE SANTOS**

# EXHIBIT 4

11/28/2018 1:54 PM
Chris Daniel - District Clerk Harris County
Envelope No. 29315390
By: LISA COOPER
Filed: 11/28/2018 1:54 PM

CAUSE NO. 2017-80629

| | |
|---|---|
| CONTEMPO BUILDER | IN THE DISTRICT COURT OF |
| V. | HARRIS COUNTY, TEXAS |
| VALERO TITLE INC.<br>DBA VALERO TITLE COMPANY | 157th JUDICIAL DISTRICT |

### RLI INSURANCE COMPANY'S MOTION TO SEVER

Third Party Defendant RLI Insurance Company ("RLI") files this Motion to Sever Third

Party Plaintiff Valero Title, Inc.'s ("Valero") Third Party Petition pursuant to Texas Rules of

Civil Procedure 38 and 41, and in support thereof states as follows:

## I.
## SUMMARY OF MOTION

Plaintiff Contempo Builder brought this action against Valero to recover damages for a

loss allegedly sustained after Valero wire transferred money to the incorrect bank account.[1]

Contempo Builder's causes of action against Valero include the tort of negligence and breach of

fiduciary duty.[2]  Valero notified RLI of Contempo Builder's claims and requested coverage for

Plaintiff's loss and a defense against Plaintiff's claims under its RLI "Crime Protection Policy

for Employee Dishonesty."[3] RLI denied Valero's request on the basis that the claims asserted are

not covered under the policy. Valero responded by filing a Third Party Petition against RLI,

asserting, among other things, a breach of contract claim and a request for a judicial declaration

"as to the coverage of the insurance policy in dispute."[4] RLI asserts that Valero's Third Party

Petition is in violation of Tex. R. Civ. P. 38, and therefore requests that Valero's causes of action

---

[1] Plaintiff's Original Petition, p. 2, ¶ 5.
[2] *Id*. at p. 4, ¶ 6.
[3] Third Party Petition, p. 2, ¶ 6.
[4] Third Party Petition, p. 9, ¶ 45.

be severed from the above styled and numbered cause in accordance with Tex. R. Civ. P. 41.

## II.
## IMPROPER JOINDER OF VALERO'S INSURANCE CARRIER

Rule 38 of the Texas Rule of Civil Procedure, entitled "Third-Party Practice," governs

Valero's Third Party Petition. As stated in Rule 38(c):

> This rule shall not be applied, in tort cases, so as to permit the joinder of a liability
> or indemnity insurance company, unless such company is by statute or contract
> liable to the person injured or damaged.

*See also* Rule 51(b) (prohibiting the joinder of a liability or indemnity insurance company,

"unless such company is by statute or contract liable to the person injured or damaged"). RLI is

not liable to Contempo Builder by statute or contract. Accordingly, Valero cannot join RLI in the

above-styled and numbered case filed by Contempo Builder.

## III.
## IMPROPER JOINDER REQUIRES SEVERANCE OF VALERO'S CLAIMS

Rule 41 of the Texas Rule of Civil Procedure, entitled "Misjoinder or Non-joinder of

Parties," governs Valero's violation of Rule 38. As stated therein:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be
> dropped or added, or suits filed separately may be consolidated, ***or actions which
> have been improperly joined may be severed and each ground of recovery
> improperly joined may be docketed as a separate suit between the same parties,
> by order of the court on motion of any party*** or on its own initiative at any stage
> of the action, before the time of submission to the jury or to the court if trial is
> without a jury, on such terms as are just. Any claim against a party may be
> severed and proceeded with separately.

(Emphasis added). In accordance with Rule 41, RLI requests that Valero's Third Party Petition

be severed from the above styled and numbered cause.

Enforcing Rule 38(c) as written, Texas courts universally hold that an insured must file

an independent coverage action, and may not join the insurer to the underlying action as a third-

party defendant. *In re Essex Ins. Co.*, 507 S.W.3d 418, 421 (Tex. App.—Houston [1st Dist.]

2016, no pet.) ("Both longstanding rules (Rule 38 and 51) reflect the settled law in Texas that an insurer cannot be joined in an action in which it is not directly liable to the injured plaintiff." (citations omitted)); *In re Am. Econ. Ins. Co.*, 202 S.W.3d 361, 362-3 (Tex. App.—Beaumont 2006, orig. proceeding) ("[T]he rules clearly prohibit the joinder of an insurer as a third-party defendant unless the insurer is directly liable to the plaintiff in the underlying case. See Tex. R. Civ. P. 38(c), 51(b)."). Accordingly, while Valero may challenge RLI's denial of coverage in a separate action, binding precedent demonstrates that Valero cannot join RLI as a third-party defendant in this action. RLI therefore respectfully requests that this Court grant this Motion to Sever Valero's claims.

## IV.
## VALERO'S ALLEGATIONS

Valero's insurance claim arises from a construction loan between Whitney Hancock Bank ("Whitney"), as lender, and its customer, Contempo Builder ("Contempo").[5] (Third-Party Petition, ¶ 12). Valero, an escrow agent, allegedly bore responsibility to dispute the loan proceeds. (*Id.*) In that capacity, Valero asked Whitney to provide an updated payoff letter. (*Id.* at ¶ 13). Whitney originally provided a payoff letter with correct bank routing information, but the loan closing was rescheduled and thus, Valero required an updated payoff letter. (*Id.* at ¶ 14). Valero received an updated letter, purportedly executed by Whitney and providing allegedly false wire transfer instructions. (*Id.* at ¶ 14-5).

Valero allegedly relied upon the wire transfer instructions and transferred $250,945.31 in closing funds to the incorrect account. (*Id.* at ¶ 16). Subsequently, Whitney inquired to Contempo about the payoff as Whitney did not receive the funds. Valero sought to reverse the

---

[5] RLI disputes and denies Valero's allegations. This motion accepts them as true solely to demonstrate that Valero improperly named RLI as a third-party defendant. Neither this motion nor any statements therein should be construed as an admission by RLI or waiver of RLI's right to dispute the allegations in the Petition and Valero's mischaracterization of the Policy.

transaction, but could not do so.  (*Id.* at ¶ 17).  Contempo thereafter initiated this action against

Valero, seeking to recover its loss on the theory that it bore tort liability for its loss.

Valero submitted a claim to RLI, alleging that the wire transfer instruction triggered

funds transfer fraud coverage.  (*Id.* at ¶ 6).  The Policy does not, however, cover every

fraudulently induced wire transfer.  The Policy cover "… loss of **Funds** resulting directly from a

**Fraudulent instruction** directing financial institution to transfer, pay or deliver **Funds** from

your **Transfer Account**."  The Policy defines the term **Fraudulent Instruction** as follows

    **a.  Fraudulent instruction** means:

        (1) An electronic, telegraphic, cable, teletype, telefacsimilie or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

        (2) A written instruction (other than those described in Insuring Agreement 2.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

        (3) An electronic, telegraphic, cable, teletype, telefacsimilie, telephone or written instruction initially received by you which purports to have been transmitted by an Employee but which was in fact fraudulently transmitted by someone else without your or the Employee's knowledge or consent.

(Third-Party Petition, Exhibit 2, Insuring Clause 8).

RLI denied coverage because Valero did not establish a **Fraudulent instruction** (as

defined in the Policy).  (*Id.*, Exhibit 3).  While Valero alleged that the perpetrator fraudulently

induced it to wire transfer funds, the definition of **Fraudulent instruction** requires proof that the

instruction (1) "purports to have been transmitted by you, but which was in fact fraudulently

transmitted by someone else without your knowledge or consent," (2) "issued by you, which was

forged or altered by someone other than you without your knowledge or consent, or which

purports to have been issued by you, but was in fact fraudulently issued without your knowledge

or consent," or (3) "received by you which purports to have been transmitted by an Employee but which was in fact fraudulently transmitted by someone else without your or the Employee's knowledge or consent." (*Id.*, Exhibit 2, Insuring Clause 8).

In this case, Valero knowingly transmitted the wire transfer direction to its bank. Valero admits that fact in its complaint, conceding that "… it is undisputed that Valero sent the fraudulent instructions to BOA." (Third-Party Complaint, ¶ 22). Given that admission, Valero cannot establish a Fraudulent instruction within the meaning of the policy because the allegedly fraudulent instruction was not (1) sent by someone impersonating Valero, as required by Section a.(1); issued by Valero or purportedly by Valero, as required by Section a.(2); or (3) transmitted by someone impersonating Valero's employees, as required by Section a.(3). (*Id.*, Exhibit 3). Accordingly, RLI correctly concluded that Valero did not establish a loss covered under the Funds Transfer Fraud Endorsement.

## V.
## ARGUMENT

Rule 38 of the Texas Rules of Civil Procedure governs third-party practice and the right to join unnamed parties to a tort action. Valero portrays RLI as a liability carrier which owed a duty to defend Contempo's action (Third-Party Petition, ¶ 45), but this allegation negates Valero's joinder of RLI to this action. Valero attempts to join RLI on the theory that its insurance claim involves overlapping facts, but the Rule 38 joinder rules may "not be applied, in tort cases, so as to permit the joinder of a liability or indemnity insurance company, unless such company is by statute or contract liable to the person injured or damaged." Texas Rules of Civil Procedure 38(c). It is not, therefore, enough for Valero to allege that its claim against RLI arises from a common nucleus of facts or alleged that RLI owed a duty to defend and indemnify Valero; because Valero portrays RLI as a liability insurer, Valero can only join RLI to this action

if it can prove that RLI is by statute or contract liable to the person injured or damaged" –
meaning that Valero must demonstrate that RLI bore liability, by contract or statute, to
Contempo.

Valero cannot satisfy that standard because Texas law does not permit Contempo, as
claimant, to seek recovery from RLI and thus, RLI does not bear liability, in statute or tort, to
Contempo.  *In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014).  The Texas Supreme Court
conclusively resolved this issue in *In re Essex*, holding therein that a claimant cannot file a direct
action against an insurer prior to a judgment because prior to entry of a judgment, the insurer
bears no liability to the claimant:

> Zuniga has not cited to any cases in which we have held that that the plaintiff,
> who is not a party to the insurance policy, may seek or obtain a declaratory
> judgment regarding an insurer's duty to indemnify an insured defendant against
> liability to the plaintiff before that liability has been determined. Under these
> circumstances, the reasons for the general rule prohibiting such an action prevail.
> See Angus Chem., 939 S.W.2d at 138. Because Texas law does not permit Zuniga
> to sue Essex directly for a declaration of Essex's duty to indemnify SDT before
> SDT's liability to Zuniga has been determined, we conclude that the trial court
> abused its discretion by  denying SDT's motion to dismiss Zuniga's claims in this
> case.

*Id.*, 450 S.W.3d at 527-8; *Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 138 (Tex.
1997) ("In Texas, the general rule . . . is that an injured party cannot sue the tortfeasor's insurer
directly until the tortfeasor's liability has been finally determined by agreement or judgment").

Because the Supreme Court conclusively held that an insurer does not bear liability to a
claimant, Texas courts refuse to allow a defendant to join an insurer in the tort dispute.
Enforcing Rule 38(c) as written, Texas courts universally hold that an insured must file an
independent coverage action and that an insurer may not be joined to the underlying action as a
third-party defendant.  *In re Essex Ins. Co.*, 507 S.W.3d at 421-2; *In re Am. Econ. Ins. Co.*, 202
S.W.3d at 362-3; *In re Reynolds*, 369 S.W.3d 638, 652 (Tex. Civ. App.—Tyler 2012, no writ);

*Sky Station Holdings I, LP v. Fid. Nat'l Title Ins. Co.*, No. 12-003988, 2015 Tex. Dist. LEXIS 15126 at *1-2 (Tex. App.— Travis 2015, no writ).

The Houston Appellate Court addressed this precise issue in *In re Essex*.  In that case, the plaintiff sued the defendant for its injuries.  The defendant thereafter filed a third-party complaint against its insurer, alleging that the insurer owed a duty to defend and indemnity it against any potential liability to the plaintiff.  The insurer moved to sever the coverage action on the basis that it owed no liability to the plaintiff and thus, was improperly named as a third-party defendant.  Reversing the trial court, the Appellate Court held that the defendant improperly joined its insurer as a third-party defendant.  It so held even though the coverage action arose from the same common nucleus of facts:

> But the general rules that allow for joinder of parties and claims in the case of overlapping elements do not apply because those same rules expressly prohibit joinder of an insurance carrier in these circumstances, namely: a tort case, in which the insurer (Essex) is not directly liable to the person injured or damaged (Lopez). …Because Essex's joinder in the case was prohibited by Texas Rules of Civil Procedure 38(c) and 51(b), we hold that the trial court erred in denying severance of the claims against Essex from the underlying personal injury liability action.

*Id.*, 507 S.W.3d at 422-3.

*American Economy Insurance* reached the same conclusion.  In that case, the plaintiff filed a personal injury action against the defendant.  The defendant thereafter filed a third-party petition against its liability insurer. *Id.*, 202 S.W.3d at 362-63. The trial court held that the defendant could joined its insurer as a third-party defendant, on the theory that joint discovery would promote judicial economy. *Id.* at 363. Granting mandamus relief, the Beaumont Court of Appeals reversed the trial court and held that the trial court abused its discretion in denying severance because Texas Rules of Civil Procedure 38(c) and 51(b) "clearly prohibit the joinder

of an insurer as a third-party defendant unless the insurer is directly liable to the plaintiff in the underlying case." *Id.* at 364.

Courts reach the same conclusion even in the context of a first-party coverage dispute. For example, *In re Reynolds* addressed joinder of a disability carrier as a third-party defendant. In that case, the injured party sued a tortfeasor and his insurer in the same action. Although the injured party sought to recover from both parties based upon a single accident (and therefore, the actions arose from a common nucleus of facts), the appellate court held that the insurance dispute had to be litigated in a difference action:

> Sharp's negligence and UIM claims have in common the facts and issues relating to whether Reynolds was negligent; if so, whether his negligence proximately caused Sharp's damages and the amount of his damages; and whether Pelhams is also liable. The remaining elements of Sharp's UIM claim-whether Sharp had UIM coverage and whether Reynolds and Pelhams had insurance coverage in at least the amount of the damages recovered-are unrelated to the facts and issues pertaining to his negligence claims. ***Thus, the two causes of action have some overlapping facts and issues, but do not involve "the same facts and issues." Therefore, they are not "interwoven."*** Accordingly, we conclude that the claims are properly severable.

369 S.W.3d at 652 (emphasis added). In fact, the court held that the cases could not be litigated together, as the court would have to either improperly taint the underlying action with inadmissible evidence of insurance or preclude the insured from properly establishing the basis for its coverage action:

> To allow evidence of insurance would violate Relators' substantial right to have their liability decided without any mention of insurance, and to exclude evidence of insurance would prejudice Sharp's presentation of his UIM claim…. Therefore, we conclude that, in this situation, Relators' argument pertaining to injection of insurance was sufficient to inform the trial court that prejudice would result from the simultaneous trial of Sharp's claims.

*Id.* at 653-4.

Texas courts order severance because evidence of insurance is inadmissible and thus, litigating both the underlying action and insurance dispute in one action is inherently prejudicial.

*See, e.g., Black v. Smith*, 956 S.W.2d 72, 75 (Tex. App.—Houston [14th Dist.] 1997, orig. proceeding) (conditionally granting mandamus requiring severance of personal injury claim joined with claim against defendant's insurer for wrongful disclosure of medical information because joinder "prejudice[d] Black's defense and violating her right to have liability decided without any mention of insurance"); *F.A. Richard & Assocs. v. Millard*, 856 S.W.2d 765, 767 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding) (conditionally granting mandamus requiring severance of negligence claim against UIM from bad faith claim against insurance adjuster because insured "has substantial rights not to have its defenses prejudiced by the evidence about insurance and settlement"); *In re Foremost Ins. Co.*, 966 S.W.2d 770, 772 (Tex. App.—Corpus Christi 1998, orig. proceeding) (conditionally granting mandamus requiring severance of personal injury claim joined with bad faith claim against defendant's liability insurer because joinder "prejudice[d] Mrs. Driscoll's defense and violating her substantial right to have her liability decided without mention of insurance").

As in *Reynolds*, *American Economy Insurance* and *In re Essex*, Valero alleges that RLI bears a duty to indemnify it against a judgment entered in favor of Contempo. (Third-Party Complaint, ¶ 45).   RLI disputes that conclusion, but even if the court accepted Valero's characterization of the policy as true, that allegation conclusively demonstrates that Valero improperly joined RLI as a third-party defendant and that RLI must, under Rule 38(c), be dismissed or in the alternative severed from this case.  Valero will not suffer any prejudice from severance as it can dispute RLI's coverage analysis through an independent action.  Severance in fact advances Valero's interests in that it prevents Contempo from tainting this action and any triable issues with immaterial coverage issues and inadmissible evidence of insurance.

**CONCLUSION**

For the reasons set forth herein, RLI Insurance Company respectfully requests that this Court dismiss or sever the claims against it and for any other relief the Court deems necessary and appropriate.

WHEREFORE PREMISES CONSIDERED, Third Party Defendant RLI Insurance Company respectfully requests that this Court grant its Motion to Sever the claims against it in the Third Party Petition, and for any other relief the Court deems necessary and appropriate.

Respectfully submitted,

GORDON & REES SCULLY MANSUKHANI, LLP

By:    _/s/ Laura De Santos_
LAURA E. DE SANTOS
Texas Bar No. 00793612
ldesantos@grsm.com
MARK W. THAYER
Texas Bar No. 19826050
mthayer@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
713-961-3366 Telephone
713-961-3938 Facsimile

ATTORNEYS FOR THIRD-PARTY DEFENDANT
RLI INSURANCE COMPANY

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served pursuant to TEXAS RULES OF CIVIL PROCEDURE 21 and 21a on all counsel of record on this the 28th day of November, 2018.

_/s/ Laura De Santos_
**LAURA E. DE SANTOS**

CAUSE NO. 2017-80629

CONTEMPO BUILDER                                    IN THE DISTRICT COURT OF

V.                                                 HARRIS COUNTY, TEXAS

VALERO TITLE INC.
DBA VALERO TITLE COMPANY                            157th JUDICIAL DISTRICT

**ORDER GRANTING RLI INSURANCE COMPANY'S MOTION TO SEVER**

Be it remembered that on the date set forth below came on to be heard Third Party Defendant RLI Insurance Company's Motion to Sever Third Party Plaintiff Valero Title, Inc.'s Third Party Petition pursuant to Texas Rules of Civil Procedure 38 and 41, and Valero Title, Inc.'s response thereto, and the court having considered same, and having heard argument of counsel, was of the opinion that the Motion should be granted;

IT IS THEREFORE ORDERED that Third Party Defendant RLI Insurance Company's Motion to Sever Third Party Plaintiff Valero Title, Inc.'s Third Party Petition pursuant to Texas Rules of Civil Procedure 38 and 41 should be, and is hereby granted. Accordingly, the Clerk of the Court is hereby ordered to open a new Cause No. 2017-80629-A for Valero Title, Inc.'s Third Party Petition and the Answer filed by Third Party RLI Insurance Company.

Signed this ___ day of _____, 201_.

_____
Judge Presiding

/41392432v.1

11/28/2018 3:25 PM
Chris Daniel - District Clerk Harris County
Envelope No. 29322615
By: LISA COOPER
Filed: 11/28/2018 3:25 PM

CAUSE NO. 2017-80629

| | |
|---|---|
| CONTEMPO BUILDER | IN THE DISTRICT COURT OF |
| V. | HARRIS COUNTY, TEXAS |
| VALERO TITLE INC. DBA VALERO TITLE COMPANY | 157th JUDICIAL DISTRICT |

---

## NOTICE OF HEARING

---

Please be advised that an oral hearing on Third-Party Defendant RLI Insurance Company's Motion to Sever Third Party Plaintiff Valero Title, Inc.'s Third Party Petition will be heard on Friday, January 4, 2018 at 9:00 a.m. in the 157th District Court of Harris County, Texas.

Respectfully submitted,

**GORDON & REES SCULLY MANSUKHANI**

By: _/s/ Laura De Santos_____

**LAURA E. DE SANTOS**
Texas Bar No. 00793612
ldesantos@grsm.com
**MARK W. THAYER**
Texas Bar No. 19826050
mthayer@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
713-961-3366 Telephone
713-961-3938 Facsimile

**ATTORNEYS FOR THIRD-PARTY DEFENDANT RLI INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was served pursuant to TEXAS RULES OF CIVIL PROCEDURE 21 and 21a on all counsel of record on this the 28th day of November, 2018.


_/s/ Laura De Santos_____

**LAURA E. DE SANTOS**

# EXHIBIT 5

1/2/2019 5:15 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 30071076
By: LISA COOPER
Filed: 1/2/2019 5:15 PM

CAUSE NO.  2017-80629

| | | |
|---|---|---|
| CONTEMPO BUILDER | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| VALERO TITLE INC. | § | |
| DBA VALERO TITLE COMPANY | § | 157th JUDICIAL DISTRICT |

## VALERO TITLE, INC.'S RESPONSE TO RLI INSURANCE COMPANY'S MOTION TO SEVER

Defendant/Third-Party Plaintiff Valero Title Inc. d/b/a Valero Title Company ("**Valero**") files this Response to Third-Party Defendant RLI Insurance Company's ("**RLI**") Motion to Sever and would respectfully show unto the Court as follows:

## BACKGROUND AND SUMMARY OF ARGUMENT

1.      Valero is the owner of a Crime Protection Policy for Employee Dishonesty, Loss of Client's Property resulting from Employee Dishonesty, Funds Transfer Fraud (hereinafter referred to as the "**Policy**"), which was issued by RLI and brokered by Third-Party Defendant TitlePac, Inc. ("**TitlePac**").

2.      Valero is a title insurance company that provides title insurance and acts as a closing or escrow agent involving real estate transactions.

3.      In the Fall of 2017, Valero sought insurance coverage to protect Valero from wire transfer fraud.

4.      On or about October 20, 2017, Valero received confirmation from TitlePac that the Policy would cover funds transfer fraud.  A true and correct copy of the confirmation is attached hereto as Exhibit "A" and incorporated by reference.

5.       On or about October 23, 2017, RLI, through TitlePac sold Valero the Policy that was held out by Third-Party Defendants to include protection against wire transfer fraud.  A true and correct copy of the Policy is attached hereto as Exhibit "B" and incorporated by reference.

6.       Specifically, the Policy stated that RLI "… will pay for loss of funds resulting directly from a fraudulent instruction directing financial institution to transfer, pay or deliver funds from your transfer account."  See Section A under Include Coverage for Funds Transfer Fraud, Exhibit "B."

7.       This cause of action involves a construction loan transaction by and between Whitney Hancock Bank ("**Whitney**"), as lender, and its customer, Contempo Builder (Plaintiff) ("**Contempo**"), the payoff of that certain loan that was scheduled to close with Valero acting as escrow agent.

8.       Valero requested an updated payoff from Whitney in preparation for a scheduled loan closing.  See Exhibit "D."  A purported representative for Whitney provided an updated payoff of the loan to Valero.  See Exhibit "D."

9.       The closing did not originally occur as planned but was rescheduled.  Valero once again requested an updated payoff from Whitney in preparation for the scheduled closing and subsequently received one from a purported representative of Whitney.  See Exhibit "D." However, on that same date, Valero received a follow-up email purporting to be from the same representative of Whitney asking if Valero received an updated payoff letter with "minor changes." See Exhibit "D."

10.      Subsequently, someone alleging to be a representative of Whitney engaged in multiple correspondences with Valero seeking updates as to when the closing funds would be transferred.  See Exhibit "D."  Valero inquired to the alleged representative as to the wiring

instructions routing number being one digit short.  See Exhibit "D."  The alleged representative of Whitney provided to Valero wiring instructions that were altered from the original wiring instructions from Whitney.  See Exhibit "D."

11.     The false wire transfer instructions directed Valero's bank, Bank of America ("**BOA**") to transfer funds to what was purportedly Whitney without Valero's knowledge that the instructions were fraudulent.  See Exhibit "D."  Ultimately, the $250,945.31 closing funds were wired from BOA per the fraudulent wire transfer instructions to an account held by a third-party with Third-Party Defendant Wells Fargo Bank, N.A. ("**Wells Fargo**").  See Exhibit "D."

12.     Subsequently, Whitney inquired to Contempo about the payoff as Whitney claimed to not be in receipt of the funds.  Contempo then informed Valero of the issue.  See Exhibit "D." Valero sought to reverse the fraudulent transaction, but was informed that the funds had already been removed from the Wells Fargo account.  See Exhibit "D."  Valero then opened up a complaint with the FBI regarding this matter.  See Exhibit "D."

13.     On or about November 1, 2017, Whitney informed Valero that Whitney has reached out to Wells Fargo, but Wells Fargo refused to release any information to Whitney.  See Exhibit "D."

14.     On or about November 3, 2017, BOA provided a Payment Details Report to Valero confirming that Wells Fargo was the beneficiary bank for the wire transfer transaction.  See Exhibit "D."

15.     On or about November 6, 2017, Valero filed a complaint with the Houston Police Department regarding the fraudulent transfer.  See Exhibit "D."

16.     On or about November 8, 2017, a representative of Valero spoke with a representative of RLI who stated that RLI will not likely cover the claim because Valero's domain was not manipulated.

17.     On or about November 28, 2017, RLI sent Valero a letter refusing to adhere to the terms of the Policy.  A true and correct copy of the letter is attached hereto as Exhibit "C" and incorporated by reference.  This time, RLI abandoned its claim that Valero's domain was not manipulated and created new reasons to refuse coverage.  Specifically, RLI stated that the claim would not fall under "computer fraud" because the incident must have occurred within the Valero's or a bank's premises.  See Exhibit "C" pg. 2.  RLI further stated that the fraudulent wire transfer would not be covered by the Policy because the "the subject email containing the false bank routing information was purportedly sent by your bank…" instead of being transmitted by Valero.  See Exhibit "C" pg. 3.  This reasoning defied all logic as the fraudulent transfer instructions were never transmitted by BOA and it is undisputed that Valero sent the fraudulent instructions to BOA.  This was clearly a tactic by RLI to present Valero with a moving target in the hopes that Valero would go away and not seek the coverage it clearly paid for to cover this exact situation.

18.     On or about December 1, 2017, Valero, through counsel, sent RLI a letter disputing its refusal to provide coverage and to provide additional details of the subject incident and demand letter received from counsel for Contempo.  RLI was instructed to communicate directly with counsel from this point forward.  A true and correct copy of this letter is attached hereto as Exhibit "E" and incorporated by reference.

19.     At this point in time, Valero sought TitlePac's help in resolving this matter because Valero had relied on TitlePac's assertion that Valero would be covered for this situation.  On or about December 5, 2017, Valero, through counsel, sent TitlePac a letter seeking assistance in

4

obtaining coverage.  On or about December 7, 2017, Valero provided TitlePac with a copy of the Original Petition filed against it by Contempo.  A true and correct copy of these letters are attached hereto as Exhibits "F" and "G" and incorporated by reference.  TitlePac refused to assist Valero in any way.

20.     On or about March 15, 2018, Valero, through counsel, once again reached out to TitlePac for assistance and sought contact from its legal department.  A true and correct copy of this correspondence is attached hereto as Exhibit "H" and incorporated by reference.  Once again, TitlePac ignored this request.

21.     On or about February 14, 2018, Valero tendered a Sworn Statement in Proof of Loss to RLI, detailing the incident made subject to this cause of action.  A true and correct copy of the proof of loss is attached hereto as Exhibit "D."

22.     On or about March 6, 2018, RLI sent a letter directly to Valero, ignoring previous instructions by counsel, refuting Valero's claims again.  A true and correct copy of this letter is attached hereto as Exhibit "I" and incorporated by reference.  This time RLI came up with a different reason to refuse coverage.  RLI now claimed that Valero transmitted the fraudulent wire instructions to BOA with knowledge that it was fraudulent.  See Exhibit "I" pg. 4.  RLI further states that the wire transfer instructions were not forged or altered.  See Exhibit "I" pg. 4.  The very notion that Valero knew that the wiring instructions were wrong and that said instructions were not forged or altered is preposterous.  If Valero knew of the forgery or alteration, then the parties would not be in the present cause of action.  Clearly RLI was doing everything in its power to not perform its contractually obligated duties.

23.     As a result of RLI's bad faith and other wrongful conduct, Valero has suffered damages for the loss of $250,945.31 plus attorney fees and any additional damages.

5

24.     RLI has misrepresented to Valero that the damage was not covered under the Policy, even though the damage was caused by a covered occurrence.  RLI's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code Ann. § 541.060(a)(1) (West).

25.     RLI has failed to make an attempt to settle Valero's claim in a fair manner despite the fact that RLI has been at all material times and is currently aware of its liability to Valero under the Policy.  RLI's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code Ann. § 541.060(a)(2)(A).

26.     RLI has failed to offer Valero compensation, without a valid, true or good faith explanation as to why payment was not being made.  RLI's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code Ann. § 541.060(a)(3).

27.     RLI refused to compensate Valero under the terms of the Policy, and failed to conduct a reasonable investigation.  RLI's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  Tex. Ins. Code Ann. § 541.060(a)(7).

28.     RLI failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay.  Specifically, it has delayed full payment of Valero's claim longer than allowed and, to date, Valero has not yet received payment for its claim.  RLI's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code Ann. § 542.058 (West).

29.     From and after the time Valero's claim was presented to RLI, the liability of RLI to pay the full claim in accordance with the terms of the Policy was reasonably clear.  However, RLI has refused to pay Valero in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment.

6

30.      RLI knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Valero.

31.      Valero filed its Third-Party Petition against RLI on October 12, 2018. RLI filed its Original Answer on or about November 26, 2018. RLI filed its Motion to Sever on or about November 28, 2018. Contempo filed a Motion for Summary Judgment as to its claims against Valero and the motion is set to be heard by this Court on January 18, 2019. The result of the Motion for Summary Judgment hearing may have a direct impact on Valero's claims against RLI. The parties are in active negotiations to globally resolve this lawsuit and a severance of claims will hinder such negotiations and any judicial economy saved during the process.

32.      Valero files this response seeking a denial of RLI's Motion to Sever. Valero's claims against RLI should be tried together with the claims against Valero, TitlePac and Wells Fargo because the efficiency, justice, convenience, and economy gained by trying the claims together outweighs any potential risk of prejudice to RLI, which can be vitiated with appropriate limiting instructions.

## ARGUMENT AND AUTHORITIES

33.      RLI seeks to sever the claims against it from all other claims, even though the claims against RLI affect the rights and damages of Contempo, TitlePac, and Wells Fargo and relates to the same claims that Contempo has asserted against Valero and that Valero has asserted against TitlePac and Wells Fargo.

34.      The trial court has broad discretion to sever actions, but that discretion is not unlimited. *In re Gen. Agents Ins. Co. of Am.*, 254 S.W. 3d 673 (Tex. App. – Houston [14th Dist.] 2008, no pet.). Rather, the court must review a request for severance in light of the facts and circumstances of the case at hand and only order severance where two separate actions would "do

7

justice, avoid prejudice, and further convenience." *In re Reynolds*, 369 S.W. 3d 638, 650 (Tex.

App. - Tyler 2012, no pet.).

> For a severance to be proper, more than one cause of action must be involved in the controversy, **the severed cause must be one that can be asserted independently, and the severed action must not be so interwoven with the remaining action that they involve identical facts and issues** or, in some circumstances, they relate to the same subject matter.

*Oryx Energy Co. v. Union Nat. Bank of Texas*, 895 S.W. 2d 409, 416 (Tex. App. – San Antonio

1995, writ denied) (emphasis added).  To be severable, the causes must be capable of being brought

as separate suits with separate final judgments.  *Martinez v. Humble Sand & Gravel, Inc.,* 875

S.W.2d 311, 312 (Tex. 1994).  Where a party attempts to sever a claim from a lawsuit and that

claim is dependent on or derivative of the other claims, severance is improper.  *See Oryx Energy*

*Co.,* 895 S.W.2d at 416; *St. Leo's Fed. Credit Union, Inc. v. L.E. Willis Auto Sales*, 330 S.W. 2d

506 (Tex. App. – San Antonio 1959, no writ) (reversing trial court's severance of claims against

one party when they were factually and legally interrelated with the claims of the other parties in

the suit).

35.     Rule 41 of the Texas Rules of Civil Procedure states that actions which have been

improperly joined may be severed. Courts permit severance to avoid prejudice, do justice, and

increase convenience.  *See* Texas Rule of Civil Procedure 174(b); *In re State*, 355 S.W.3d 611,

613 (Tex. 2011). "Severance of claims under the Texas Rules of Civil Procedure rests within the

sound discretion of the trial court." *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex.

1996).  A "court properly exercises its discretion in severing claims when: (1) the controversy

involves more than one cause of action; (2) the severed claim is one that could be assessed

independently in a separate lawsuit; and (3) the severed actions are not so interwoven with the

other claims that they involve the same facts and issues." *Akin*, 927 S.W.2d at 629; *In re State*, 355

S.W.3d at 614.

8

36.     If a party's claims are largely interwoven, most of the evidence introduced will be admissible on all claims, and any prejudice can be reasonably corrected by appropriate limiting instructions, a motion to sever may be properly denied. *Akin*, 927 S.W.2d at 630. Where the legal issues raised would be essentially identical, and the factual issues are much the same, even if they vary somewhat on each claim, the cases are interwoven to a degree which does not justify severance. *In re State*, 355 S.W.3d at 614. If the parties would have the same attorneys argue and the same witnesses testify in multiple cases, on an issue that can be tried at once, duplication is inconvenient and wasteful, and the claims should not be severed. *In re State*, 355 S.W.3d at 614; *Tarrant Regional Water Dist. v. Gragg*, 151 S.W.3d 546, 557 (Tex. 2004).

37.     Contempo's claims against Valero and Valero's claims against the other parties are factually and legally interwoven and should be tried together.  Valero made nearly identical factual and legal allegations against RLI and TitlePac.  The Policy in place that was intended to cover Valero regarding such claims put forth from Contempo was denied and breached by RLI and Valero was induced to purchase the Policy by TitlePac.  If Contempo is entitled to recovery after the January 18, 2019 summary judgment hearing, then recovery of damages will be contingent upon Valero's claims against RLI and TitlePac.  Further, if Wells Fargo is deemed responsible for the damages sought by Contempo, then the Valero claims against RLI and TitlePac are specifically effected.

38.     The Policy states that RLI "… will pay for loss of funds resulting directly from a fraudulent instruction directing financial institution to transfer, pay or deliver funds from your transfer account."  See Section A under Include Coverage for Funds Transfer Fraud, Exhibit "B." It cannot be disputed that there is a loss of funds resulting from a fraudulent instruction.  Therefore, RLI must cover the funds lost via the fraudulent instructions.  While RLI argues that Contempo

9

must first obtain a judgment against Valero before a lawsuit can be brought against RLI, the Policy as written says otherwise.

39.     RLI argues that severance should be granted because this is a tort case.  However, Valero's causes of action against RLI include insurance code violations, fraud, declaratory judgment claims, negligence, fraudulent representation, negligent representation, violations of the Deceptive Trade Practices Act, breach of contract, unfair settlement practices, and breach of duty of good faith and fair dealing.  Valero's claims against RLI include claims beyond a simple tort action.  Therefore, RLI's argument for severance is moot.

40.     In addition to the immediate cause of action, there is a concurrent Federal cause of action regarding the same set of facts that is currently pending.  Specifically, Bill B. Cook and Tina B. Cook, the current owners of the property subject the Whitney lien, have sued their title insurance underwriter WFG National Title Company under Civil Action No. H-18-2805 in the United States District Court for the Southern District of Texas Houston Division.  If the current lawsuit is severed, there will be three separate lawsuits regarding the same exact set of facts.

41.     Severance of Valero's claim against RLI from the claims against the other parties would not do justice, avoid prejudice, or increase convenience.  In fact, severance would create inefficiency and increase cost on the parties and Harris County.  Valero will call the same witnesses and provide substantially the same evidence in support of its claims against RLI, TitlePac and Wells Fargo and the defenses against Contempo.  Forcing separate trials would burden Harris County by forcing two trials on the same issues, forcing the courts to incur twice the time and expense.  Severance would also burden Valero by forcing Valero to try the same issues, presenting the same evidence and arguments twice.  In the interests of justice, efficiency, convenience, and economy, these claims should all be tried together.  The requested severance is improper and

10

therefore should be denied or the motion for severance should be, at the very least, abated until the Court rules on Contempo's motion for summary judgment.

42.     In the alternative, if the Court agrees to sever RLI from this matter, Valero asks that TitlePac be severed with RLI as the claims against RLI and TitlePac are contingent upon recovery from either party.  The Policy TitlePac sold to Valero should cover the loss at issue in this lawsuit or TitlePac sold Valero the wrong policy.  Such matters should be under one lawsuit.

WHEREFORE, PREMISES CONSIDERED, Defendant/Third-Party Plaintiff Valero Title Inc. d/b/a Valero Title Company respectfully prays that Third-Party Defendant RLI Insurance Company's Motion to Sever be denied, and for such further relief to which this Court deems it to be justly entitled.

Respectfully submitted,

HIRSCH & WESTHEIMER, P.C.

By: */s/ William P. Huttenbach*
    William P. Huttenbach
    State Bar No. 24002330
    Eric C. Mettenbrink
    State Bar No. 24043819
    1415 Louisiana, 36th Floor
    Houston, Texas 77002
    (713) 223-5181 Telephone
    (713) 223-9319 Facsimile
    Email: whuttenbach@hirschwest.com
    Email: emettenbrink@hirschwest.com

**ATTORNEYS FOR DEFENDANT/**
**THIRD-PARTY PLAINTIFF,**
**VALERO TITLE INC. D/B/A**
**VALERO TITLE COMPANY**

11

## <u>CERTIFICATE OF SERVICE</u>

On January 2, 2019, the foregoing document was served pursuant to Rule 21a of the Texas Rules of Civil Procedure and as indicated below:

William C. Boyd
S. Scott Boyd
PATTERSON, BOYD & LOWERY, P.C.
2101 Louisiana
Houston, Texas 77002
wboyd@pattersonboyd.com
info@pattersonboyd.com
*Via E-Service and Email*

Justin Opitz
MCGUIREWOODS LLP
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
jopitz@mcguirewoods.com
*Via E-Service and Email*

Laura E. De Santos
Mark W. Thayer
GORDON & REES SCULLY MANSUKHANI
1900 West Loop South, Suite 1000
Houston, TX 77027
ldesantos@grsm.com
mthayer@grsm.com
*Via E-Service and Email*

Valerie Henderson
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1301 McKinney Street
Suite 3700
Houston, TX 77010
vhenderson@bakerdonelson.com
*Via E-Service and Email*

*/s/ Eric C. Mettenbrink*
Eric C. Mettenbrink

12

# EXHIBIT 6

1/3/2019 5:30 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 30106257
By: LISA COOPER
Filed: 1/3/2019 5:30 PM

CAUSE NO. 2017-80629

| | |
|---|---|
| CONTEMPO BUILDER | IN THE DISTRICT COURT OF |
| V. | HARRIS COUNTY, TEXAS |
| VALERO TITLE INC.<br>DBA VALERO TITLE COMPANY | 157th JUDICIAL DISTRICT |

### RLI INSURANCE COMPANY'S REPLY TO
### IN SUPPORT OF ITS MOTION TO SEVER

Third Party Defendant RLI Insurance Company ("RLI") files this Reply to Third Party Plaintiff Valero Title, Inc.'s ("Valero") Response to RLI's Motion to Sever Valero's Third Party Petition pursuant to Texas Rules of Civil Procedure 38 and 51, and in support thereof states as follows:

### I.
### Valero Ignores Texas Rules of Civil Procedure 38 and 51

Valero's response ignores controlling authority mandating severance of the alleged claims against RLI. Valero expends great effort to discuss the general rules governing joinder of a third-party defendant, but those rules do not apply to an insurer. Both Rule 38 and Rule 51 expressly recognize exceptions for claims against insurers – expressly stating that the typical joinder and severance rules do not apply to claims against an insurer and that an insurer may only be joined if liable under contract or statute to the plaintiff:

- Rule 38(c) states "[t]his rule (entitled "Third-Party Practice") shall not be applied, in tort cases, so as to permit the joinder of a liability or indemnity insurance company, unless such company is by statute or contract liable to the person injured or damaged."

- Rule 51(a) states that the joinder rules "shall not be applied in tort cases so as to permit the joinder of a liability or indemnity insurance company, unless such company is by statute or contract directly liable to the person injured or damaged."

Despite the express terms of Rule 38(c) and 51(a), Valero has failed to show that RLI is liable to Plaintiff, Contempo Builder, by contract or statute.

No such liability exists because an injured party may not sue the tortfeasor's insurer prior to obtaining a judgment. *In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014). Accordingly, it is the longstanding rule (Rule 38 and 51) and settled law in Texas that an insurer cannot be joined in an action in which it is not directly liable to the injured plaintiff. *In re Essex Ins. Co.*, 507 S.W.3d 418, 421 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citations omitted)). Texas Appellate Courts routinely reverse contrary rulings, as contrary to "settled law in Texas that an insurer cannot be joined in an action in which it is not directly liable to the injured plaintiff." *In re Essex Ins. Co.*, 507 S.W.3d 418, 421-2 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also In re Am. Econ. Ins. Co.*, 202 S.W.3d 361 (Tex. App.—Beaumont 2006, orig. proceeding).

Ignoring controlling precedent addressing joinder of an insurer, Valero recites (nearly word for word for 30 paragraphs)[1] the allegations in its Third Party Petition[2] -- as if its allegation of overlapping facts nullify the mandatory language in Rules 38 and 51 of the Texas Rules of Civil Procedure. They do not. The mere fact that Valero alleges that a single set of facts supports multiple claims against multiple parties does not justify joinder of RLI as a third-party defendant. Texas courts refuse to allow a defendant to join an insurer in the tort dispute – even if the coverage action involves a common nucleus of facts. Enforcing Rule 38(c) as written, Texas courts universally hold that an insured must file an independent coverage action and that an insurer may not be joined to the underlying action as a third-party defendant. *In re Essex Ins. Co.*, 507 S.W.3d at 421-2; *In re Am. Econ. Ins. Co.*, 202 S.W.3d at 362-3; *In re Reynolds*, 369 S.W.3d 638, 652 (Tex. Civ. App.—Tyler 2012, no writ); *Sky Station Holdings I, LP v. Fid. Nat'l*

---

[1] Paragraphs 1 through 30 of Valero's Response.
[2] Paragraphs 6 through 36 of Valero's Third Party Petition.

*Title Ins. Co.*, No. 12-003988, 2015 Tex. Dist. LEXIS 15126 at *1-2 (Tex. App.— Travis 2015, no writ).

The Houston Appellate Court rejected Valero's argument in *In re Essex.*  In that case, the plaintiff sued the defendant for its injuries.  The defendant thereafter filed a third-party complaint against its insurer, alleging that the insurer owed a duty to defend and indemnity it against any potential liability to the plaintiff.  The insurer moved to sever the coverage action on the basis that it owed no liability to the plaintiff and thus, was improperly named as a third-party defendant.  Reversing the trial court, the Appellate Court held that the defendant improperly joined its insurer as a third-party defendant. -- even though the coverage action arose from the same common nucleus of facts:

> But the general rules that allow for joinder of parties and claims in the case of overlapping elements do not apply because those same rules expressly prohibit joinder of an insurance carrier in these circumstances, namely: a tort case, in which the insurer (Essex) is not directly liable to the person injured or damaged (Lopez). …Because Essex's joinder in the case was prohibited by Texas Rules of Civil Procedure 38(c) and 51(b), we hold that the trial court erred in denying severance of the claims against Essex from the underlying personal injury liability action.

*Id.*, 507 S.W.3d at 422-3.

*American Economy Insurance* reached the same conclusion.  In that case, the plaintiff filed a personal injury action against the defendant.  The defendant thereafter filed a third-party petition against its liability insurer. *Id.*, 202 S.W.3d at 362-63. The trial court held that the defendant could join its insurer as a third-party defendant, on the theory that joint discovery would promote judicial economy. *Id.* at 363. Granting mandamus relief, the Beaumont Court of Appeals reversed, holing that the trial court abused its discretion in denying severance because Texas Rules of Civil Procedure 38(c) and 51(b) "clearly prohibit the joinder of an insurer as a

third-party defendant unless the insurer is directly liable to the plaintiff in the underlying case." *Id.* at 364.

Valero invites reversible error by wrongly citing cases addressing joinder of tortfeasors and ignoring the rules governing joinder of insurers.  It cites no cases addressing joinder of an insurer in a tort action because every case addressing that issue rejects its position.  Valero's reliance on allegations of overlapping facts is insufficient to defeat the Motion to Sever because RLI bears no contractual or statutory liability to the plaintiff.  Thus, Rule 38(c) mandates severance of RLI.

## II.
## Valero Admits Improper Grounds for Joinder

Valero attempts to avoid severance on the theory that prejudice to RLI can be "vitiated with appropriate limiting instructions." (Response, ¶ 32).[3]  That position, like Valero's position on severance, ignores binding precedent – which requires severance precisely because joinder of an insurer causes irreparable prejudice. Texas courts order severance because evidence of insurance is inadmissible and thus, litigating both the underlying action and insurance dispute in one action is inherently prejudicial. *Black v. Smith*, 956 S.W.2d 72, 75 (Tex. App.—Houston [14th Dist.] 1997, orig. proceeding) (joinder "prejudice[ed] Black's defense and violating her right to have liability decided without any mention of insurance"); *F.A. Richard & Assocs. v. Millard*, 856 S.W.2d 765, 767 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding) (insured "has substantial rights not to have its defenses prejudiced by the evidence about insurance and settlement"); *In re Foremost Ins. Co.*, 966 S.W.2d 770, 772 (Tex. App.—Corpus Christi 1998,

---

[3] Valero's claim of efficiency is in fact an illusion.  Valero did not join RLI to effectuate efficiency.  It joined RLI to leverage a settlement from RLI, as they reveal in paragraph 31: "The parties are in active negotiations to globally resolve this lawsuit and a severance of claims will hinder such negotiations and any judicial economy saved during the process." There is no provision in the applicable Rules or authority in the cases cited by Valero to validate this argument.

orig. proceeding) (joinder "prejudice[ed] Mrs. Driscoll's defense and violating her substantial right to have her liability decided without mention of insurance").

WHEREFORE PREMISES CONSIDERED, Third Party Defendant RLI Insurance Company respectfully requests that this Court grant its Motion to Sever the claims against it in the Third Party Petition filed by Valero Title, Inc., and for any other relief the Court deems necessary and appropriate.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By:  _/s/ Laura E. De Santos_
LAURA E. DE SANTOS
Texas Bar No. 00793612
ldesantos@grsm.com
MARK W. THAYER
Texas Bar No. 19826050
mthayer@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
713-961-3366 Telephone
713-961-3938 Facsimile
ATTORNEYS FOR THIRD-PARTY DEFENDANT
RLI INSURANCE COMPANY

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was filed with the Harris County District Clerk's office and served pursuant to TEXAS RULES OF CIVIL PROCEDURE 21 and 21a on all counsel of record on this the 3rd day of January 2019.

_/s/ Laura E. De Santos_
LAURA E. DE SANTOS

# EXHIBIT 7

1/4/2019 7:59 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 30109214
By: LISA COOPER
Filed: 1/4/2019 7:59 AM

CAUSE NO. 2017-80629

CONTEMPO BUILDER                                    IN THE DISTRICT COURT OF

V.                                                         HARRIS COUNTY, TEXAS

VALERO TITLE INC.
DBA VALERO TITLE COMPANY                           157th JUDICIAL DISTRICT

**ORDER GRANTING RLI INSURANCE COMPANY'S MOTION TO SEVER**

Be it remembered that on the date set forth below came on to be heard Third Party
Defendant RLI Insurance Company's Motion to Sever Third Party Plaintiff Valero Title, Inc.'s
Third Party Petition, Valero Title, Inc.'s Response thereto, and RLI Insurance Company's Reply,
and the court having considered same, and having heard argument of counsel, was of the opinion
that the Motion should be granted;

IT IS THEREFORE ORDERED that Third Party Defendant RLI Insurance Company's Motion
to Sever Third Party Plaintiff Valero Title, Inc.'s Third Party Petition should be, and is hereby
granted, and that Valero Title, Inc.'s causes of action against RLI Insurance Company are hereby
severed into a separate case under a new cause number styled as: Cause No. 2017-80629-A;
*Valero Title, Inc. v. RLI Insurance Company;* in the 157th Judicial District Court of Harris
County, Texas. Upon execution of this Order, the Clerk of the Court shall include certified
copies of the following documents in this cause for inclusion in the new Cause No.:

1. Valero Title, Inc.'s Third Party Petition filed on October 12, 2018;

2. RLI Insurance Company's Original Answer filed on November 26, 2018;

3. RLI Insurance Company's Motion to Sever, proposed Order and Notice of Oral
   Hearing, filed on November 28, 2018;

4. Valero Title, Inc.'s Response to the Motion to Sever, and proposed Order, filed on
   January 2, 2019;

5.  RLI Insurance Company's Reply to Valero Title, Inc.'s Response to the Motion to Sever Motion to Sever filed on January 3, 2019;

6.  RLI Insurance Company's proposed Order granting the Motion to Sever filed on January 4, 2019; and,

7.   this Order granting RLI Insurance Company's Motion to Sever.

Signed this ___ day of _____, 2019.

_____
Judge Presiding

# EXHIBIT 8

1/9/2019 4:27 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 30255008
By: LISA COOPER
Filed: 1/9/2019 4:27 PM

CAUSE NO. 2017-80629Ȧ                                    Pgs-3

CONTEMPO BUILDER                    IN THE DISTRICT COURT OF              4B

V.

VALERO TITLE INC.                                       HARRIS COUNTY, TEXAS
DBA VALERO TITLE COMPANY            157th JUDICIAL DISTRICT

### ORDER GRANTING RLI INSURANCE COMPANY'S MOTION TO SEVER

Came to be heard Third Party Defendant RLI Insurance Company's Motion to Sever

Third Party Plaintiff Valero Title, Inc.'s causes of action against RLI Insurance Company in the

Third Party Petition, Valero Title, Inc.'s Response thereto, and RLI Insurance Company's Reply,

and the court having considered same and having heard argument of counsel, was of the opinion

that the Motion should be granted;

IT IS THEREFORE ORDERED that Third Party Defendant RLI Insurance Company's

Motion to Sever should be, and is hereby granted.

IT IS FURTHER ORDERED that Third Party Plaintiff Valero Title, Inc.'s causes of

action against Third Party Defendant RLI Insurance Company and TitlePac, Inc. should be and

are hereby severed from the above styled and numbered cause and placed in the newly severed

case described below.

IT IS FURTHER ORDERED that Third Party Plaintiff Valero Title, Inc.'s causes of

action against RLI Insurance Company and TitlePac, Inc. are hereby severed into a separate case

under a new cause number styled as: Cause No. 2017-80629-A; *Valero Title, Inc. v. RLI*

*Insurance Company and TitlePac, Inc.;* in the 157th Judicial District Court of Harris County,

Texas. Upon execution of this Order, the Clerk of the Court shall include certified copies of the

following documents in this cause for inclusion in the new Cause No.:

1. Valero Title, Inc.'s Third Party Petition filed on October 12, 2018;

2. TitlePac, Inc.'s Original Third Party Answer filed on November 9, 2018;

3. RLI Insurance Company's Original Third Party Answer filed on November 26, 2018;

4. RLI Insurance Company's Motion to Sever, proposed Order and Notice of Oral Hearing, filed on November 28, 2018;

5. Valero Title, Inc.'s Response to the Motion to Sever, and proposed Order, filed on January 2, 2019;

6. RLI Insurance Company's Reply to Valero Title, Inc.'s Response to the Motion to Sever Motion to Sever filed on January 3, 2019;

7. RLI Insurance Company's proposed Order granting the Motion to Sever filed on January 4, 2019; and,

8. this Order granting RLI Insurance Company's Motion to Sever.

The Clerk shall split the cost of the severance referenced herein equally between Third Party

Defendants RLI Insurance Company and TitlePac, Inc.

Signed this ___ day of _____, 2019.

Signed:
1/10/2019

_____
Judge Presiding

Approved as to Form Only:

GORDON & REES SCULLY MANSUKHANI, LLP

By: _____
LAURA E. DE SANTOS
Texas Bar No. 00793612
ldesantos@grsm.com
MARK W. THAYER
Texas Bar No. 19826050
mthayer@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
713-961-3366 Telephone
713-961-3938 Facsimile

ATTORNEYS FOR THIRD-PARTY DEFENDANT
RLI INSURANCE COMPANY

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ. P.C.

By: _Valerie Henderson_

Valerie Henderson
Texas Bar No. 24078655
1301 McKinney Street, Suite 3700
Houston, Texas 77010
(713) 650-9700 – Telephone
(713) 650-9701 – Facsimile
vhenderson@bakerdonelson.com
ATTORNEY FOR THIRD-PARTY DEFENDANT TITLEPAC, INC.

HIRSCH & WESTHEIMER, P.C.

By: _____

William P. Huttenbach
State Bar No. 24002330
Eric C. Mettenbrink
State Bar No. 24043819
1415 Louisiana, 36th Floor
Houston, Texas 77002
(713) 223-5181 Telephone
(713) 223-9319 Facsimile
Email: whuttenbach@hirschwest.com
Email: emettenbrink@hirschwest.com
THIRD PARTY PLAINTIFF VALERO TITLE INC. D/B/A VALERO TITLE COMPANY